Exhibit  A

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 0:13-cv-60721-MORENO/OTAZO-REYES

IRA MARC FLADELL, SARAH CROUCH,
GREG OLSON, TILENA ALI, MARGARET
ZAWISTOWSKI, DANNY LANE and
BEVERLY LANE on behalf of themselves
and all others similarly situated,

         Plaintiffs,

v.

WELLS FARGO BANK, N.A.; WELLS
FARGO INSURANCE, INC.; ASSURANT, INC.;
AMERICAN SECURITY INSURANCE
COMPANY; VOYAGER INDEMNITY
INSURANCE COMPANY; STANDARD
GUARANTY INSURANCE COMPANY; QBE SPECIALTY
INSURANCE COMPANY; QBE INSURANCE
CORPORATION; QBE FIRST INSURANCE
AGENCY, INC.; QBE FINANCIAL INSTITUTION
RISK SERVICES, INC.; and
PRAETORIAN INSURANCE COMPANY

         Defendants.

_____/

## STIPULATION AND SETTLEMENT AGREEMENT

IT IS HEREBY STIPULATED AND AGREED, by, between, and among Plaintiffs Ira

Marc Fladell, Sarah Crouch, Greg Olson, Tilena Ali, Margaret Zawistowski, and Danny and

Beverly Lane, on behalf of themselves and all Settlement Class Members as defined herein, and

Defendants Wells Fargo Bank, N.A. ("WFB"), Wells Fargo Insurance, Inc. ("WFI")

[collectively "the Wells Fargo Defendants"], Assurant, Inc. ("Assurant"), American Security

Insurance Company ("ASIC"), Voyager Indemnity Insurance Company ("VIIC"), and Standard

Guaranty Insurance Company ("SGIC") [collectively "the Assurant Defendants"], QBE

1

Specialty Insurance Company ("QBE Specialty"), QBE Insurance Corporation ("QBE Insurance"), QBE FIRST Insurance Agency, Inc. ("QBE FIRST"), QBE Financial Institution Risk Services, Inc. ("QBE Financial"), and Praetorian Insurance Company ("Praetorian") [collectively, "the QBE Defendants"][1], that the lawsuit originally captioned *Fladell et al. v. Wells Fargo Bank, N.A., et al.*, Case No. 1:13-cv-60721-FAM, in the United States District Court for the Southern District of Florida (the "Fladell Litigation" or the "Litigation"), and the matters raised by, or which could have been raised by, the Litigation, are settled, compromised, and dismissed on the merits and with prejudice on the terms and conditions set forth in this Settlement Agreement and the Release set forth herein, subject to the approval of the Court.

## 1. RECITALS

1.1.    On March 28, 2013, Plaintiff Fladell filed the instant putative nationwide class action complaint.  Class Counsel had been investigating and litigating LPI class cases against the Wells Fargo Defendants, Assurant and QBE Defendants before this Court for almost three years prior to filing the complaint in the Fladell Litigation.  Class counsel advises that over 30 depositions have been taken in this action and those cases, as well as over a million documents have been produced and reviewed.

1.2.    In the Fladell Litigation, Plaintiffs assert claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, breach of fiduciary duty, violations of Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), tortious interference with an advantageous business relationship, violations of the Truth in Lending Act and the Bank Holding Company Act, and violations of Racketeer Influenced and Corrupt

---

[1] The parties refer to all defendants collectively as "Defendants."

Organizations Act, and seek to certify a nationwide class of all borrowers who were charged for hazards (including wind-only), flood, or flood gap, LPI by the Wells Fargo Defendants.

1.3.     In response to the complaint, the Defendants filed, *inter alia*, very extensive motions to dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6). The Court heard extensive arguments on those motions at a hearing on May 16, 2013, and denied said motions, with leave to refile after further discovery. The Court limited Plaintiffs' discovery of the Assurant Defendants to that relating only to the filed rate doctrine.

1.4.     Thereafter, the Assurant and the Wells Fargo Defendants answered the Complaint. In their answers, the Assurant and the Wells Fargo Defendants denied any liability and asserted various affirmative defenses.

1.5.     The parties thereafter commenced voluminous discovery with the Wells Fargo and Assurant Defendants supplementing the production of documents over and above the more than two million pages of documents previously produced in parallel Wells Fargo lender placed insurance litigation involving the Assurant and QBE Defendants before this Court and across the country.

1.6     On August 12, 2013, Plaintiffs moved to substitute Plaintiff Olson for Plaintiff Stephens and lodged a Corrected Class Action Complaint. Plaintiffs were coordinating with other law firms that had Wells Fargo litigation. On September 9, 2013, the Court entered an order granting the motion and making the Corrected Class Action Complaint the operative pleading.

1.7     On September 16, 2013, the Court set this matter for trial on February 10, 2014. The Court also set a mediation deadline of December 10, 2013.

1.8     On November 14, 2013, Plaintiffs filed their motion for class certification with an extensive Appendix and an Expert Report. The Wells Fargo Defendants responded on December 9, 2013. The Assurant Defendants responded on December 10, 2013. The Motion for Class Certification is still pending before the Court.

1.9     In November 2013, the Assurant Defendants renewed their motion to dismiss this action with prejudice. Plaintiffs responded to said motion and the motion is currently pending.

1.10    In November 2013, the Wells Fargo Defendants moved for judgment on the pleadings. Plaintiffs responded to said motion and the motion is currently pending.

1.11    On November 18, 2013, a formal mediation of this matter with Rodney Max as the mediator ("Fladell Mediation") was held.

1.12    In advance of and during the mediation, the Wells Fargo and Assurant Defendants provided Plaintiffs and Class Counsel additional information concerning the Wells Fargo Defendants' LPI program, including aggregate LPI premium information across the country for all programs.

1.13    The Fladell Mediation involved an in-person mediation session, numerous conference calls, and the exchange of extensive written information concerning the claims raised in the Fladell Litigation. It also included the collection, production, and review of large volumes of electronically-stored data concerning LPI Policies.

1.14    On January 31, 2014, over two months after starting the mediation process, the Settling Parties reached a settlement in principle and the Settling Parties' counsel signed off on a settlement outline that identified the material terms for this Settlement Agreement.

1.15    On February 6, 2014, Named Plaintiffs filed an Amended Complaint to include claims against additional VIIC, SGIC, and the QBE Defendants, as well as add Plaintiff Zawistowski's claims relating to lender-placed flood insurance. (D.E. 147). Plaintiffs intend to

4

file a Second Amended Complaint which adds the claims of Tilena Ali, and Danny and Beverly Lane.

1.16    Class Counsel has significant experience litigating LPI claims, having represented plaintiffs in numerous putative class actions brought in the Southern District of Florida, including *Williams v. Wells Fargo Bank, N.A.*, No. 11-cv-21233, *Herrick v. JP Morgan Chase Bank, N.A.*, No. 13-21107, *Kunzelmann v. Wells Fargo Bank, N.A.*, No. 11-cv-81373, *Hall v. Bank of America, N.A.*, No. 12-cv-22700, *Lopez v. HSBC Bank USA, N.A.*, No. 13-cv-21104, *Popkin v. Citibank, N.A.*, 13-cv-60722, and the Fladell Litigation. All of the above-styled cases name the Assurant Defendants and/or QBE Defendants as defendants. Based on this experience, Class Counsel believes that the Fladell Litigation has significant merit and that the evidence developed supports Plaintiff Fladell's claims. Class Counsel recognizes and acknowledges, however, that prosecuting the Fladell Litigation through fact and expert discovery, class certification, dispositive motions, trial, and appeals will involve considerable uncertainty, time, and expense.

1.17.    Class Counsel has concluded that it is in the best interests of the Class as a whole that the claims asserted in the Fladell Litigation be resolved on the terms and conditions set forth in this Agreement. After extensive consideration and analysis of the factual and legal issues presented in the Fladell Litigation, and extensive mediation sessions, Class Counsel has reached the conclusion that the substantial benefits the Settlement Class Members will receive as a result of this Settlement are a very good result in light of the risks and uncertainties of continued litigation, including any motion for class certification, the expense that would be necessary to prosecute the Fladell Litigation through trial and any appeals that might be taken, and the likelihood of success at trial.

1.18.   Defendants have denied, and continue to deny each and every allegation of liability, wrongdoing, and damages, as they have substantial factual and legal defenses to all claims and class allegations in the Fladell Litigation. Defendants have always maintained, and continue to maintain, that they have acted in accordance with all applicable agreements and governing law. Nonetheless, Defendants have concluded that because the continuation of the Fladell Litigation would be protracted and expensive, it is desirable that the Fladell Litigation be fully and finally settled on a class-wide basis in the manner and upon the terms set forth in this Agreement.

1.19.   Without admitting any liability or wrongdoing whatsoever, Defendants agree to the terms of this Agreement, provided that all Released Claims are settled, compromised, and released, in order to resolve all issues relating to the subject matter of the Fladell Litigation.

## 2.   DEFINITIONS

As used herein, the following terms have the meanings set forth below.

2.1.   "Administrator" or "Settlement Administrator" means a third-party agent or administrator selected by Defendants (with the consent of the Class Counsel) to help implement and effectuate the terms of this Settlement Agreement.

2.2.   "Agreement" or "Settlement Agreement" means this Stipulation and Settlement Agreement, including all exhibits thereto.

2.3.   "Attorneys' Fees and Expenses" means such funds as may be awarded to Class Counsel to compensate them (and all other attorneys for Named Plaintiffs or the Settlement Class) for their fees and all expenses incurred by Named Plaintiffs or Class Counsel in connection with the Fladell Litigation.

6

2.4.    "Borrowers Who Were Charged But Did Not Pay And Still Owe Their LPI Premium" refers to those Settlement Class Members who were charged a Net Premium for an LPI Policy (hazard (including wind-only), flood, or flood gap) by the Wells Fargo Defendants during the Class Period and who still owe those charges, but who did not make one or more full monthly mortgage loan payment(s) to the Wells Fargo Defendants after either: (a) their Existing Escrow Account was adjusted to charge the increased premium for the LPI Policy; or (b) their Created Escrow Account was charged the increased premium for the LPI Policy.  This definition captures all Settlement Class Members who were charged for an LPI Policy by the Wells Fargo Defendants during the Class Period and who still owe those charges, but who are not Borrowers Who Paid Their LPI Premium (as defined in Paragraph 2.5 below).

a.    "Existing Escrow Account" refers to an escrow account for a borrower that existed prior to the placement of the LPI Policy.  The Wells Fargo Defendants sent notice informing the borrower that the Existing Escrow Account was being adjusted to reflect the charge for the LPI Policy.

b.    "Created Escrow Account" refers to an escrow account that was created for a borrower who did not have an escrow account prior to the placement of the LPI Policy, in order for the borrower to be charged for the LPI Policy.  The Wells Fargo Defendants sent notice informing the borrower that the Created Escrow Account had been established to reflect the charge for the LPI Policy.

2.5.    "Borrowers Who Paid Their LPI Premium" refers to those Settlement Class Members who were charged a Net Premium for an LPI Policy (hazard, flood, flood gap, and/or wind) by the Wells Fargo Defendants during the Class Period and who made one or more full monthly mortgage loan payment(s) to the Wells Fargo Defendants after either: (a) their Existing

7

Escrow Account was charged for the LPI Policy; or (b) their Created Escrow Account was charged for the LPI Policy.

2.6.    "Case Contribution Award" means compensation for the Named Plaintiffs in the Fladell Litigation for their time and effort undertaken in the Fladell Litigation.

2.7.    "Claim" means a written request for Claim Settlement Relief submitted by a Settlement Class Member to the Settlement Administrator, pursuant to the Claim Form Instructions in substantially the form of Exhibit B to this Agreement or as ultimately approved by the Court, using a Claim Form in substantially the form of Exhibit C to this Agreement or as ultimately approved by the Court.

