# Exhibit  D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-60721-CIV-FAM

IRA MARC FLADELL, SARAH CROUCH,
and THELMA STEPHENS, on behalf of themselves
and all others similarly situated,

      Plaintiffs,

v.

WELLS FARGO BANK, N.A., WELLS FARGO
INSURANCE, INC.; ASSURANT, INC., and
AMERICAN SECURITY INSURANCE COMPANY,

      Defendants.

_____/

## DECLARATION OF THOMAS E. SCOTT
## IN SUPPORT OF CLASS COUNSEL'S APPLICATION
## FOR FINAL APPROVAL AND ATTORNEY'S FEES AND EXPENSES

I, Thomas E. Scott, hereby declare as follows:

1.     My name is Thomas E. Scott, and I make this Declaration in support of Class Counsel's application for final approval and for attorney's fees arising from their settlement in the above-referenced action.

2.     I have been licensed to practice law in the State of Florida since 1972, and I am actively engaged in such practice throughout the State of Florida. I have extensive experience in handling complex commercial cases, including class actions, and have presided over cases similar to the above-styled case. My curriculum *vitae* is attached as "Exhibit A."

3.     I served almost five years as a Circuit Judge for the Eleventh Judicial Circuit, State of Florida, and five years as a United States District Judge for the Southern District of Florida. For over three years, I was the United States Attorney for the Southern District of

Florida. I have served as the Chairman of the Grievance Committee for the United States District Court for the Southern District of Florida, on the Standing Committee on Professionalism of the Florida Bar, and a Co-Chairman of the American Bar Association Committee on Discovery Under the Litigation Section.

4.     I have been in private practice for over twenty years, not including government service. My practice has to a large extent involved federal court litigation, including class actions. I have also lectured at multiple seminars on class action issues. From my experience as both a practitioner, and state and federal judge, I am familiar with class action settlements and the fees charged by attorneys in this jurisdiction, including fees awarded in class action cases. I am also familiar with the case law regarding the reasonableness of attorney's fees in the Eleventh Circuit and, in particular, *Camden I Condominium Association v. Dunkle*, 946 F.2d 768 (11th Cir. 1991), which established that attorney's fees awarded from a common fund are to be based on a percentage of the fund created for the class.

5.     I have been asked by Class Counsel in this case to render an opinion on the fairness and reasonableness of the settlement and on the reasonableness of their request for attorney's fees.

6.     In reaching my opinion, I reviewed the relevant pleadings, motions, orders and related documentation including the operative Complaint, the briefing on the Motions to Dismiss and Order denying same, Plaintiff's Motion for Preliminary Approval of Class Action Settlement and for Certification of the Settlement Class and the attachments thereto, the Class Action Settlement Agreement, as well as Plaintiff's Motion for Final Approval of Class Settlement, for Approval of Class Counsel's Fees, and for Entry of Final Judgment Pursuant to Class Settlement and the attachments thereto.

CASE NO. 13-60721-CIV-FAM

7.      In addition, I discussed the nature of the litigation with Class Counsel and am familiar with the scope of this case and the obstacles that the Plaintiff would have had to overcome in order to achieve a favorable result.

## FAIRNESS AND REASONABLENESS OF SETTLEMENT

8.      I am familiar, based on my experience as both a practicing lawyer and a judge, with the law concerning the fairness of class action settlements.  Class actions, as this Court is fully aware, can be settled only with the Court's approval, Fed. R. Civ. P.23(e), and only if the settlement is fair, reasonable and adequate.

9.      In determining whether a class action settlement is fair, reasonable and adequate, courts in the Eleventh Circuit consider at least six factors 1) the likelihood of success at trial; 2) the range of possible recovery; 3) the range of possible recovery at which a settlement is fair, adequate and reasonable; 4) the anticipated complexity, expense and duration of litigation; 5) the opposition to the settlement; and 6) the stage of proceedings at which the settlement was reached. *Faught v. Amer. Home Shield Corp.*, 668 F.3rd 1233, 1240 (11th Cir. 2012); *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

10.     All of these factors are met in this case and support a finding that the settlement is fair, reasonable and adequate.