2.8.    "Claim Deadline" means the last date by which a Claim submitted to the Settlement Administrator by a Settlement Class Member for Claim Settlement Relief must be postmarked, which shall be set by mutual agreement of the Parties to occur on a date no later than sixty (60) days after the Final Settlement Date.  All Claims postmarked on or before the Claim Deadline shall be timely, and all Claims postmarked after the Claim Deadline shall be untimely and barred from entitlement to any Claim Settlement Relief.

2.9.    Intentionally Left Blank

2.10.   "Claimant" means any Settlement Class Member who submits a Claim pursuant to this Settlement Agreement.

2.11.   "Claim Form" means the documents in the form attached as Exhibit C to this Agreement and/or as ultimately approved by the Court.

2.12.   "Claim Form Instructions" means the documents in the form attached as Exhibit B to this Agreement and/or as ultimately approved by the Court.

8

2.13.   "Claim Settlement Relief" means the cash award payment or credit to be made to Settlement Class Members who submit properly completed and timely Claim Forms to the Settlement Administrator pursuant to the Claim Form Instructions, and who qualify for such relief under this Settlement Agreement.

2.14.   "Class Counsel" means the law firms of Kozyak, Tropin, & Throckmorton, P.A., Podhurst Orseck, P.A., and Harke Clasby & Bushman LLP.

2.15.   "Class Notice" or "Notice" means the program of notice described in Section 6 of this Agreement to be provided to Settlement Class Members, including the Mail Notice and Internet site, which will notify Settlement Class Members, among other things, about their rights to opt out and object to the Settlement, the preliminary approval of the Settlement, the manner by which to submit a Claim, and the scheduling of the Final Approval Hearing.

2.16.   "Class Period" means the period of time defined in Paragraph 3.2 below.

2.17.   "Court" means the United States District Court for the Southern District of Florida.

2.18.   "Days" means calendar days, except that, when computing any period of time prescribed or allowed by this Agreement, the day of the act, event, or default from which the designated period of time begins to run shall not be included.  Further, when computing any period of time prescribed or allowed by this Agreement, the last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, Sunday, or legal holiday.  All calculations of days and times shall be adjusted to permit compliance by Defendants with the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1711-1715, including the notifications of appropriate regulators under 28 U.S.C. § 1715(b) and expiration of the 90-day review period in

9

28 U.S.C. § 1715 before the Fairness Hearing is held in the Litigation to review and approve the Settlement.

2.19.   "Defendants" mean all named defendants in the Fladell Litigation, including the Wells Fargo Defendants, the Assurant Defendants, and the QBE Defendants.

a.   "The Wells Fargo Defendants" means Wells Fargo Bank, N.A, its predecessors and successors, and all of their affiliates, including Wells Fargo Insurance, Inc., Wells Fargo Home Mortgage, which was formerly an affiliate and is now a division of Wells Fargo Bank, N.A., Wachovia Bank, FSB, Wachovia Mortgage and Wachovia Insurance Services, Inc.

b.   "Assurant Defendants" means Assurant, Inc., American Security Insurance Company, Voyager Indemnity Insurance Company, and Standard Guaranty Insurance Company.

c.   "QBE Defendants" means QBE Specialty Insurance Company ("QBE Specialty"), QBE Insurance Company ("QBE Insurance"), QBE FIRST Insurance Agency, Inc. ("QBE FIRST"), QBE Financial Institution Risk Services, Inc. ("QBE Financial"), and Praetorian Insurance Company ("Praetorian").

d.   Pursuant to Paragraph 14.1 of this Settlement Agreement, Named Plaintiffs will file an amended complaint prior to the Application for Preliminary Approval that adds VIIC, SGIC, QBE Specialty, QBE Insurance, QBE FIRST, QBE Financial, and Praetorian as party defendants to the Fladell Litigation and includes at least one named Plaintiff who was issued a hazard LPI policy by QBE Insurance, which was not flat cancelled and which he/she paid for, in part of in full, or for which he still owes payment. The Settling Parties agree that

10

these defendants shall be considered a "Defendant" for purposes of this Agreement. The Amended Complaint shall also add Plaintiffs Zawistowski and Tilena Ali as a party Plaintiffs.

2.20.   "Defense Counsel" means Defendants' counsel of record in the Fladell Litigation.

2.21.   "Final" with respect to the Judgment or to any award of Attorneys' Fees and Expenses means that the time for appeal or writ review has expired or, if an appeal or petition for review is taken and dismissed or the Settlement (or award of Attorneys' Fees and Expenses) is affirmed, the time period during which further petition for hearing, appeal, or writ of certiorari can be taken has expired. If the Judgment is set aside, materially modified, or overturned by the Court or on appeal, and is not fully reinstated on further appeal, the Judgment shall not become Final.

2.22.   "Final Approval" means the entry of the Judgment approving the Settlement after the Final Approval Hearing is conducted.

2.23.   "Final Approval Hearing" means the hearing held by the Court to determine whether the terms of this Agreement are fair, reasonable, and adequate for the Settlement Class as a whole, whether the Settlement should be granted final approval, and whether the Judgment should be entered.

2.24.   "Final Settlement Date" means the date on which the Judgment in this case becomes Final (as defined in Paragraph 2.21). If no appeal has been taken from the Judgment, the Final Settlement Date means the date on which the time to appeal has expired. If any appeal has been taken from the Judgment, the Final Settlement Date means the date on which all appeals, including petitions for rehearing, petitions for rehearing *en banc,* and petitions for certiorari or any other form of review, have been finally disposed of in a manner that affirms the Judgment.

11

2.25.   "Judgment" means the final Order and Judgment to be entered by the Court pursuant to the Settlement and in substantially similar form as Exhibit E.

2.26.   "Last Known Coverage Amount" refers to the amount of coverage that is available and known to the Wells Fargo Defendants (or available and known to any of the Wells Fargo Defendants' agents for tracking voluntary insurance or placing LPI) from the borrower's prior voluntary insurance policy on the property securing the loan.

2.27.   "Lender-Placed" or "LPI" means the placement of hazard (including wind-only), flood, or flood gap insurance pursuant to a mortgage loan agreement, home equity loan agreement, or home equity line of credit serviced by the Wells Fargo Defendants to cover a borrower's failure to maintain the required insurance coverage on the residential property securing the loan.

2.28.   "Litigation" or "Fladell Litigation" means the action originally captioned *Fladell et al. v. Wells Fargo Bank, N.A., et al.*, Case No. 1:13-cv-60721-FAM (S.D. Fla.), pending before Chief Judge Moreno in the Southern District of Florida.

2.29.   "LPI Policy" means a lender-placed residential hazard, flood, flood gap, or wind-only insurance policy placed pursuant to a mortgage loan agreement, home equity loan agreement, or home equity line of credit serviced by the Wells Fargo Defendants to cover a borrower's failure to maintain the required insurance coverage on the residential property securing the loan.

2.30.   "Mail Notice" means the "Notice" that is mailed by the Settlement Administrator to Settlement Class Members, in substantially the form attached as Exhibit A to this Agreement and/or as ultimately approved by the Court.  Mail Notice shall be mailed not less than ninety (90) days before the date set by the Court for the Final Approval Hearing.

12

2.31.   "Named Plaintiffs" or "Plaintiffs" mean Ira Marc Fladell, Sarah Crouch, Greg Olson, Margaret Zawistowski, Tilena Ali, and Danny and Beverly Lane.

2.32.   "Net Premium" means the amount of premium charged to a Settlement Class Member for an LPI Policy during the Class Period less any refund paid or credited to the Settlement Class Member.

2.33.   "Notice and Administrative Costs" means the reasonable and authorized costs and expenses of disseminating and publishing the Class Notice in accordance with the Preliminary Approval Order, and all reasonable and authorized costs and expenses incurred by the Settlement Administrator in administering the Settlement, including but not limited to costs and expenses associated with assisting Settlement Class Members, processing claims, escrowing funds and issuing and mailing Settlement Payments.  Notice and Administrative Costs do not include costs associated with Class Counsel's interactions with the Settlement Administrator, as detailed in Paragraph 7.4.

2.34.   "Objection Deadline" means the date identified in the Preliminary Approval Order and Class Notice by which a Settlement Class Member must serve written objections, if any, to the Settlement in accordance with Section 12 of this Agreement to be able to object to the Settlement.  The Objection Deadline shall be no later than thirty (30) days prior to the Final Approval Hearing or as the Court may otherwise direct.

2.35.   "Opt-Out Deadline" means the date identified in the Preliminary Approval Order and Class Notice by which a Request for Exclusion must be filed in writing with the Settlement Administrator in accordance with Section 11 of this Agreement in order for a Settlement Class Member to be excluded from the Settlement Class.  The Opt-Out Deadline shall be no later than thirty (30) days prior to the Final Approval Hearing or as the Court may otherwise direct.

13

2.36.   "Parties" means Named Plaintiffs and all Defendants in the Litigation.

2.37.   "Preliminary Approval Order" means the order in substantially similar form as Exhibit D and providing for, among other things, preliminary approval of the Settlement as fair, reasonable, and adequate; preliminary certification of the Settlement Class for settlement purposes only; dissemination of the Class Notice to the Settlement Class; and finding that the proposed Class Notice is reasonably calculated to apprise the Settlement Class Members of the pendency of the Fladell Litigation, the material terms of the proposed Settlement, and the Settlement Class Members' options and rights with respect thereto.

2.38.   "Preliminary Approval Application" means Named Plaintiffs' motion for the Court to preliminarily approve the Settlement and to enter the Preliminary Approval Order, including all exhibits and documents attached thereto.  Named Plaintiffs' Preliminary Approval Application shall be filed within seven (7) days after this Agreement is signed.

2.39.   "Premium" means the amount charged to a borrower by the Wells Fargo Defendants for an LPI Policy.

2.40.   "Refund" means the amount of money paid or credited to a borrower when an LPI Policy is cancelled.

2.41.   "Release" or "Releases" means the releases of all Released Claims by the Releasing Persons against the Released Persons, as provided for in Section 10 of the Settlement Agreement.

2.42.   "Released Claims" means all claims, actions, causes of action, law suits, debts, sums of money, payments, obligations, reckonings, promises, damages, penalties, attorney's fees

and costs, liens, judgments, demands, and any other forms of liability released pursuant to
Section 10 of the Settlement Agreement.

2.43.    "Released Persons" means:  (a) Defendants and each of their respective past or
present divisions, parents, subsidiaries, predecessors, investors, parent companies, acquired
companies, and affiliated companies (which shall include any person or entity which controls, is
controlled by, or is under common control with any such party), any direct or indirect subsidiary
of any of Defendants and each of their respective past or present divisions, parents, subsidiaries,
predecessors, investors, parent companies, acquired companies, and affiliated companies, and all
of the officers, directors, employees, agents, brokers, distributors, representatives, and attorneys
of all such entities; and (b) any other insurance carriers that issued or may have issued LPI
insuring real property owned by any Settlement Class Member for the Wells Fargo Defendants
and/or for any of the Wells Fargo Defendants' past or present divisions, parents, subsidiaries,
investors, parent companies, acquired companies, predecessors in interest, and affiliated
companies (which shall include any person or entity which controls, is controlled by, or is under
common control with any such party), including, but not limited to, any direct or indirect
subsidiary of any of them, and all of the officers, directors, employees, agents, brokers,
distributors, representatives, and attorneys of all such entities.

2.44.    "Releasing Persons" means Named Plaintiffs, all Settlement Class Members who
do not properly and timely opt out of the Settlement, and their respective family members, heirs,
administrators, successors, and assigns.