### a.  Likelihood of Success at Trial

11.     While Class Counsel is confident that this case is suitable for class certification, this outcome is not certain. Even if the case was eventually certified, Defendants would then have raised several defenses, including the filed-rate doctrine, which they have been raising throughout this case. Another defense that Defendants would have raised is much simpler:  that Defendants disclosed to Plaintiffs and all other class members in the applicable mortgage

3

contracts the details and consequences of force placing hazard insurance when the existing hazard insurance lapsed.  This defense was recently the basis of the Seventh Circuit's decision in *Cohen v. American Sec. Ins. Co.*, 735 F.3d 601 (7th Cir. 2013), which affirmed the dismissal of a lender placed insurance class action because it found that the plaintiff had a "contractual obligation [to obtain property insurance] and she failed to fulfill it; [and] because the consequences of that failure were clearly disclosed to her, none of her claims for relief can succeed."

12.     The pleadings that I have reviewed also identify other defenses, such as the failure to exhaust administrative remedies and failure to state a claim, which would create additional obstacles for Plaintiffs and the Class at the summary judgment stage and at trial.

### b.  The Range of Possible Recovery

13.     The range of possible recovery, in my opinion, also supports a finding that the settlement is fair, adequate and reasonable.  The Settlement Agreement provides that class members are eligible to receive -- by way of a payment or credit to their account depending on whether they made any premium payments -- 11% of the net premium if paid or charged before March 24, 2012, or 7% if thereafter.  Based on my review of the pleadings and other materials, the Plaintiffs and the Class have recovered $281 million, which represents between 50% to 100% of the Class's anticipated total recovery, depending on the final damages calculations of Plaintiffs' experts and the particular claims allowed to proceed to trial.  This recovery is outstanding given that settlements generally, and in class actions particularly, are usually considered fair, adequate and reasonable even when they only represent a small percentage of the potential recovery.

14.     The recovery obtained becomes even more significant when one includes the

injunctive relief that has been secured from Defendants, which is an additional benefit being provided to the Class. That injunctive relief will enjoin the Defendants for a period of five (5) years from accepting any financial interest in the placement of force-placed insurance beyond the premium itself and the protection afforded by the properties that serve as collateral for the loans extended to borrowers. It is my understanding that this means that the Wells Fargo Defendants will no longer be able to collect commissions related to force-placed hazard insurance that were paid to Wells Fargo-affiliated agents or brokers and revenue arising from reinsurance agreements.

### c. *Complexity and Duration of Litigation*

15.     The complexity and duration of this litigation if no settlement had been completed also establishes that the parties reached a settlement that was fair and reasonable. This case is both factually and legally complex. The underlying facts involve the interpretation of multiple provisions in mortgage agreements, as well as the need for experts in the field of lender placed insurance, a field that appears to be not only complex but esoteric.

16.     Legally the case has involved both state and federal law claims, as well as sophisticated and complex defenses like the filed-rate doctrine and the failure to exhaust administrative remedies. And procedurally, the case has not once but twice been subject to petitions before the Judicial Panel for Multidistrict Litigation ("JPML") requesting that it be consolidated in a multidistrict litigation or MDL with other similar cases around the country.

17.     After the MDL panel first denied consolidation, Class Counsel coordinated with different lawyers with cases from around the country to bring many of the force-placed insurance actions in a consolidated proceeding before a single judge in the Southern District of Florida. This was a significant achievement, and by doing so the parties were able to streamline this

action and prosecute it efficiently and effectively.

18.     This litigation has been pending for approximately 16 months, and if it had not been settled, likely would have continued for at least another two to three years, and would have involved a trial, various post-trial motions and an appeal. A case of such complexity and duration would have come at great expense to both sides, and would have taxed an already incredibly busy court.

### d.   Opposition to Settlement

19.     Opposition to the settlement has been minimal at best.  As of this declaration, I understand that there is only one objection filed by one class member out of a class of 1,340,157 class members that have been filed with the Court.  As a result, this factor too supports a finding that the settlement is fair and reasonable.

### e.   State at Which Case Was Settled

20.     Finally, this case was settled after nearly a year and a half of hard fought litigation with Class Counsel who have been litigating force-placed insurance cases for nearly three years. The case was also settled after a lengthy mediation session and with the assistance of a very experienced mediator.  Only after extensive negotiations before and after the mediation session, and confirmatory discovery obtained under oath from the Defendants, was a settlement agreement reached.  In sum, the stage at which the case was settled provided both sides – both of which had prior experience handling force-placed insurance cases – with enough time and information to properly assess the strengths and weaknesses of the case and reach a fair and reasonable settlement.