2.45.    "Request for Exclusion" means a written request from a Settlement Class
Member that seeks to exclude the Settlement Class Member from the Settlement Class and that
complies with all requirements in Section 11 of this Agreement.

15

2.46. "Settlement" or "Stipulation of Settlement" means the settlement set forth in this Agreement.

2.47. "Settlement Class" or "Class" means all members of the class of borrowers in the Fladell Litigation that will be certified by the Court for settlement purposes as more fully described in Section 3.1 herein.

2.48. "Settlement Class Member" means any member of the Settlement Class.

2.49. "Settlement Website" means the Internet site created by the Settlement Administrator pursuant to this Agreement to provide information about the Settlement, which shall have the Uniform Resource Locator of www.FladellSettlementInfo.com.

2.50. "Settling Parties" means, collectively, Defendants, Named Plaintiffs, and all Releasing Persons.

3. **CLASS DEFINITION, CLASS PERIOD AND CONDITIONS AND OBLIGATIONS RELATING TO THE EFFECTIVENESS OF THE SETTLEMENT**

3.1. The "Settlement Class" shall be as follows:

(a) All borrowers in the United States who, within the Class Period (as defined in Section 3.2 below), were charged by the Wells Fargo Defendants for a hazard (including wind-only), flood, or flood gap LPI Policy for residential property, and who, within the Class Period, either (i) paid to the Wells Fargo Defendants the Net Premium for that LPI Policy or (ii) Did Not Pay To and Still Owe the Wells Fargo Defendants the Net Premium for that LPI Policy. Excluded from the Class are: (i) individuals who are or were during the Class Period officers or directors of the Defendants or any of their respective affiliates; (ii) any justice, judge, or magistrate judge of the United States or any State, their spouses, and persons within the third degree of relationship to either of them, or the spouses of such persons; (iii) borrowers whose LPI Policy was cancelled in its entirety such that any premiums charged and/or collected were fully refunded to the borrower's escrow account; (iv) borrowers who are members of the settlement classes in *Williams v. Wells Fargo Bank* (S.D. Fla. Case No. 1:11-CV-21233-RNS) and *Guerrero v. Wells Fargo*

*Bank* (N.D. Cal. Case No. 12cv-4026 WHA); and, (v) all borrowers who file a timely and proper request to be excluded from the Class.

3.2    The "Settlement Class Period" shall commence on the dates indicated below,

based on the state in which the property is located, and shall continue through and including the

date of the Preliminary Approval Order preliminarily approving the settlement:

        (i)      California:  October 7, 2007.

        (ii)     Florida:  September 2, 2006.

        (iii)    Illinois:  July 5, 2002.

        (iv)     Indiana:  June 15, 2002.

        (v)      Louisiana:  February 19, 2003.

        (vi)     New Jersey:  April 2, 2007.

        (vii)    New York:  July 5, 2006.

        (viii)   Ohio:  August 8, 1998.

        (ix)     Pennsylvania:  April 7, 2005.

        (x)      Texas:  October 7, 2007.

        (xi)     All other states:  January 1, 2008.

3.3.    This Settlement Agreement is expressly contingent upon the satisfaction, in full,

of the material conditions set forth below.

3.4.    Condition No. 1:  District Court Approval.  The Settlement must be approved by

the Court in accordance with the following steps:

3.4.1.    Application for Preliminary Approval of Proposed Settlement, Class

Certification, and Class Notice.  After good faith consultation with counsel for Defendants,

Class Counsel will present a Preliminary Approval Application to the Court within 7 (seven)

days of this Agreement.  The Preliminary Approval Application shall include a Class Notice, in

17

substantially similar form as Exhibit A, and a Preliminary Approval Order, in substantially
similar form as Exhibit D. The Settling Parties shall, in good faith, take reasonable steps to
secure expeditious entry by the Court of the Preliminary Approval Order and shall request that
the Court schedule a Final Approval Hearing no earlier than ninety (90) days after the service of
the required Notices under 28 U.S.C. § 1715.

    3.4.2.  <u>Settlement Class Certification</u>.  In connection with the proceedings on
Preliminary and Final Approval of the proposed Settlement, the Named Plaintiffs shall seek
orders (preliminary and final, respectively) certifying the Settlement Class pursuant to Rule 23
of the Federal Rules of Civil Procedure for purposes of this Settlement only.

    3.4.3.  <u>Entry of Preliminary Approval Order</u>.  The Court shall enter a Preliminary
Approval Order in substantially similar form as Exhibit D, which shall, among other things:

        a.  Certify for purposes of a settlement a nationwide Settlement Class,
approving the Named Plaintiffs as class representatives and appointing Class Counsel, pursuant
to Fed. R. Civ. P. 23;

        b.  Preliminarily approve the Settlement as fair, reasonable and
adequate;

        c.  Order the issuance of Class Notice to the Settlement Class, and
determine that such Notice complies with all legal requirements, including, but not limited to,
the Due Process Clause of the United States Constitution;

        d.  Schedule a date and time for a Final Approval Hearing to
determine whether the Preliminary Approval Order should be finally approved by the Court;

e.     Require Settlement Class Members who wish to exclude themselves to submit an appropriate and timely written request for exclusion by the Opt-Out Deadline, as directed in the Settlement Agreement and Class Notice, and advise that a failure to do so shall bind those Settlement Class Members who remain in the Settlement Class;

f.     Require Settlement Class Members who wish to object to the Settlement Agreement to submit an appropriate and timely written statement by the Objection Deadline, as directed in the Settlement Agreement and Class Notice, and advise that a failure to do so shall prevent those Settlement Class Members from doing so;

g.     Require attorneys representing any Settlement Class Member, at the Class Member's expense, to file a notice of appearance;

h.     Authorize the Settling Parties to take all necessary and appropriate steps to establish the means necessary to implement the Settlement Agreement; and

i.     Issue related orders to effectuate the preliminary approval of the Settlement Agreement.

3.4.4.   <u>Issuance of Class Notice</u>.  Pursuant to the Preliminary Approval Order to be entered by the Court, the Settlement Administrator shall cause the Class Notice to be issued in accordance with Section 6 below.

3.4.5.   <u>Final Approval Hearing</u>.  In connection with the Preliminary Approval Application, the Settling Parties shall request that the Court schedule and conduct a hearing after dissemination of Class Notice, at which it will consider whether the Settlement is fair, reasonable, and adequate pursuant to Rule 23 of the Federal Rules of Civil Procedure. Specifically, Named Plaintiffs, after good faith consultation with counsel for all Defendants,

19

shall request that, on or after the Final Approval Hearing, the Court: (i) enter the final

Judgment, granting Final Approval of the Settlement and dismissing with prejudice this

Litigation; (ii) determine the legal fees and expenses that should be awarded to Class Counsel as

contemplated in the Settlement Agreement; and (iii) determine the Case Contribution Award, if

any, that should be awarded as contemplated by the Settlement Agreement.  Any application for

Attorneys' Fees and Expenses shall be made at least forty-five (45) days prior to the Final

Approval Hearing.  The Settling Parties agree to support entry of final Judgment.  The Settling

Parties will reasonably cooperate with one another in seeking entry of the final Judgment.

   3.5.   Condition No. 2:  Finality of Judgment.  The Court shall enter a final Judgment in

substantially similar form as Exhibit E.  The final Judgment must be Final in accordance with

Paragraph 2.21 above, and shall, among other things:

   a.   Find that (1) the Court has personal jurisdiction over all Settlement Class

Members; (2) the Court has subject matter jurisdiction over the claims asserted in this Litigation;

and (3) venue is proper;

   b.   Finally approve the Settlement Agreement, pursuant to Fed. R. Civ. P. 23,

as fair, reasonable, and adequate;

   c.   Finally certify the Settlement Class for settlement purposes only;

   d.   Find that the form and means of disseminating the Class Notice complied

with all laws, including, but not limited to, the Due Process Clause of the United States

Constitution;

e.  Enter final Judgment with respect to the claims of all Settlement Class Members and dismiss the claims of all Settlement Class Members and the Fladell Litigation with prejudice;

f.  Make the Releases in Section 10 of the Settlement Agreement effective as of the date of the final Judgment;

g.  Permanently bar and enjoin Named Plaintiffs and all Settlement Class Members who have not opted out of the settlement, from filing, commencing, prosecuting, intervening in, or participating in (as class members or otherwise) any action in any jurisdiction based on or relating to any of the Released Claims or the facts and circumstances relating thereto;

h.  Permanently bar and enjoin Named Plaintiffs and all Settlement Class members who have not opted out of the settlement from organizing Settlement Class Members, or soliciting the participation of Settlement Class Members, in a separate class for purposes of pursuing any action (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action in any jurisdiction) based on or relating to any of the Released Claims or the facts and circumstances relating thereto;

i.  Find that, by operation of the entry of the Judgment, Named Plaintiffs and all Settlement Class Members shall be deemed to have forever released, relinquished, and discharged the Released Persons from any and all Released Claims, including all claims arising out of, relating to, or in connection with the initiation, settlement, prosecution, or dismissal of the Fladell Litigation.

j.  Authorize the Settling Parties to implement the terms of the Settlement Agreement;

21

k.     Retain jurisdiction relating to the administration, consummation, enforcement, and interpretation of the Settlement Agreement, the final Judgment, and for any other necessary purpose; and

l.     Issue related orders to effectuate the Final Approval of the Settlement Agreement and its implementation.

## 4.     SETTLEMENT CONSIDERATION, BENEFITS, AND OTHER RELIEF

4.1.   In consideration for the Releases set forth in Section 10, Defendants will provide the following benefits.

4.2.   <u>Injunctive Relief Relating to the Wells Fargo Defendants.</u>

4.2.1.   Subject to Paragraph 4.4 below, and commencing no later than 120 days after the Final Settlement Date and continuing for a period of five (5) years thereafter, Wells Fargo agrees to the following restrictions with respect to the placement of LPI:

a.     Neither Wells Fargo, Wells Fargo Insurance, Inc., nor any other Wells Fargo affiliate will receive commissions as a result of the placement of LPI.

b.     Neither Wells Fargo nor any affiliate will enter into any quota share reinsurance arrangements on new or renewal LPI policies.

c.     Neither Wells Fargo nor any affiliate will accept payments from any LPI insurer or LPI vendor for any administrative or other service associated with LPI.

d.     Neither Wells Fargo nor any affiliate will place LPI through an insurer or vendor affiliated with Wells Fargo or any or its affiliates.

e.     LPI policies shall be dual interest for any coverage for which Wells Fargo attempts to recoup from borrowers the LPI premiums paid by Wells Fargo to the LPI insurer; "dual interest" means that the borrower shall have the right to file a claim under the policy.

f.      Unless otherwise required by law or contractual agreement, hazard LPI coverage shall be established at the Last Known Coverage Amount under the borrower's prior voluntary policy[2] ("LKCA") or, if the LKCA is unavailable to Wells Fargo, at the then unpaid principal balance of the loan, but not to exceed replacement cost value, if known to Wells Fargo.

g.      If the borrower's voluntary policy will lapse because of non-payment of premium, Wells Fargo will advance funds to maintain the borrower's voluntary policy in force, provided that: (a) the loan is escrowed for insurance with Wells Fargo; (b) the borrower has provided Wells Fargo with written authorization allowing Wells Fargo or the Wells Fargo Defendants or renew the insurance policy on the borrower's behalf; and, (c) Wells Fargo receives a written notice stating that the voluntary insurance premiums have not been paid by the borrower and identifying the amount of the premiums for the borrower's existing policy.  The borrower shall be responsible for all funds advanced pursuant to the escrow agreement between the borrower and Wells Fargo.

h.      Wells Fargo agrees to credit the borrower's account with any LPI refund within 15 days of receipt of evidence of voluntary insurance coverage which complies with Wells Fargo's insurance requirements.