### FAIRNESS AND REASONABLENESS OF THE ATTORNEY'S FEES REQUESTED

21.     I am also familiar with the law regarding the reasonableness of attorney's fees in

common benefit/fund cases such as this case.  Specifically, *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir. 1991), which noted that "the majority of common fund fee awards fall between 20% to 30% of the fund." *Id.* at 774.  This range of 20%-30% is viewed as a "benchmark" that may be adjusted in accordance with individual circumstances of each case," using the factors set forth in *Johnson v. Georgia Highway Express, Inc.,* 448 F.2d 714 (5th Cir. 1974).  *See Camden I*, 946 F.2d at 774-75; *see also Waters v. International Precious Metals Corp.*, 190 F.3d 1291, 1294 (11th Cir. 1999) (reiterating the *Camden I* analysis and affirming award of fees using 30% as the benchmark and then adjusting upward to 33 1/3%).  These factors, in no particular order, include 1) the novelty and difficulty of the questions involved; 2) the amount involved and result obtained; 3) the time and labor required; 4) the experience, reputation and ability of the attorneys; 5) preclusion of other employment; 6) fee awards in similar cases; 7) whether the fee was fixed or contingent; 8) the undesirability of the case; and 9) the length and nature of the professional relationship with the client.  *Waters*, 190 F.3d at 1294 n.5.  I have analyzed these factors below.

22.     The "fund" here is the entirety of the relief being made available to the class.  *See Waters,* 190 F.3d at, 1295-96.

23.     Based upon my review and analysis of the law and the facts, it is my opinion that an attorneys' fee award equal to $19,000,000.00, or approximately 6.8% of the settlement's monetary benefits is reasonable.

### a. The Novelty And Difficulty Of The Questions Involved And the Amount Involved And Result Obtained

24.     In prosecuting this action, Class Counsel faced numerous difficult and complex issues. Class action matters are generally complex, but this one is particularly so. The interplay between the mortgage agreements, federal, state and common law, and the formulation of a

CASE NO. 13-60721-CIV-FAM

damages methodology would have led to significant briefing and litigation on both class certification and the merits. In addition, the ability to certify a nationwide class would have been challenging under the circumstances.

25.     The complexities, novelties and difficulties of this case were many and varied. Defendants have asserted strong factual and legal defenses to the claims of the Class.  Among other things, Defendants contend that the filed-rate doctrine bars Plaintiffs' claims in their entirety.  Further, Defendants argue that each class member's mortgage agreement expressly authorizes the very practice Plaintiffs challenged; that the practice was fully disclosed; that Plaintiffs could not maintain unjust enrichment claims because of the existence of an express agreement; that the consumer protection claims were defective; and that nationwide class treatment of any of Plaintiffs' claims would be improper.

26.     In the face of these obstacles, the fact that Class Counsel were able to achieve the settlement that they did is excellent.  The settlement requires Defendants to pay $281 million in cash benefits upon the submission of claims by class members.

27.     Importantly, the monetary relief will compensate class members for a large part of the inflated portion of the force-placed hazard premiums that they either paid or were charged. All class members who submit a claim form pursuant to the terms of the Settlement Agreement will recover 11% (or 7% if charged after March 24, 2012) of the net premium *charged* to the class member during the class period, less any refund credited them, regardless of whether the class members paid any portion of that premium to Wells Fargo.  Thus, a mortgagor who paid premiums for four months out of a given year will receive 11% or 7% of the annual premium charged without any deduction for the amount paid.  Moreover, the 11% or 7% payment is taken from the entire premium, rather than the "excess" or inflated portion of the premium, since a

8

considerable portion of the premiums charged, in fact, were applied to pay for insurance to cover the borrower's property. Class members who paid their premiums will receive a check from Wells Fargo for the full settlement amount. Class members who were charged but did not pay will either receive a check or have the amount credited to their Wells Fargo escrow account.