4.3.    <u>Injunctive Relief Relating to the Assurant Defendants.</u>

4.3.1   Subject to Paragraph 4.4 below, and commencing no later than 120 days after the Final Settlement Date, American Security Insurance Company ("ASIC"), Standard Guaranty Insurance Company ("SGIC"), and Voyager Indemnity Insurance Company ("VIIC") shall for a period of five (5) years thereafter, not provide any of the following to Wells Fargo or affiliates:

a.      LPI commissions to Wells Fargo-affiliated agents or brokers;

b.      LPI quota share reinsurance arrangements with Wells Fargo-affiliated insurance companies;

c.      Payments from ASIC, SGIC or VIIC to Wells Fargo or affiliates for any administrative or other service associated with LPI or other LPI-related services; or

---

[2] "Voluntary policy" refers to a hazard, flood, flood gap, or wind insurance policy chosen by a borrower as opposed to insurance coverage provided by an LPI policy.

d.     Accept payments from Wells Fargo or affiliates for below-cost or free outsourced services provided by ASIC, SGIC or VIIC to Wells Fargo or affiliates in connection with LPI; provided however, that outsourced services do not include expenses associated with tracking functions that ASIC, SGIC or VIIC incur for their own benefit to identify and protect themselves from (a) exposure to lost premium and losses on properties on which no other insurance coverage is in effect or (b) administrative costs associated with providing and subsequently canceling LPI on properties on which LPI is not required.

4.4.    Conflict.  Should any provision of Sections 4.2 or 4.3 conflict or be inconsistent with any existing or subsequently adopted state or federal statute, regulation, rule, order or regulatory directive, or any existing or subsequently adopted agency or investor rule or requirement, such statute, regulation, rule, order, regulatory directive or requirement shall control.  In that event, the Stipulation of Settlement and any Final Judgment confirming the Stipulation of Settlement shall be deemed amended to conform to such statute, regulation, rule, order, requirement, or regulatory directive.  Wells Fargo, ASIC, SGIC and VIIC shall not be liable for engaging in any practice or failing to engage in any practice during the 5-year period for a prospective prohibitory relief where such conduct was authorized by state or federal statute, regulation, rule, order or regulatory directive or by any investor rule or requirement.

4.5.    Settlement Monetary Consideration.  Those Settlement Class Members who submit a timely, valid, and verified Claim Form, substantially in the form of Exhibit C, by the Claim Deadline in the manner required by this Settlement Agreement, shall receive Claim Settlement Relief under the following terms and conditions.

4.5.1.   Overview.  There will be two categories of Claim Settlement Relief available to Settlement Class Members, with differing claim requirements:  (I) Settlement Class Members who are Borrowers Who Were Charged But Did Not Pay And Still Owe Their LPI

24

Premium; and (2) Settlement Class Members who are Borrowers Who Paid Their LPI Premium.

As reflected in the Claim Form (Exhibit C), Claimants making Claims must check a box on the

Claim Form representing and affirming that they qualify for one of these two categories (and for

one of the categories meet certain additional identity confirmation requirements).

4.5.2.   Credit or Payment to Borrowers Who Were Charged But Did Not Pay
And Still Owe Their LPI Premium.  For those Borrowers Who Were Charged But Did Not Pay

And Still Owe Their LPI Premium who submit a timely, valid, and verified Claim Form,

Defendants shall have the option, at their discretion, of either crediting to the mortgage escrow

account for the Settlement Class Member's loan at issue, or paying to that Settlement Class

Member via check, an amount equal to 11% of the Net Premium charged to the Settlement Class

Member during the Class Period for the LPI policy by the Wells Fargo Defendants if the charge

occurred prior to March 24, 2012 and an amount equal to 7% of the Net Premium if the charge

for the LPI policy by the Wells Fargo Defendants occurred after March 24, 2012.

4.5.3.   Payment to Borrowers Who Paid Their LPI Premium.  For those

Borrowers Who Paid Their LPI Premium who submit a timely, valid, and verified Claim Form,

Defendants shall pay to each such Settlement Class Member via check an amount equal to 11%

of the Net Premium charged to the Settlement Class Member during the Class Period for the LPI

policy by the Wells Fargo Defendants if the charge occurred prior to March 24, 2012 and an

amount equal to 7% of the Net Premium if the charge for the LPI policy by the Wells Fargo

Defendants occurred after March 24, 2012.

25

5.   **RETENTION OF SETTLEMENT ADMINISTRATOR AND COSTS**

5.1.   All Notice and Administrative Costs will be paid by Defendants.

5.2.   The Settlement Administrator shall administer the Settlement in a cost-effective and timely manner. Without limiting any of its other obligations as stated herein, the Settlement Administrator shall be responsible for Mail Notice, administration of Claim Settlement Relief, and providing all other related support, reporting, and administration as further stated in this Agreement. Defendants may direct the Settlement Administrator to assist with various additional administrative tasks in implementing the Settlement as Defendants shall deem appropriate in their sole discretion.

5.3.   Defendants will coordinate with the Settlement Administrator to provide Mail Notice to the Settlement Class, as provided in this Settlement Agreement. Because the information about Settlement Class Members that will be provided to the Settlement Administrator will consist of confidential information, non-public personal information, and other information protected by privacy laws, the Settlement Administrator will execute a non-disclosure agreement and will take all reasonable steps to ensure that any information provided to it by Defendants will be used solely for the purpose of effecting this Settlement.  Any such information provided to the Settlement Administrator will not be provided to Named Plaintiffs or Class Counsel, except as permitted by Paragraph 7.4. The Settlement Administrator shall administer the Settlement in accordance with the terms of this Settlement Agreement and, without limiting the foregoing, shall treat any and all documents, communications, and other information and materials received in connection with the administration of the Settlement as confidential and shall not disclose any or all such documents, communications, or other

26

information to any person or entity except as provided for in this Settlement Agreement or by court order.

5.4.   <u>W9 Forms</u>.  The Settlement Administrator shall complete and provide to Defendants any W9 forms necessary for Defendants to pay for the Notice and Administrative Costs and to otherwise implement this Settlement.

## 6.   NOTICE TO THE CLASS

6.1.   **Mail Notice:**  Subject to the requirements of the Preliminary Approval Order, Notice to those members of the Settlement Class for whom the electronic records of Wells Fargo reflect a last known mailing address, shall be by means of separate first class mailings to those names and addresses.  The Notices shall be mailed not less than ninety (90) days before the date set by the Court for a Fairness Hearing regarding the settlement. The Mail Notice of Class Action, Proposed Settlement, Fairness Hearing, Right to Appear, Instructions and Class Action Claim Form shall detail how those Class members so desiring may opt out or object to the settlement, and how members of the Class may make a claim for settlement relief as described in Section 4.5 above.  The Mail Notice shall include Instructions and a Claim Form described in Section 7 of this Settlement Agreement, in the forms of Exhibits A and B, attached,  (provided that the font size, folding, and other printing elements or presentation may be adjusted to accommodate a booklet format and for efficient envelope and postage considerations).  The parties shall also prepare a Spanish-language translation of the Mail Notice, Claim Instructions, and Claim Form, to be mailed to all Class Members together with the English language version. After posting of the Mail Notice by the Settlement Administrator with the United States Postal Service, for any Mail Notices returned as undeliverable, the Settlement Administrator shall utilize the National Change of Address database (the "NCOA") in an attempt to obtain better

27

addresses for such returned Notices, and should the NCOA show a more current address, the

Settlement Administrator shall post the returned Mail Notice to the more current address;

*provided however*, if a determination is made in good faith by the Settlement Administrator that

it is not possible to further update any particular Class Member's address(es) in sufficient time

to repost the Class Notice(s) at least twenty (20) days before the scheduled Fairness Hearing,

then the Settlement Administrator need make no further efforts to provide further Mail Notice to

such person(s).

6.2     **Internet Site:** No later than the posting of the Mail Notice, the Settlement

Administrator shall establish an Internet site which shall contain copies of the Stipulation of

Settlement and Exhibits and the Mail Notice.  The Internet site shall also contain Instructions

and a Class Action Claim Form which may be downloaded or printed from the Internet site.  The

Internet site shall have a Uniform Resource Locator which identifies the Internet site as the

FladellSettlementInfo.com site.  The Internet site shall remain open and accessible through the

last day for Class Members to submit a Claim for Settlement Relief.  Class Members may

upload and file their claim forms through the website.

6.3     **Publication:** A similar but abbreviated Summary Publication Notice of Class

Action, Proposed Settlement, Fairness Hearing, and Right to Appear shall be published not less

than forty-five (45) days before the date set by the Court for Fairness Hearing regarding this

Settlement, which abbreviated Summary Publication Notice shall not be less than 1/8 page in

size, and shall be published once in *USA Today* (on a date falling on Monday through

Thursday).  The abbreviated Summary Publication Notice shall detail how those Class members

so desiring may opt out or object to the settlement, and how Class members may access an

internet address where they may download a Claim Form necessary to make a Claim for

Settlement Relief, and toll-free phone number where they may call to request further information on the Settlement. The form of the Summary Publication Notice shall be agreed upon by the Parties, and the font size, layout, and other presentation elements shall be adjusted to accommodate publication considerations.

6.4.   Claim Form. As reflected in Exhibits B and C, for Settlement Class Members (both Borrowers Who Were Charged But Did Not Pay And Still Owe Their LPI Premium and Borrowers Who Paid Their LPI Premium) to submit a valid Claim, they must provide all of the following information and make the following written affirmations on the Claim Form: (a) Claimant's current address, phone number, date of birth, and the last four numbers of Claimant's Social Security Number; (b) that Claimant is or was during the Class Period listed as an insured or additional named insured under an LPI Policy insuring improvements to the Claimant's real property; (c) that Claimant was charged by The Wells Fargo Defendants a Net Premium for his or her LPI Policy; (d) that since the issuance of the LPI Policy, Claimant has not filed a Petition under Chapter 7 of the United States Bankruptcy Code, and the Claimant's indebtedness on their residence secured by their deed of trust or mortgage has not been compromised or discharged in bankruptcy; and (e) that Claimant attests and affirms all of the foregoing information under the following declaration: "I declare (or certify, verify, or state) under penalty of perjury that the information provided by me on this Claim Form is true and correct." A separate Claim Form must be submitted for each LPI Policy for which the Settlement Class Member seeks Claim Settlement Relief. All insureds or named insureds on the LPI Policy must complete and sign the Claim Form.

6.4.1.  In order for Borrowers Who Paid Their LPI Premium to submit a valid Claim, they must make the affirmations set forth in Paragraph 6.2 and also confirm their identity by one of the following methods:

a.     The signature of a witness who is 18 years of age or older representing and affirming that they have witnessed the Claimant sign the Claim Form, and this witness affirmation shall include the following: "I declare (or certify, verify, or state) under penalty of perjury that I witnessed the signing of this Claim Form by the Claimant and the foregoing is true and correct;" or

b.     Provide a copy of a form of identification that contains a signature and photograph of the Claimant; or

c.     Provide a copy of a Wells Fargo Mortgage Statement issued to the Claimant; or

d.     Provide a notarial signature affirming that the Claimant executed the Claim Form making the required affirmations under oath in the presence of the notary, and bearing evidence of the notarial authority in compliance with the law of the state in which it is being executed (*e.g.*, a seal, *etc.*).

6.5.   Time for Notice.  For those Settlement Class Members for which Defendants' electronic records reflect a last-known mailing address, the Mail Notice shall be mailed by first-class mail not less than sixty (60) days before the date set by the Court for a Final Approval Hearing regarding the Settlement.