28.     The injunctive relief provided by the Settlement Agreement will prohibit numerous questionable force-placed hazard insurance practices that are the subject of this lawsuit. The Settlement Agreement enjoins the Wells Fargo and Assurant Defendants from continuing to charge borrowers inflated premiums for force-placed insurance. For a period of five years following the Settlement, Wells Fargo will accept no financial interest in the placement of force-placed hazard policies other than the premium itself and the protection afforded it by the hazard coverage. In other words, the Settlement Agreement prohibits the Wells Fargo Defendants and their affiliated companies from accepting commissions on force-placed hazard insurance; entering into quota-share reinsurance arrangements with Assurant or any other insurer; accepting payments from any forced-placed insurer or vendor for administrative or other services related to forced-placed insurance; accepting below-cost or free outsourced services provided by LPI insurers or vendors. The Assurant Defendants will similarly be prohibited for a period of five years from providing force-placed hazard commissions to Wells Fargo-affiliated agents or brokers, hazard quota-share reinsurance arrangements, and payments for any administrative or other service associated with force-placed hazard policies, and from accepting from Wells Fargo payments for below-cost or free outsourced services.

29.     The Settlement also binds Wells Fargo to establish lender-placed hazard coverage at the last known coverage amount or the unpaid principal balance on a borrower's loan, so that

lender-placed coverage moving forward bears some relation to the value of the interest being protected.  Wells Fargo will also advance funds in the event of a lapse to continue coverage under the borrower's voluntary policy, thus further ensuring that the cost of coverage bears some relation to the collateral's value and also reducing the number of lender-placed policies issued by Wells Fargo and Assurant.  Finally, the Settlement terms require Wells Fargo to refund any amounts due the borrower once voluntary insurance is put back in place within fifteen days of receipt of evidence of the voluntary coverage.

30.     The injunctive relief has been valued at $234 million, and represents the revenue that the Wells Fargo Defendants will forego as a result of this injunctive relief.  This relief is a significant value to the Class.

31.     Defendants are also paying for notice of the settlement by first-class mail at the class member's last known mailing address.  A website has been established to provide the class with additional notice.  Finally, the class can submit their claims via the internet or direct mail. Administration of the settlement is also being paid for by the Defendants.

32.     In sum, Class Counsel faced tremendous difficulty and risk in bringing this matter, but were nevertheless able to obtain excellent relief for the Class.

***b.     The Time and Labor Required***

33.     Prosecuting and settling the claims in this case demanded considerable time and labor, thus justifying its reasonableness.  Additional hours will be required to bring this matter to its final conclusion.

***c.     The Skill Requisite to Perform the Legal Services Properly and The Experience, Reputation and Ability of the Attorneys***

34.     The complex issues raised by this matter required a high degree of skill and experience.  Indeed, litigation of a case like this requires counsel highly trained in class action

CASE NO. 13-60721-CIV-FAM

law and procedure as well as the specialized issues this case presents. Moreover, Class Counsel brought litigation against Defendants with vast resources.

35.    Class Counsel are experienced class action litigation counsel with excellent reputations in the community and superior skill. As demonstrated by the resumes submitted in the Motion for Final Approval, Class Counsel have litigated and served as class counsel in nationally-recognized and successful class actions. Class Counsel are of the highest quality and the work product in this matter reflects a high degree of sophistication and skill.

### d.    The Preclusion of Other Employment by the Attorney due to Acceptance of the Case

36.    This was a time consuming case and the time spent on it was time that Class Counsel could not spend on other matters. The time and energy devoted to this matter necessarily limited the time available for other litigation, and Class Counsel, in fact, turned away other significant and profitable work in order to give this case the time, effort and attention it deserved.

### e.    The Customary Fee and Awards in Similar Cases

37.    A fee of approximately 6.8% of the total monetary benefits obtained is fully consistent with and falls well within, if not below, the range of the customary fee awarded in common fund cases, many of which have awarded a higher percentage. *See Waters,* 190 F.3d 1291 (affirming fee award of 33 1/3 %); *Allapattah Servs., Inc. v. Exxon Corp.,* 454 F.Supp.2d 1185 (S.D.Fla.2006) (awarding fees of 31 1/3 %); *In re: Terazosin Hydrochloride Antitrust Litigation,* 99–1317–MDL–Seitz (S.D. Fla. April 19, 2005) (awarding fees of 33 1/3 %); *In re: Managed Care Litig. v. Aetna,* MDL No. 1334, 2003 WL 22850070 (S.D.Fla. Oct. 24, 2003) (35.5% of settlement); *Gutter v. E.I. Dupont De Nemours & Co.*, 95–2152–Civ–Gold (S.D.Fla. May 30, 2003) ( 33 1/3 %); *Tapken v. Brown,* Case No. 90-0691-CIV, 1992 WL 178984, Fed.