## 7.     CLAIM FILING, REVIEW, AND APPROVAL PROCESS

7.1.   Claim Filing Process.  Settlement Class Members shall be permitted to make a

Claim for Claim Settlement Relief by mailing (either through posting with the United States

Postal Service or through a private mail carrier, such as UPS or Federal Express, provided that

proof of the mail date is reflected on the label of the mailing) a written Claim Form providing

the information, affirmations, and where appropriate, the identity confirmation required in

Paragraph 6.2.1 above, to the Settlement Administrator, on a date no later than the Claim

Deadline.  In addition, a written Claim Form will be available on the Settlement Website for

Settlement Class Members to download or print out and mail to the Settlement Administrator

pursuant to this Section.  Settlement Class Members will be permitted to upload and file

completed Claims Forms through the website.  Any Settlement Class Member who does not

mail, or properly upload, a completed Claim Form by the Claim Deadline shall be deemed to

have waived any claim to Claim Settlement Relief and any such Claim Settlement Form will be

rejected.

7.2.   Claim Review Process.  Following approval of the Settlement at the Final

Approval Hearing, the Settlement Administrator shall confirm that each Claim Form submitted

is in the form required, that each Claim Form includes the required affirmations, information,

and, where appropriate, identity confirmation detailed in Paragraph 6.2.1 above, that each Claim

Form was submitted in a timely fashion, and that the Claimant is a member of the Settlement

Class.  Full compliance with the requirements of Section 6 and the Claim Form shall be

necessary for the submission of a valid Claim, and the absence of any of these requirements

shall invalidate the proffered Claim.  All such Claim criteria shall be strictly enforced.  Any

Claimant's failure to provide any of the required affirmations, information, or where

appropriate, identity confirmation on the Claim Form, shall result in the putative Claim being

deemed invalid, and no Settling Defendant (or any other Defendant) shall have any further

31

obligation to process or make any settlement payment or account credit on such invalid Claim. The Settlement Administrator shall not receive any incentive for denying claims.

7.2.1.   To aid in the completion and processing of Claims, the Settlement Administrator shall establish a toll-free interactive voice response phone number with script recordings of information about this Settlement, including information about the Claim Form, utilizing the relevant portions of the language contained in the Notice and Claim Form. The phone number shall remain open and accessible through the last day for Settlement Class Members to submit a Claim. The Settlement Administrator shall make reasonable provision for Class Counsel to be promptly advised of recorded messages left on the phone number by Settlement Class Members concerning the Fladell Litigation and/or this Settlement, so that Class Counsel may timely and accurately respond to such inquiries.

7.3.   Claim Payment.  Upon confirmation by the Settlement Administrator that the Claim Form is valid, the Settlement Administrator shall make a determination as to the amount of the Claim in accordance with the Net Premium information appearing in the Defendants' electronic records and the formula for providing the Claim Settlement Relief set forth in Paragraph 4.5 (including Paragraphs 4.5.1, 4.5.2, and 4.5.3) above.

7.3.1.   Right to Audit.  Defendants shall have the right to audit each Claim Form, including reviewing the individual loan and/or insurance files for each Claimant who submits a Claim Form. If Defendants' audit reveals that a Claim Form contains inaccurate information, Defendants shall notify the Settlement Administrator as to the inaccuracy of the Claim prior to the deadline for processing the Claim pursuant to Paragraphs 7.3.3 and 7.3.4 below, while also providing written notification of the inaccurate Claim to Class Counsel. At Defendants' discretion, the Claim shall be processed in accordance with the information from

32

Defendants' records (rather than the inaccurate information on the Claim Form), and may, if necessary, be denied. Defendants shall complete their audit of Claims no later than one-hundred and fifty days (150) days after the Final Settlement Date, and shall have the right to request from the Settlement Administrator any and all information necessary to conduct and complete their audit.

      7.3.2.  Notification.  Within ninety (90) days after the Final Settlement Date, the Settlement Administrator shall provide the Settling Parties with a list of all Settlement Class Members who filed a Claim, whether the Claim was rejected or accepted, and if rejected, the reason it was rejected, and if accepted, the amount to be paid by the Defendants or to be credited by the Wells Fargo Defendants to the Claimant's escrow account.  The Parties will use their best efforts to amicably resolve any dispute about the processing of any Claim.

      7.3.3.  Claimants who are Borrowers Who Paid Their LPI Premium.  The Settlement Administrator shall have one hundred eighty (180) days after the Final Settlement Date within which to process the Claims and remit the appropriate amounts by check to the Claimants who are Borrowers Who Paid Their LPI Premium.  Any check that is remitted to a Claimant who falls within the group of Borrowers Who Paid Their LPI Premium and that is not negotiated within ninety (90) days after issuance shall be cancelled (the checks shall state "void after 90 days"), and Defendants shall not have any further obligation to continue efforts to distribute Claim Settlement Relief to such Claimant.  The Settlement Administrator shall refund to the Defendants all funds on deposit to fund checks that become "void after 90 days."  No interest shall be included as an element of, or be payable or paid on, any claimed amount.

      7.3.4.  Claimants who are Borrowers Who Were Charged But Did Not Pay And Still Owe Their LPI Premium.  The Defendants shall have one hundred eighty (180) days after

the Final Settlement Date within which to either credit the appropriate amount to the escrow

accounts of Claimants who are Borrowers Who Were Charged But Did Not Pay And Still Owe

Their LPI Premium or to cause the Settlement Administrator to issue checks in the appropriate

amount, in the sole discretion of Wells Fargo. No interest shall be included as an element of, or

be payable or paid, on any credited amount.

        7.3.5. <u>Funding</u>. Defendants shall fund all amounts required by the Settlement

Administrator for distribution of Claim Settlement Relief to Claimants.

      7.4. <u>Information Available to Class Counsel</u>. Class Counsel shall have the right to

interact directly with the Settlement Administrator regarding the administration of this

Settlement provided that: (a) Named Plaintiffs pay for any costs associated with such

interactions; and (b) Defendants are notified of all such interactions. Upon the reasonable

request of Class Counsel, the Settlement Administrator shall inform Class Counsel, among other

things and with the exception of confidential information, non-public personal information, and

other information protected by privacy laws, of the amount of any Settlement Class Member's

LPI premium associated with a Claimant's LPI Policy reflected in the electronic information

provided to the Settlement Administrator by Defendants. Nothing in this Paragraph or this

Settlement Agreement shall authorize the Settlement Administrator to disclose to Class Counsel

any confidential information, non-public personal information, and other information protected

by privacy laws.

**8.**    **COVENANTS**

    The Settling Parties covenant and agree as follows:

    8.1. <u>Covenants Not to Sue</u>. Named Plaintiffs and the Settlement Class covenant and

agree: (i) not to file, commence, prosecute, intervene in, or participate in (as class members or

34

otherwise) any action in any jurisdiction based on or relating to any of the Released Claims, or the facts and circumstances relating thereto, against any of the Released Persons; (b) not to organize or solicit the participation of Settlement Class Members in a separate class for purposes of pursuing any action (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action in any jurisdiction) based on or relating to any of the Released Claims or the facts and circumstances relating thereto; and (c) that the foregoing covenants and this Agreement shall be a complete defense to any of the Released Claims against any of the Released Persons.

8.2.   <u>Cooperation</u>.  The Settling Parties agree to cooperate reasonably and in good faith with the goal of obtaining entry of a final Judgment as quickly as is reasonably practicable and expeditiously reaching agreement on the matters requiring mutual agreement as set forth in this Settlement Agreement, including, but not limited to, the expeditious agreement to the terms of all class notice documents and settlement administration protocols, and the preparation and execution of all other reasonable documents necessary to achieve Final Approval of the Settlement by the Court.  Further, the Settling Parties shall consult with mediator Rodney Max as necessary in effectuating this Paragraph.

9.   **REPRESENTATIONS AND WARRANTIES**

9.1.   <u>Representations and Warranties.</u>

9.1.1.   Named Plaintiffs represent and warrant that they are the sole and exclusive owner of all Released Claims and that they have not assigned or otherwise transferred any interest in any of the Released Claims against any of the Released Persons, and further covenant that they will not assign or otherwise transfer any interest in any of Named Plaintiffs' Released Claims.

35

9.1.2.  Named Plaintiffs represent and warrant that they have no surviving claim or cause of action against any of the Released Persons with respect to any of the Released Claims.

9.2.  <u>The Settling Parties' Representations and Warranties</u>.  The Settling Parties, and each of them on his, her, or its own behalf only, represent and warrant:

9.2.1.  That they are voluntarily entering into the Settlement Agreement as a result of arm's-length negotiations among their counsel, that in executing the Settlement Agreement, they are relying solely upon their own judgment, belief, and knowledge, and the advice and recommendations of their own independently selected counsel, concerning the nature, extent and duration of their rights and claims hereunder and regarding all matters which relate in any way to the subject matter hereof; and that, except as provided herein, they have not been influenced to any extent whatsoever in executing the Settlement Agreement by representations, statements, or omissions pertaining to any of the foregoing matters by any Party or by any person representing any party to the Settlement Agreement.  Each of the Settling Parties assumes the risk of mistake as to facts or law.

10.  **RELEASES**

10.1.  <u>Released Claims of Settlement Class</u>.  Upon the Final Settlement Date, each member of the Settlement Class, other than the Named Plaintiffs, shall, by operation of the final Judgment, be deemed to have fully, conclusively, irrevocably, forever, and finally released, relinquished, and discharged the Released Persons from any and all claims, actions, causes of action, suits, debts, sums of money, payments, obligations, promises, damages, penalties, attorney's fees and costs, liens, judgments, and demands of any kind whatsoever that each member of the Settlement Class may have on or before the Final Settlement Date or may have had in the past, whether in arbitration, administrative, or judicial proceedings, whether as

36

individual claims or as claims asserted on a class basis, whether past or present, mature or not yet mature, known or unknown, suspected or unsuspected, whether based on federal, state, or local law, statute, ordinance, regulations, contract, common law, or any other source, that were or could have been sought or alleged in the Litigation or that relate, concern, arise from, or pertain in any way to the Released Persons' conduct, policies, or practices concerning LPI Policies placed or charged by the Wells Fargo Defendants during the Class Period.

     10.1.1. The Release in Paragraph 10.1 shall include, but not be limited to, all claims related to charges for the Wells Fargo Defendants' placement of LPI Policies during the Class Period; Wells Fargo's insurance requirements; the relationship, whether contractual or otherwise, between the Wells Fargo Defendants and the Assurant Defendants, as well as the Wells Fargo Defendants and the QBE Defendants, regarding LPI, including, but not limited to, the procuring, underwriting, placement, insurance tracking, or costs of LPI Policies; the coverage amount, duration, issue date, alleged "backdating," or alleged excessiveness of any LPI Policies placed or charged by the Wells Fargo Defendants; the payment or receipt of commissions, expense reimbursements, alleged "kickbacks," or any other compensation under any LPI Policies placed or charged by the Wells Fargo Defendants; any alleged "tying" arrangement involving the Wells Fargo Defendants and LPI; any alleged breach of fiduciary duty by the Wells Fargo Defendants concerning LPI Policies; any alleged tortious interference by the Assurant Defendants or the QBE Defendants with mortgage contracts serviced by the Wells Fargo Defendants; the disclosure or non-disclosure of any payment, expenses, fees, charges, or feature pertaining to or under any LPI Policies placed or charged by the Wells Fargo Defendants; the receipt or non-disclosure of any benefit under any LPI Policies placed or charged by the Wells Fargo Defendants; the content, manner, or accuracy of any

communications regarding the placement of any LPI Policies by the Wells Fargo Defendants; and to the regulatory approval or non-approval of any LPI Policy, or the premium thereon, placed or charged by the Wells Fargo Defendants.

10.1.2. The Release in Paragraph 10.1 shall not cover claims arising after the Final Settlement Date, or claims for benefits made under any LPI Policy placed or charged by the Wells Fargo Defendants. Nothing in Paragraph 10.1 shall be deemed a release of any Settlement Class Member's respective rights and obligations under this Agreement.