11

Sec. L. Rep. P 96805 (S.D.Fla.1995) (awarding 33%); *In re Home Shopping Network Sec. Litig.,* Case No. 87-428-T-13(A) (M.D.Fla.1991) (awarding 33%). The percentage of the fee requested would even be lower - - approximately 3.7% - - if the injunctive relief obtained ($234 million) is added to the monetary benefit ($281 million). *See Staton v. Boeing Co.,* 327 F.3d 938, 974 (9th Cir. 2003) (noting that courts are permitted to consider the value of the injunctive relief obtained when considering an award of fees). The request of $19,000,000 in fees is made even more reasonable by the fact that Class Counsel is not seeking an additional award for their expenses.

38. In the percentage method, the court awards a percentage of the total benefit created by a class action settlement. In a case such as this, where the court can ascertain the total value of the benefit conferred upon the class, a percentage analysis is appropriate. "The proper manner to calculate attorneys' fees is to identify the fund created for the benefit of the class and to award Class Counsel a reasonable percentage of that fund as an attorneys' fee." *See Pinto,* 513 F.Supp.2d at 1339. "[I]n this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I Condo. Ass'n v. Dunkle,* 946 F.2d 768, 774 (11th Cir.1991); *see also In re Sunbeam Sec. Litig.,* 176 F.Supp.2d 1323, 1333 (S.D. Fla. 2001). The percentage applies to the total benefit being provided or made available to the class, even when the actual payout to the class members following the claims process is lower. *Waters,* 190 F.3d at 1295-96.

39. A fee of approximately 3.7% of the total benefits provided to the class is also well below the customary fee charged in private, non-class contingency matters, where attorneys often receive between 30%-40% or more of the recovery if successful. *See, e.g., Phermister v. Harcourt Brace Jovanovich, Inc.,* 1984-82 Trade Case. (CCH) ¶¶66,234 at 66,995 (N.D. Ill.) (noting that for contingency fee agreements "the percentages agreed on vary, with one-third

being particularly common"); *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986) (observing that "40% is the customary fee in tort litigation"). In my experience, a fee of $19,000,000.00 (or 6.8% of the monetary benefits) would be on the lower end of the percentages charged for private, non-class matters.

### f.    Whether the Fee is Fixed or Contingent

40.    This matter was litigated entirely on a contingency basis. If Class Counsel were not successful, they would not receive any fee and would not be reimbursed for any of their considerable expenses. In addition to the many hours of time Class Counsel invested in this matter, Class Counsel has also incurred expenses which I understand they are not seeking separately from the attorneys' fee award. The expenses incurred would be a financial investment in a lawsuit with considerable risk, where the result is unknowable at the inception, and very well could have resulted in a complete loss.

### g.    The "Undesirability" of the Case

41.    Class Counsel took on corporate defendants with vast resources necessary to withstand a lengthy legal battle. The interplay between the mortgage agreements, federal, state and common law, and the formulation of a damages methodology would have led to significant briefing on both class certification and on the merits. In addition, the ability to certify a nationwide class would have been very difficult under the circumstances. This case may be considered undesirable based upon these factors and the complex and expensive nature of class actions. The risks assumed by Class Counsel in handling this case on a contingency basis were significant. At its inception it was difficult, if not impossible, to know what results would be obtained, the amount of time that would be involved, the costs necessary to pursue the case, or the time necessary to obtain a successful resolution.

CASE NO. 13-60721-CIV-FAM

**h.     *The Nature and Length of the Professional Relationship with the Client***

42.     It is my understanding that this is the first time in which Class Counsel has represented the named class plaintiffs.

**i.     *Other Relevant Factors***

43.     This class contained 1,340,157 class members who were given notice of the proposed settlement.  Of that number, only one objection to the settlement or the fee requested by Class Counsel has been filed by a single class member.  This serves as additional evidence that the $19,000,000.00 fee requested is both fair and reasonable.

44.     Moreover, as discussed in detail above, the significant non-monetary injunctive relief and the large financial risk assumed in prosecuting this class action both support the fee requested.

## CONCLUSION

45.     In conclusion, and after a review and analysis of the pleading and other materials, I am of the opinion that 1) the settlement reached is fair, adequate and reasonable; and 2) the fee request of $19,000,000.00, which represents approximately 6.8 percent of the monetary benefit available to the Class, is reasonable.

I DECLARE under penalty of perjury that the foregoing is true and correct.

Dated: August 4, 2014

_____
THOMAS E. SCOTT

14