10.1.3. Except to the extent that any such obligation is being released pursuant to Paragraph 10.1, this Settlement Agreement shall not release Defendants from any existing obligation to any Settlement Class Member, other than Named Plaintiffs, under any loan, note, mortgage, or deed of trust. This provision is not meant to and does not limit the Release in Paragraph 10.1.

10.2.   Released Claims of Named Plaintiffs.  Upon the Final Settlement Date, Named Plaintiffs, on behalf of themselves, their family members, heirs, guardians, assigns, executors, administrators, predecessors, and successors, hereby release and discharge the Released Persons from any and all claims, actions, causes of action, suits, debts, sums of money, payments, obligations, reckonings, promises, damages, penalties, attorney's fees and costs, liens, judgments, and demands of any kind whatsoever that the Named Plaintiffs may have on or before the Final Settlement Date or may have had in the past, whether in arbitration, administrative, or judicial proceedings, whether as individual claims or as claims asserted on a class basis, whether past or present, mature or not yet mature, known or unknown, suspected or unsuspected, whether based on federal, state, or local law, statute, ordinance, regulations, contract, common law, or any other source.  In agreeing to this Release, Named Plaintiffs

38

explicitly acknowledge that unknown losses or claims could possibly exist and that any present

losses may have been underestimated in amount or severity.

10.2.1. The Release in Paragraph 10.2 shall include, but not be limited to, all

claims related to charges for the Wells Fargo Defendants' placement of LPI Policies; Wells

Fargo's insurance requirements; the relationship, whether contractual or otherwise, between the

Wells Fargo Defendants and the Assurant Defendants, as well as the Wells Fargo Defendants

and the QBE Defendants, regarding LPI, including, but not limited to, the procuring,

underwriting, placement, insurance tracking, or costs of LPI Policies; the coverage amount,

duration, issue date, alleged "backdating," or alleged excessiveness of any LPI Policies placed or

charged by the Wells Fargo Defendants; payment or receipt of commissions, expense

reimbursements, alleged "kickbacks," or any other compensation under any LPI Policies placed

or charged by the Wells Fargo Defendants; any alleged "tying" arrangement involving the Wells

Fargo Defendants and LPI; any alleged breach of fiduciary duty by the Wells Fargo Defendants

concerning LPI Policies; any alleged tortious interference by Assurant Defendants or QBE

Defendants with mortgage contracts serviced by the Wells Fargo Defendants, to the extent

related to LPI; the disclosure or non-disclosure of any payment, expenses, fees, charges, or

feature pertaining to or under any LPI Policies placed or charged by the Wells Fargo

Defendants; the receipt or non-disclosure of any benefit under any LPI Policy placed or charged

by the Wells Fargo Defendants; the content, manner, or accuracy of any communications

regarding the placement of any LPI Policy by the Wells Fargo Defendants; and the regulatory

approval or non-approval of any LPI Policy, or the premium thereon, placed or charged by the

Wells Fargo Defendants during the Class Period.

10.2.2. This Release in Paragraph 10.2 shall not cover claims arising after the Final Settlement Date or claims made under any LPI Policy placed or charged by the Wells Fargo Defendants.   Nothing in Paragraph 10.2 shall be deemed a release of Named Plaintiffs' respective rights and obligations under this Agreement.

10.2.3. The Named Plaintiffs and Class Counsel further represent that there are no outstanding liens or claims against the Fladell Litigation, it being recognized that the Named Plaintiffs will solely be charged with the responsibility to satisfy any other liens or claims asserted in the Fladell Litigation.

10.3.   Without in any way limiting their scope, these Releases cover by example and without limitation, any and all claims for attorneys' fees, costs, expert fees, or consultant fees, interest, or litigation fees, or any other fees, costs, and/or disbursements incurred by Class Counsel, the Named Plaintiffs, or any Settlement Class Members in connection with or related in any manner to the Fladell Litigation, the settlement of the Fladell Litigation, the administration of such Settlement, and/or the Released Claims, except to the extent otherwise specified in the Settlement Agreement.

10.4.   In connection with the foregoing Releases, the Named Plaintiffs and each Settlement Class Member shall be deemed, as of the entry of the final Judgment, to have waived any and all provisions, rights, benefits conferred by Section 1542 of the California Civil Code, and any statute, rule and legal doctrine similar, comparable, or equivalent to California Civil Code Section 1542, which provides that:

**A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

40

To the extent that anyone might argue that these principles of law are applicable—notwithstanding that the Settling Parties have chosen Florida law to govern this Settlement Agreement—the Named Plaintiffs hereby agree, and each Settlement Class Member will be deemed to agree, that the provisions of all such principles of law or similar federal or state laws, rights, rules, or legal principles, to the extent they are found to be applicable herein, are hereby knowingly and voluntarily waived, relinquished, and released. The Named Plaintiffs recognize, and each Settlement Class Member will be deemed to recognize, that, even if they may later discover facts in addition to or different from those which they now know or believe to be true, they nevertheless agree that, upon entry of the final Judgment, they fully, finally, and forever settle and release any and all claims covered by these Releases. The Settling Parties acknowledge that the foregoing Releases were bargained for and are a material element of the Agreement.

10.5.   This Agreement and the Releases herein do not affect the rights of Settlement Class Members who timely and properly submit a Request for Exclusion from the Settlement in accordance with the requirements in Section 11 of this Settlement Agreement.

10.6.   The administration and consummation of the Settlement as embodied in this Settlement Agreement shall be under the authority of the Court. The Court shall retain jurisdiction to protect, preserve, and implement the Settlement Agreement, including, but not limited to, enforcement of the Releases contained in the Agreement. The Court shall retain jurisdiction in order to enter such further orders as may be necessary or appropriate in administering and implementing the terms and provisions of the Settlement Agreement.

10.7.   Upon issuance of the final Judgment: (i) the Settlement Agreement shall be the exclusive remedy for any and all Settlement Class Members, except those who have properly requested exclusion (opted out) in accordance with the terms and provisions hereof; (ii) the

41

Released Persons shall not be subject to liability or expense for any of the Released Claims to any Settlement Class Member(s); (iii) Settlement Class Members who have not opted out shall be permanently barred and enjoined from filing, commencing, prosecuting, intervening in, or participating in (as class members or otherwise) any action in any jurisdiction based on or relating to any of the Released Claims or the facts and circumstances relating thereto; and (iv) Settlement Class Members who have not opted out shall be permanently barred and precluded from organizing Settlement Class Members, or soliciting the participation of Settlement Class Members, for purposes of pursuing any action (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action in any jurisdiction) based on or relating to any of the Released Claims or the facts and circumstances relating thereto.

10.8    Nothing in this Settlement Agreement and Releases shall preclude any action to enforce the terms of the Settlement Agreement, including participation in any of the processes detailed therein. The Releases set forth herein are not intended to include the release of any rights or duties of the Settling Parties arising out of the Settlement Agreement, including the express warranties and covenants contained herein.

## 11.    OPT-OUT RIGHTS

11.1.   A Settlement Class Member who wishes to opt out of the Settlement Class must do so in writing. In order to opt out, a Settlement Class Member must complete and send to the Settlement Administrator, at the address listed in the Class Notice and on the Settlement Website for this Settlement, a Request for Exclusion that is postmarked no later than the Opt Out Deadline, as specified in the Class Notice (or as the Court otherwise requires). The Request for Exclusion must: (a) identify the case name; (b) identify the name and address of the Settlement Class Member; (c) be personally signed by the Settlement Class Member requesting exclusion;

42

and (d) contain a statement that indicates a desire to be excluded from the Settlement Class in the Fladell Litigation, such as "I hereby request that I be excluded from the proposed Settlement Class in the Fladell Class Action." Mass or class opt outs shall not be allowed.

11.1.1. Any Settlement Class Member who does not opt out of the Settlement in the manner described herein shall be deemed to be part of the Settlement Class, and shall be bound by all subsequent proceedings, orders, and judgments.

11.1.2. A Settlement Class Member who desires to opt out must take timely affirmative written action pursuant to this Section (Section 11), even if the Settlement Class Member desiring to opt out of the Class (a) files or has filed a separate action against any of the Released Persons, or (b) is, or becomes, a putative or actual class member in any other class action filed against any of the Released Persons.

11.2.  Any Settlement Class Member who properly opts out of the Settlement Class shall not: (a) be bound by any orders or judgments relating to the Settlement; (b) be entitled to relief under, or be affected by, the Agreement; (c) gain any rights by virtue of the Agreement; or (d) be entitled to object to any aspect of the Settlement.

11.3.  The Settlement Administrator shall provide Class Counsel and Defense Counsel with a list of all timely Requests For Exclusion within seven (7) business days after the Opt Out Deadline.

11.4.  If the number of Settlement Class Members who properly and timely exercise their right to opt out of the Settlement Class exceeds five percent (5%) of the total number of Settlement Class Members, the Settling Parties stipulate and agree that Defendants shall have the right to terminate this Agreement without penalty or sanction.

11.5    Except for those Settlement Class Members who timely and properly file a Request for Exclusion in accordance with Section 11, all other Settlement Class Members will be deemed to be Settlement Class Members for all purposes under the Agreement, and upon the Final Settlement Date, will be bound by its terms, regardless of whether they receive any monetary relief or any other relief.

## 12.    OBJECTIONS

12.1.    Overview.  Any potential Settlement Class Member who does not opt out of the Settlement may object to the Settlement.  To object, the Settlement Class Member must comply with the procedures and deadlines in this Agreement.

12.2.    Process.  Any potential Settlement Class Member who wishes to object to the Settlement must do so in writing on or before the Objection Deadline, as specified in the Class Notice and Preliminary Approval Order.  The written objection must be filed with the Clerk of Court, and mailed (with the requisite postmark) to Class Counsel and Defense Counsel (at the addresses identified in Section 19), no later than the Objection Deadline.

12.2.1. The requirements to assert a valid written objection shall be set forth in the Class Notice and on the Settlement Website, and, to be valid, the written objection must include:  (a) the case name and number; (b) the name, address, telephone number of the Settlement Class Member objecting and, if represented by counsel, of his/her counsel; (c) the basis for the objection; and (d) a statement of whether he/she intends to appear at the Final Approval Hearing, either with or without counsel.

12.2.2. Any Settlement Class Member who fails to object to the Settlement in the manner described in the Class Notice and consistent with this Section shall be deemed to have

44

waived any such objection, shall not be permitted to object to any terms or approval of the Settlement at the Final Approval Hearing, and shall be foreclosed from seeking any review of the Settlement or the terms of the Agreement by appeal or other means.

12.3. Appearance. Subject to approval of the Court, any Class Member who files and serves a written objection in accordance with Paragraph 12.2 and the Class Notice may appear, in person or by counsel, at the Final Approval Hearing held by the Court, to show cause why the proposed Settlement should not be approved as fair, adequate, and reasonable, but only if the objecting Settlement Class Member: (a) files with the Clerk of the Court a notice of intention to appear at the Final Approval Hearing by the Objection Deadline ("Notice Of Intention To Appear"); and (b) serves the Notice of Intention to Appear on all counsel designated in the Class Notice by the Objection Deadline.

12.3.1. The Notice of Intention to Appear must include copies of any papers, exhibits, or other evidence that the objecting Settlement Class Member will present to the Court in connection with the Final Approval Hearing.

12.3.2. Any Settlement Class Member who does not file a Notice of Intention to Appear in accordance with the deadlines and other specifications set forth in the Agreement and Class Notice shall not be entitled to appear at the Final Approval Hearing and raise any objections.

## 13.   SETTLEMENT APPROVAL

13.1.   By within 7 (seven) days of this Agreement, Named Plaintiffs shall apply to the Court for entry of the proposed Preliminary Approval Order and setting of a Final Approval Hearing.

13.2.    Not later than fifteen (15) days before the Final Approval Hearing, the Settlement Administrator will provide Defense counsel with an affidavit or declaration by a competent affiant or declarant, attesting that the Class Notice has been disseminated in accordance with the Preliminary Approval Order and identifying the number of Requests for Exclusion to the Settlement.   Not later than ten (10) days before the Final Approval Hearing, Defense Counsel shall file the affidavit or declaration with the Court prior to the Final Approval Hearing.

13.3.    Plaintiff shall move for and brief the issue of Final Approval of the Settlement in accordance with the Preliminary Approval Order or such other or further order of the Court.

13.4.    At the Final Approval Haring, Plaintiff shall move for entry of the proposed Judgment and present arguments in support thereof.

13.5.    Promptly after the Final Settlement Date, Settlement Class Members shall dismiss with prejudice all claims, actions, or proceedings that have been brought by or involve any Settlement Class Member in any other jurisdiction and that are released pursuant to this Settlement Agreement.

## 14.    CERTIFICATION OF NATIONWIDE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES

14.1.    Prior to, or in conjunction with, applying for entry of the Preliminary Approval Order, Class Counsel and Named Plaintiffs filed an Amended Complaint in this Litigation that added VIIC, SGIC, QBE Specialty, QBE Insurance, QBE FIRST, QBE Financial, and Praetorian as party defendants to the Fladell Litigation.  The Amended Complaint also added Plaintiff Zawistowski as a party Plaintiff.  Further, Plaintiffs intend to file a Second Amended Complaint which adds the claims of Tilena Ali, and Danny and Beverly Lane.  All Defendants consented to this amendment for purposes of effectuating this Settlement.

46

14.2.   After the Preliminary Approval Order is entered, Named Plaintiffs shall move for Final Approval of the Settlement and entry of final Judgment, and shall request that the preliminary certification of the nationwide Settlement Class for settlement purposes be made final.

14.3.   If the Settlement is not granted final approval, or this Agreement is otherwise terminated or rendered null and void, the certification of the above-described nationwide Settlement Class shall be automatically vacated and shall not constitute evidence or a binding determination that the requirements for certification of a class for trial purposes in this or any other action can be or have been satisfied; in such circumstances, Defendants reserve and shall have all rights to challenge certification of a nationwide Settlement Class or any other Class for trial purposes in the Litigation, or in any other action, on all available grounds as if no nationwide Settlement Class had been certified.

## 15.   ATTORNEYS' FEES, EXPENSES, AND NAMED PLAINTIFFS' CASE CONTRIBUTION AWARD

15.1.   Any application for Attorneys' Fees and Expenses shall not exceed $19,000,000.

15.2.   Defendants agree not to oppose or otherwise object to an application by Class Counsel for the award of Attorneys' Fees and Expenses in this Action in an amount not to exceed $19,000,000.  Provided any award of Attorneys' Fees and Expenses does not exceed $19,000,000, Defendants shall pay the Attorneys' Fees and Expenses made by the Court in the final Judgment in the Fladell Litigation within thirty (30) days after the Final Settlement Date. If for any reason an award of Attorneys' Fees and Expenses exceeds $19,000,000, within five (5) days of the order of such an award, Defendants shall have the right, and they may, within their sole discretion, terminate this Settlement and have this Settlement Agreement deemed null

47

and void. In the event the Court awards Class Counsel less than $19,000,000 in Attorneys' Fees and Expenses, this Settlement Agreement shall nonetheless remain in full force and effect.

15.3. Within thirty (30) days after the entry of the final Judgment, Defendants shall deposit the amount of Attorneys' Fees and Expenses awarded by the Court (not to exceed $19,000,000) in an interest bearing account of Defendants' choosing. The Attorneys' Fees and Expenses (not to exceed $19,000,000), along with any interest earned, shall be disbursed to KTT's Firm Trust Account within ten (10) business days after the Final Settlement Date. If for any reason the final Judgment does not become Final within the meaning of Paragraph 2.21 (*i.e.*, the Final Settlement Date does not occur), all money in the interest bearing account, including the interest accumulated, shall be returned to the Defendants within five (5) days after the occurrence of the condition or event that prevents the final Judgment from becoming Final.

15.4. In addition to the Claim Settlement Relief otherwise due to a Settlement Class Member of the Settlement Class, Defendants agree to pay each Named Plaintiff (or set of married Plaintiffs) a Case Contribution Award as awarded by the Court not to exceed the sum of $5,000.00 each, and shall deliver to Named Plaintiffs' Counsel a check made payable to each Named Plaintiff, within thirty (30) days after the Final Settlement Date.

15.4.1. If the Court awards Named Plaintiffs a Case Contribution Award, Named Plaintiffs shall provide to Defendants a completed W9 form for each Named Plaintiff within 10 business days after the final Judgment.

15.5. The procedure for and the grant or denial or allowance or disallowance by the Court of the Attorneys' Fees and Expenses and Case Contribution Awards are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement, and any order or proceedings relating to the applications for

48

Attorneys' Fees and Expenses and Case Contribution Award, or any appeal from any order relating thereto or reversal or modification thereof, will not operate to terminate or cancel this Agreement, or affect or delay the finality of Judgment approving the Agreement and the Settlement, except as provided for in Paragraph 15.2.

## 16.   CONFIDENTIALITY; COMMUNICATIONS TO MEDIA AND PUBLIC

16.1    The Settling Parties agree that the terms of this Settlement shall remain confidential and not be disclosed by any party until the Settlement Agreement is filed in connection with Named Plaintiffs' Preliminary Approval Application.

16.2    The Settling Parties agree further that both before and after Preliminary Approval of the Settlement, they shall not publish a press release or a release on the Internet concerning the Settlement without the prior written review and approval of all other Settling Parties, which approval shall not be unreasonably withheld or delayed.

16.3    The Settling Parties agree that both before and after Preliminary Approval, if any print or electronic media outlet contacts any party or its counsel seeking information or a statement regarding the Settlement, in the absence of a response agreed upon by all Settling Parties, no information will be provided in response to such inquiries except to the extent such information appears as part of the public record.

## 17.   TERMINATION AND EFFECT THEREOF

17.1.   This Agreement shall be terminable by any Party if any of the conditions of Section 3, Paragraph 11.4, are not fully satisfied, unless they are waived in writing signed by authorized representatives of the Settling Parties.

17.2.   This Agreement shall also terminate at the discretion of any Settling Party if:  (1) the Court, or any appellate court(s), rejects, modifies, or denies approval of any portion of this Agreement or the proposed Settlement that is material, including without limitation, the terms or relief, the findings or conclusions of the Court, the provisions relating to Class Notice, the definition of the Settlement Class, and/or the terms of the Releases; (2) the Court, or any appellate court(s), does not enter or completely affirm, or alters, or restricts, or expands, any portion of the final Judgment, or any of the District Court's findings of fact or conclusions of law, that is material; or (3) if all of the conditions required to be met before the Final Settlement Date do not occur.

17.3.   If this Agreement is terminated as provided herein, either automatically or by a Party, the Settlement shall be null and void from its inception and the Settling Parties will be restored to their respective positions in the Fladell Litigation as of the date of Preliminary Approval.  In such event, the terms and provisions of this Agreement will have no further force and effect with respect to the Settling Parties and will not be used in the Fladell Litigation, or in any other proceeding for any purpose, and any Judgment or order entered by the Court in accordance with the terms of this Agreement will be treated as vacated, *nunc pro tunc*.

## 18.   MISCELLANEOUS PROVISIONS

18.1.   Named Plaintiffs and Settlement Class Members who have made or who make a claim for benefits in the future on their LPI Policy will not be affected in any way as a result of their participation in this Settlement, and may participate in this Settlement to the same extent as Named Plaintiffs or Settlement Class Members who have not made a claim on their LPI Policy.

18.2   There will be no offset to any amounts received by any Named Plaintiffs or Settlement Class Member under this Settlement to account for any payments to Named Plaintiffs

or Settlement Class Members under the National Mortgage Settlement or any other settlement between the Wells Fargo Defendants and any governmental or private entity. Nor will any payments to any Named Plaintiffs or Settlement Class Member be an offset against any payments to Named Plaintiffs or Settlement Class Members under the National Mortgage Settlement or any other settlement between the Wells Fargo Defendants and any governmental or private entity.

18.3.   The Settling Parties acknowledge that it is their intent to consummate this Agreement, and they agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Agreement and to exercise their best efforts to accomplish the foregoing terms and conditions of this Agreement.

18.4.   The Settling Parties intend the Settlement to be a final and complete resolution of all disputes between them with respect to the Fladell Litigation. The Settlement compromises claims that are contested and will not be deemed an admission by any Settling Party as to the merits of any claim or defense. The Settling Parties agree that the consideration provided to the Settlement Class and the other terms of the Settlement were negotiated in good faith and at arm's length by the Settling Parties, and reflect a Settlement that was reached voluntarily after consultation with competent legal counsel. The amounts paid are to compromise the claimants' claims for damages and the amounts paid represent the claimants' compensation for such alleged damages.

18.5.   Neither this Agreement nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of this Agreement or the Settlement is or may be deemed to be or may be used as an admission or evidence of the validity of any Released Claims, or of any wrongdoing or liability of any Settling Defendant; or is or may be deemed to be or may be

used as an admission of, or evidence of, any fault, omission, wrongdoing, or liability of any

Settling Defendant in any civil, criminal, or administrative proceeding in any court,

administrative agency, or other tribunal.  Defendants may file this Agreement and/or the

Judgment in any action that may be brought against them in order to support any defense or

counterclaim, including, without limitation, those based on principles of *res judicata*, collateral

estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim

preclusion, issue preclusion, or similar defense or counterclaim.

18.6.   All agreements made and orders entered during the course of the Fladell

Litigation relating to the confidentiality of information will survive this Agreement.

18.7.   All of the Exhibits to this Agreement are material and integral parts hereof and

are fully incorporated herein by this reference.

18.8.   This Agreement may be amended or modified only by a written instrument

signed by or on behalf of all Settling Parties or their respective successors-in-interest.

18.9.   This Agreement and the Exhibits attached hereto constitute the entire agreement

among the Settling Parties, and no representations, warranties, or inducements have been made

to any Party concerning this Agreement or its Exhibits other than the representations, warranties,

and covenants covered and memorialized herein.  Except as otherwise provided herein, the

Settling Parties will bear their own respective costs.

18.10.  Class Counsel, on behalf of the Settlement Class, are expressly authorized by

Named Plaintiffs to take all appropriate action required or permitted to be taken by the Class

pursuant to this Agreement to effectuate its terms, and are expressly authorized to enter into any

modifications or amendments to this Agreement on behalf of the Settlement Class that Class Counsel deem appropriate.

18.11. This Agreement may be executed in one or more counterparts. All executed counterparts and each of them will be deemed to be one and the same instrument. A complete set of counterparts will be submitted to the Court.

18.12. This Agreement will be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties.

18.13. The Court will retain jurisdiction with respect to implementation and enforcement of the terms of this Agreement, and all Settling Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement.

18.14. None of the Settling Parties, or their respective counsel, will be deemed the drafter of this Agreement or its Exhibits for purposes of construing the provisions thereof. The language in all parts of this Agreement and its Exhibits will be interpreted according to its fair meaning, and will not be interpreted for or against any Settling Party as the drafter thereof.

18.15. The Settling Parties stipulate to stay all proceedings in the Fladell Litigation until the approval of this Agreement has been finally determined, except the stay of proceedings shall not prevent the filing of any motions, affidavits, and other matters necessary to obtain and preserve final judicial approval of this Agreement.

18.16. Except as agreed by the Parties in writing, within thirty (30) days after the Final Settlement Date, Class Counsel shall destroy all electronically stored information, testimony, or

other information produced by Defendants in the Fladell Litigation, including the mediation for the Fladell Litigation, and shall so certify in writing.

18.17.  The Settlement shall be governed by the laws of the State of Florida, except to the extent that the law of the United States governs any matters set forth herein, in which case such federal law shall govern.

18.18.  The following principles of interpretation apply to the Agreement:  (a) the plural of any defined term includes the singular, and the singular of any defined term includes the plural, as the case may be; (b) references to a person are also to the person's successor-in-interest; and (c) whenever the words "include," includes," or 'including" are used in the Agreement, they shall not be limiting, but rather shall be deemed to be followed by the words "without limitation."

18.19.  The Settlement Agreement shall not be subject to collateral attack by any Settlement Class Member or any recipient of the notices of the Settlement Class after the Judgment is entered.

19.  **NOTICES**

19.1.  All Notices (other than the Class Notice) required by the Agreement shall be made in writing and communicated by fax and mail to the following addresses:

All Notices to Class Counsel shall be sent to Class Counsel, c/o:

Adam M. Moskowitz
Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, FL 33134
Telephone: (305) 372-1800
Facsimile: (305) 372-3508

*Counsel for Named Plaintiffs and Class*

54

All Notices to Defense Counsel shall be sent to Defense Counsel, c/o:

Michael J. Steiner
Severson & Werson, A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone: (415) 398-3344;
Facsimile: (415) 956-0439

*Counsel for the Wells Fargo Defendants*

Frank G. Burt
Carlton Fields Jorden Burt, P.A.
1025 Thomas Jefferson Street, NW
Suite 400 East
Washington DC 20007-5208
Telephone: (202) 965-8140
Facsimile: (202) 965-8104

*Counsel for Assurant Defendants*

Robyn C. Quattrone
BuckleySandler LLP
1250 24th Street, NW
Suite 700
Washington, DC 20037
Telephone: (202) 349-8035
Facsimile: (202) 349-8080

*Counsel for the QBE Defendants*

    19.2.   The notice recipients and addresses designated above may be changed by written

agreement of the Settling Parties.

19.3.    Upon the request of any of the Settling Parties, the Settling Parties agree to promptly provide each other with copies of objections, Requests for Exclusion, or other similar documents received from Settlement Class Members in response to the Class Notice.

IN WITNESS WHEREOF, the Settling Parties have executed and caused this Settlement on the dates set forth below.

Dated: 2/21/2014        By: _____
                        Name: MICHAEL J. HEID
                        Title: EVP

                        *Wells Fargo Bank, N.A.*

Dated: _____  By: _____
                        Name:
                        Title:

                        *Wells Fargo Insurance, Inc.*

Dated: _____  By: _____
                        Name:
                        Title:

                        *Assurant, Inc.*

Dated: _____  By: _____
                        Name:
                        Title:

                        *American Security Insurance Company*

07725.0151-FLADEL/3126750.1                56

19.3.   Upon the request of any of the Settling Parties, the Settling Parties agree to promptly provide each other with copies of objections, Requests for Exclusion, or other similar documents received from Settlement Class Members in response to the Class Notice.

IN WITNESS WHEREOF, the Settling Parties have executed and caused this Settlement on the dates set forth below.

Dated: _____       By: _____
                             Name:
                                    Title:

                             *Wells Fargo Bank, N.A.*


Dated: _____       By: _____
                             Name:  Tali N. Wartch...
                             Title:  Svr. Hd. of Strategy

                             *Wells Fargo Insurance, Inc.*


Dated: _____       By: _____
                             Name:
                             Title:

                             *Assurant, Inc.*


Dated: _____       By: _____
                             Name:
                             Title:

                             *American Security Insurance Company*

19.3.    Upon the request of any of the Settling Parties, the Settling Parties agree to

promptly provide each other with copies of objections, Requests for Exclusion, or other similar

documents received from Settlement Class Members in response to the Class Notice.

IN WITNESS WHEREOF, the Settling Parties have executed and caused this Settlement

on the dates set forth below.

Dated: _____      By: _____
                              Name:
                                   Title:

                              *Wells Fargo Bank, N.A.*

Dated: _____      By: _____
                              Name:
                              Title:

                              *Wells Fargo Insurance, Inc.*

Dated: 2-25-2014              By: _____
                              Name: RICHARD FOAIWENGLER
                              Title: SVA

                              *Assurant, Inc.*

Dated: Feb. 25, 2014          By: _____
                              Name: PETER J. LOUGHLIN
                              Title: VICE PRESIDENT

                              *American Security Insurance Company*

56

Dated: Feb. 25, 2014          By: _____
                                   Name: PETER J. LOUGHLIN
                                   Title: VICE PRESIDENT

                                   *Voyager Indemnity Insurance Company*


Dated: Feb. 25, 2014          By: _____
                                   Name: PETER J. LOUGHLIN
                                   Title: VICE PRESIDENT

                                   *Standard Guaranty Insurance Company*


Dated: _____        By: _____
                                   Name:
                                   Title:

                                   *QBE Specialty Insurance Company*


Dated: _____        By: _____
                                   Name:
                                   Title:

                                   *QBE Insurance Corporation*


Dated: _____        By: _____
                                   Name:
                                   Title:

                                   *QBE FIRST Insurance Agency, Inc.*

Dated: _____     By: _____
                                 Name:
                                 Title:

                                 *Voyager Indemnity Insurance Company*


Dated: _____     By: _____
                                 Name:
                                 Title:

                                 *Standard Guaranty Insurance Company*

Dated: Feb. 28, 2014        By: _____
                                 Name: James P. Novak
                                 Title: SVP, QBE FIRST Insurance Agency, Inc.,
                                 agent for QBE Specialty Insurance Company
                                 *QBE Specialty Insurance Company*

Dated: Feb. 28, 2014        By: _____
                                 Name: James P. Novak
                                 Title: SVP, QBE FIRST Insurance Agency,
                                 Inc., agent for QBE Insurance Corporation
                                 *QBE Insurance Corporation*

Dated: Feb. 28, 2014        By: _____
                                 Name: James P. Novak
                                 Title: SVP
                                 *QBE FIRST Insurance Agency, Inc.*

Dated: Feb 28 2014

By: _____
Name: James P. Novak
Title: SVP
*QBE Financial Institution Risk Services, Inc.*

Dated: Feb 28, 2014

By: _____
Name: James P. Novak
Title: SVP, QBE FIRST Insurance Agency, Inc., agent for Praetorian Insurance Company
*Praetorian Insurance Company*

Dated: _____

By: _____
Ira Marc Fladell
*Plaintiff*

Dated: _____

By: _____
Sarah Crouch
*Plaintiff*

Dated: _____

By: _____
Greg Olson
*Plaintiff*

Dated: _____

By: _____
Margaret Zawistowski
*Plaintiff*

Dated: _____

By: _____
Tilena Ali
*Plaintiff*

Dated: _____

By: _____
Danny Lane
*Plaintiff*

58

Dated: _____     By: _____

                                   Name:
                                   Title:

                                   *QBE Financial Institution Risk Services, Inc.*

Dated: _____     By: _____

                                   Name:
                                   Title:

                                   *Praetorian Insurance Company*

Dated: 3/1/14     By: _____

                                   Isa Marc Fladell
                                   *Plaintiff*

Dated: _____     By: _____

                                   Sarah Crouch
                                   *Plaintiff*

Dated: _____     By: _____

                                   Greg Olson
                                   *Plaintiff*

Dated: _____     By: _____

                                   Margaret Zawistowski
                                   *Plaintiff*

Dated: _____     By: _____

                                   Tilena Ali
                                   *Plaintiff*

Dated: _____     By: _____

                                   Danny Lane
                                   *Plaintiff*

george thomas                                      3219528572              p.1

Dated: _____        By: _____
                                     Name:
                                     Title:

                                     *QBE Financial Institution Risk Services, Inc.*

Dated: _____        By: _____
                                     Name:
                                     Title:

                                     *Praetorian Insurance Company*

Dated: _____        By: _____
                                     Ira Marc Fladell
                                     *Plaintiff*

Dated: _____        By: _____
                                     Sarah Crouch
                                     *Plaintiff*

Dated: _____        By: _____
                                     Greg Olson
                                     *Plaintiff*

Dated: _____        By: _____
                                     Margaret Zawistowski
                                     *Plaintiff*

Dated: _____        By: _____
                                     Tilena Ali
                                     *Plaintiff*

Dated: _____        By: _____
                                     Danny Lane
                                     *Plaintiff*

58

Dated: _____   By: _____
                             Name:
                             Title:

                             *QBE Financial Institution Risk Services,*
                             *Inc.*


Dated: _____   By: _____
                             Name:
                             Title:

                             *Praetorian Insurance Company*


Dated: _____   By: _____
                             Ira Marc Fladell
                             *Plaintiff*


Dated: _____   By: _____
                             Sarah Crouch
                             *Plaintiff*


Dated: 3 - 4 - 14       By: _____
                             Greg Olson
                             *Plaintiff*


Dated: _____   By: _____
                             Margaret Zawistowski
                             *Plaintiff*


Dated: _____   By: _____
                             Tilena Ali
                             *Plaintiff*


Dated: _____   By: _____
                             Danny Lane
                             *Plaintiff*

58

Dated: _____     By: _____
                                Name:
                                Title:

                                *QBE Financial Institution Risk Services,*
                                *Inc.*

Dated: _____     By: _____
                                Name:
                                Title:

                                *Praetorian Insurance Company*

Dated: _____     By: _____
                                Ira Marc Fladell
                                *Plaintiff*

Dated: _____     By: _____
                                Sarah Crouch
                                *Plaintiff*

Dated: _____     By: _____
                                Greg Olson
                                *Plaintiff*

Dated: 3.3.14             By: _____
                                Margaret Zawistowski
                                *Plaintiff*

Dated: _____     By: _____
                                Tilena Ali
                                *Plaintiff*

Dated: _____     By: _____
                                Danny Lane
                                *Plaintiff*

Dated: _____     By: _____
                              Name:
                              Title:

                              *QBE Financial Institution Risk Services,
                              Inc.*

Dated: _____     By: _____
                              Name:
                              Title:

                              *Praetorian Insurance Company*

Dated: _____     By: _____
                              Ira Marc Fladell

                         *Plaintiff*

Dated: _____     By: _____
                              Sarah Crouch
                              *Plaintiff*

Dated: _____     By: _____
                              Greg Olson
                              *Plaintiff*

Dated: _____     By: _____
                              Margaret Zawistowski
                              *Plaintiff*

Dated: *3-3-14*          By: _____
                              Tilena Ali
                              *Plaintiff*

Dated: _____     By: _____
                              Danny Lane
                              *Plaintiff*

58

Dated: _____      By: _____
                                  Name:
                                  Title:

                                  *QBE Financial Institution Risk Services,
                                  Inc.*

Dated: _____      By: _____
                                  Name:
                                  Title:

                                  *Praetorian Insurance Company*

Dated: _____      By: _____
                                  Ira Marc Fladell
                                  *Plaintiff*

Dated: _____      By: _____
                                  Sarah Crouch
                                  *Plaintiff*

Dated: _____      By: _____
                                  Greg Olson
                                  *Plaintiff*

Dated: _____      By: _____
                                  Margaret Zawistowski
                                  *Plaintiff*

Dated: _____      By: _____
                                  Tilena Ali
                                  *Plaintiff*

Dated: 3-2-14               By: _____
                                  Danny Lane
                                  *Plaintiff*

Dated: 3/2/2014        By: _Beverly Lane_
                            Beverly Lane
                            *Plaintiff*