UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 0:13-cv-60721-MORENO/OTAZO-REYES

IRA MARC FLADELL, SARAH CROUCH,
GREG OLSON, MARGARET
ZAWISTOWSKI, TILENA ALI, DANNY
LANE and BEVERLY LANE on behalf of
themselves and all others similarly
situated,

       Plaintiffs,

v.

WELLS FARGO BANK, N.A.; WELLS
FARGO INSURANCE, INC.; ASSURANT,
INC.; AMERICAN SECURITY INSURANCE
COMPANY; VOYAGER INDEMNITY
INSURANCE COMPANY, STANDARD
GUARANTY INSURANCE CO.; QBE SPECIALTY
INSURANCE COMPANY; QBE INSURANCE
CORPORATION; QBE FIRST INSURANCE
AGENCY, INC.; QBE FINANCIAL INSTITUTION
RISK SERVICES, INC.; and
PRAETORIAN INSURANCE COMPANY,

       Defendants.
_____/

**ADDITIONAL *FLADELL* COUNSEL'S MOTION FOR AWARD
OF ATTORNEYS' FEES, AND INCORPORATED MEMORANDUM OF LAW**

I.      **INTRODUCTION AND SUMMARY OF ARGUMENT**

The three law firms designated as Settlement Class Counsel[1] were joined on the *Fladell* complaint by the Owings Law Firm, the Wagoner Law Firm, P.A., and Walker Law PLLC (collectively, "Additional *Fladell* Counsel"). In addition to "joining forces" with Settlement Class Counsel in *Fladell* Additional *Fladell* Counsel litigated two force-placed insurance cases against Wells Fargo Bank, N.A. ("Wells Fargo") in the Northern District of California, where they obtained a series of important rulings upholding claims under Florida law, as well as the claims of Danny and Beverly Lane, who have since become plaintiffs and class representatives in *Fladell*.

In January 2014, Additional *Fladell* Counsel succeeded in obtaining a ruling against Wells Fargo, Wells Fargo Insurance, Inc. ("WFI"), and American Security Insurance Company ("ASIC") upholding claims under the Racketeer Influenced and Corrupt Organizations Act, instantly trebling their exposure in force-placed insurance litigation. Within days of telling the Court that no settlement negotiations were scheduled or in progress, Defendants changed course, and settled the case, using *Fladell* as the vehicle. Defendants did not enter into this settlement because of anything that happened in *Fladell*, where motions to dismiss and for class certification remained pending, but because of the devastating order issued in *Cannon*, making it likely that Defendants would face a national class and treble damages, transforming the case into one they simply could not afford to lose. Because Additional *Fladell* Counsel are equally responsible for the result obtained in this litigation, they are equally entitled to payment.

Additional *Fladell* Counsel have conferred in good faith with Settlement Class Counsel regarding the issues raised by this motion, and will continue to do so, but have not been able to reach a resolution. Additional *Fladell* Counsel expect that they will continue to have an amicable working relationship with Settlement Class Counsel, and will be able to agree on a fair

---

[1] Kozyak Tropin & Throckmorton, P.A., Podhurst Orseck, P.A., and Harke Clasby & Bushman, LLP. *See* Order Granting Plaintiffs' Motion for Preliminary Approval, *Fladell* Dkt. No. 168, at 5.

1

allocation of attorneys' fees, but to date, Settlement Class Counsel have not discussed the specifics of the allocation. Accordingly, Additional *Fladell* Counsel are filing this motion for attorneys' fees to protect their right to have the Court make the allocation, should counsel be unable to reach an agreement.

## II. RELEVANT PROCEDURAL HISTORY

### A. *Fladell*

As explained by Settlement Class Counsel:

> Plaintiff Fladell filed claims challenging the Wells Fargo and Assurant Defendants' force-placed hazard insurance scheme in June 2012, in the action captioned *Fladell v. Wells Fargo Bank, N.A.*, No. 12-cv-61368 (S.D. Fla.). Plaintiff Fladell sought centralization of all force-placed insurance litigation pending nationwide in a multidistrict proceeding in June 2012, but the Judicial Panel on Multidistrict Litigation (the "Panel") denied the motion, urging all parties in force-placed litigation to "continue to employ alternatives to transfer which may minimize the risk of duplicative discovery and inconsistent pretrial rulings." *In re Mortg. Lender Force-Placed Ins. Litig.*, MDL No. 2388 (J.P.M.L. 2012) (D.E. 262). Plaintiffs' counsel in *Fladell* heeded the Panel's call, and joined forces with plaintiffs' counsel in other actions to bring their clients' claims together before this Court in *Hall v. Bank of America, N.A.*, No. 12-cv-22700 (S.D. Fla.) ["*Hall*"].

(Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 158), at 3-4.)

The "plaintiffs' counsel in other actions" that Settlement Class Counsel "joined forces with" included the several law firms that filed *Hall* on July 24, 2012: the Owings Law Firm, the Wagoner Law Firm, P.A., and Walker Law PLC (f/k/a Carter Walker PLLC), of Little Rock, Arkansas, and Wagner, Vaughan & McLaughlin, P.A. of Tampa, Florida. (Class Action Complaint, *Hall* Dkt. No. 1, at 37-38.) On November 12, 2012, these law firms were joined by Settlement Class Counsel on an Amended Class Action Complaint. (*See* Amended Class Action Complaint, *Hall* Dkt. No. 23, at 142-43.)

As Settlement Class Counsel further explain:

> In March 2013, this Court ordered the plaintiffs in *Hall* to re-file their case in five separate pleadings so that there would be one action pending against each mortgage lender and its force placed insurer, and that all five of these cases would be handled in a coordinated manner before this Court. *See Hall*, No. 12-cv-22700

2

(D.E. 177). The above-captioned case was filed on March 28, 2013 as the separate action regarding the Wells Fargo Defendants.

(Motion for Preliminary Approval (Dkt. No. 158), at 4.) The *Fladell* complaint also designated the Owings Law firm, the Wagoner Law Firm, and Carter Walker as counsel for plaintiff. (Class Action Complaint, *Fladell* Dkt. No. 1, at 50-51.) *See also* Corrected Class Action Complaint, *Fladell* Dkt. No. 55-1, at 48-49 (filed Aug. 12, 2013); Order Granting Motion to Substitute Class Representative, *Fladell* Dkt. No. 60 (deeming Dkt. No. 55-1 "to be the operative complaint").

### B.     *Lane* and *Cannon*

In addition to joining forces with Settlement Class Counsel in *Fladell*, Additional *Fladell* Counsel filed two force-placed insurance class actions against Wells Fargo in the Northern District of California. On March 19, 2012, Additional *Fladell* Counsel filed *Cannon v. Wells Fargo Bank, N.A.*, N.D. Cal. No. 3:12-cv-01376-EMC ("*Cannon*"), along with their local counsel, the Law Office of Sheri L. Kelly. (*See* Class Action Complaint, *Cannon* Dkt. No. 1.) The Cannons are Florida residents who, like plaintiff Fladell, asserted their state law claims under Florida law. (*Id*.) On July 31, 2012, Additional *Fladell* Counsel filed *Danny Lane and Beverly Lane v. Wells Fargo Bank, N.A., et al.*, N.D. Cal. No. 3:12-cv-04026-WHA ("*Lane*"), with the same local counsel. (*See* Class Action Complaint, *Lane* Dkt. No. 1.) As part of their coordinated effort, Additional *Fladell* Counsel litigated these cases with Settlement Class Counsel's blessing, producing a wealth of favorable precedent not obtained in *Fladell* itself.[2]

On January 9, 2013, in *Cannon*, the Court held that the filed rate doctrine did not bar plaintiffs' claims; that the primary jurisdiction doctrine did not apply; that plaintiffs' claims were not preempted by the National Bank Act; and denied defendants' motions to dismiss claims for unjust enrichment, conversion, and breach of fiduciary duty under Florida law. *Cannon v. Wells Fargo Bank N.A.*, 917 F. Supp. 2d 1025 (N.D. Cal. 2013). In July 2013, the Court held that plaintiffs could pursue claims based on the "backdating" of force-placed insurance, to the extent

---

[2] A summary of the work performed by Additional *Fladell* Counsel in *Hall*, *Fladell*, *Cannon*, and *Lane* is set forth in the Declaration of Alexander P. Owings in Support of Additional *Fladell* Counsel's Motion for Award of Attorneys' Fees, filed herewith.

the practice was intended to facilitate kickbacks. *Cannon v. Wells Fargo Bank. N.A.*, C-12-1376 EMC, 2013 WL 3388222 (N.D. Cal. July 5, 2013).

On January 24, 2013, in *Lane*, the Court held that plaintiffs' claims were not preempted by the National Bank Act, and that the Lanes had stated claims for breach of contract or breach of the covenant of good faith and fair dealing, unjust enrichment, and conversion under Arkansas law. *Lane v. Wells Fargo Bank N.A.*, C 12-04026 WHA, 2013 WL 269133 (N.D. Cal. Jan. 24, 2013). In March 2013, the Court permitted the Lanes to amend their complaint to add a California plaintiff, Mercedes Guerrero. *Lane v. Wells Fargo Bank, N.A.*, C 12-04026 WHA, 2013 WL 1164859 (N.D. Cal. Mar. 20, 2013). In April 2013, the Court denied Wells Fargo's motion to dismiss claims based on the "backdating" of force-placed flood insurance. *Lane v. Wells Fargo Bank, N.A.*, C 12-04026 WHA, 2013 WL 1758878 (N.D. Cal. Apr. 24, 2013). In preparation for their motion for class certification, Additional *Fladell* Counsel reviewed defendants' voluminous document production; deposed the corporate designees of Wells Fargo, ASIC and QBE; defended the Lanes' depositions; and worked with plaintiffs' expert, Birny Birnbaum, to produce lengthy and detailed expert and rebuttal reports. *See Lane v. Wells Fargo Bank, N.A.*, C 12-04026 WHA, 2013 WL 2627487 (N.D. Cal. June 11, 2013) (ruling on motion to seal deposition transcripts and Birnbaum declaration).

In June 2013, in *Lane*, the Court certified a class of California borrowers with FHA mortgages who were charged by Wells Fargo for force-placed flood insurance. *Lane v. Wells Fargo Bank, N.A.*, C 12-04026 WHA, 2013 WL 3187410 (N.D. Cal. June 21, 2013). The Court designated Ms. Guerrero the representative of the California class, but declined to certify an Arkansas class, holding that the Lanes should litigate their claims "in a more convenient district" instead of "1800 miles away." *Id*. at *12. Accordingly, in October 2013, the parties "stipulated to the dismissal of plaintiffs Danny and Beverly Lane pursuant to FRCP 41(a)(1)(A)(ii)," so that the Lanes could pursue the litigation in a less distant forum. *Lane v. Wells Fargo Bank, N.A.*, C 12-04026 WHA, 2013 WL 5587942, *3 (N.D. Cal. Oct. 10, 2013).

4

In September 2013, in *Cannon*, the Court granted plaintiffs' motion to amend the complaint to assert claims for violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO"), against Wells Fargo, WFI, and ASIC, and claims for aiding and abetting breach of fiduciary duty against ASIC.[3] (*Cannon* Dkt. No. 136.) Motions to dismiss these claims were heard on January 23, 2014. At the hearing, Judge Chen announced that the motions would be denied, and asked Wells Fargo's counsel whether there was "any [ADR] activity with respect to all the other cases? Anything on – before a mediator or anything else that's going on?" (Transcript of Proceedings, *Cannon* Dkt. No. 176 (Request for Judicial Notice in Support of Additional *Fladell* Counsel's Motion for Award of Attorney's Fees, Exh. A), at 22:1-4.) Wells Fargo's counsel – the same lawyers representing it in *Fladell* – informed the Court that no settlement discussions were in progress, and that "trying to conduct ADR prior to a class certification decision is difficult because the potential damages in the case are so difficult to ascertain," so "we would prefer to wait . . . until after class certification to conduct ADR." (*Id.* at 21:10-16.) Notwithstanding these misgivings, Judge Chen ordered the parties to mediation. (*Id.* at 21:17-23:3; Civil Minutes, *Cannon* Dkt. No. 168 (Request for Judicial Notice, Exh. B).)

On January 29, 2014, the Court issued its opinion holding that plaintiffs had stated claims for violation of RICO, exposing Wells Fargo, WFI and ASIC to treble damages for the first time. *Cannon v. Wells Fargo Bank. N.A.*, C-12-1376 EMC, 2014 WL 324556, *2-4 (N.D. Cal. Jan. 29, 2014). In reaching this result, Judge Chen held that plaintiffs' RICO claims were not "reverse-preempted" by the McCarran-Ferguson Act under Florida law, and held again that plaintiffs' claims were not barred by the filed-rate doctrine, this time for the *additional* reason that ASIC's insurance rates were only approved for charge to mortgage servicers, not individual borrowers. *Id.* at *4-8. The Court also allowed plaintiffs' claims against ASIC for aiding and abetting breach of fiduciary duty to move forward. *Id.* at 8.

---

[3] Additional *Fladell* Counsel were joined in this effort by additional local counsel, Himmelstein Law Network.

5

### C. The Settlement

Five days later, on February 3, 2014 – and only eleven days after Wells Fargo's counsel assured Judge Chen that no settlement negotiations were in progress – "Plaintiffs and Defendants reached an agreement in principle to resolve all claims concerning LPI" in *Fladell*. (Joint Motion for Stay of Lender-Placed Insurance Claims, *Fladell* Dkt. No. 145, at 2.) Pending settlement approval, Additional *Fladell* Counsel did not oppose a stay of *Cannon*, which was entered on February 12, 2014. (Order Granting Motion to Stay, *Cannon* Dkt. No. 181.)

On March 3, 2014, plaintiffs filed a Second Amended Class Action Complaint in *Fladell*, adding Danny Lane and Beverly Lane as plaintiffs and proposed class representatives. (*See Fladell* Dkt. No. 155-1.) On March 5, 2014, plaintiffs filed their motion for preliminary approval (*Fladell* Dkt. No. 158), attaching the Stipulation and Settlement Agreement (*Fladell* Dkt. No. 158-1) identifying the Lanes as "Named Plaintiffs." (*Id*. ¶ 2.31.) The Stipulation and Settlement Agreement expressly provides that:

> "Attorneys' Fees and Expenses" means such funds as may be awarded to Class Counsel to compensate them (*and all other attorneys for Named Plaintiffs* or the Settlement Class) *for their fees and all expenses incurred by Named Plaintiffs* or Class Counsel in connection with the Fladell Litigation.

*Id*. ¶ 2.3 (emphasis added).

### III. ADDITIONAL *FLADELL* COUNSEL ARE ENTITLED TO BE PAID FOR THEIR WORK IN *FLADELL*, THEIR REPRESENTATION OF THE LANES, AND THEIR CONTRIBUTIONS IN BRINGING ABOUT THE SETTLEMENT

#### A. Attorneys' Fees Should Be Allocated Based on Relative Contributions to the Result

As the leading treatise on class actions explains, "[w]hen multiple law firms participat[e] jointly in recovering a common fund for the benefit of the class, the court will reach an overall reasonable fee award for all counsel based on a fair percentage of the fund and, *in the absence of an allocation agreement among counsel*, will allocate that overall award among participating counsel based on the reasonable efforts and relative responsibilities they exercised leading to the creation of the common fund for the benefit of the class." *Newberg on Class Actions* § 14:9 (4th

6

ed. 2014) (emphasis added). In particular, "when a substantial benefit has been conferred on the class, non-lead counsel are entitled to reasonable compensation." *Victor v. Argent Classic Convertible Arbitrage Fund, L.P.*, 623 F.3d 82, 87 (2d Cir. 2010). Where, as here, Settlement Class Counsel have a financial interest in keeping as much of the fees awarded as they can, it falls to the Court to make the allocation. *See In re High Sulfur Content Gasoline Products Liability Litigation*, 517 F.3d 220, 227 (5th Cir. 2008) ("[T]he appointment of a committee does not relieve a district court of its responsibility to closely scrutinize the attorney's fee allocation, especially when the attorneys recommending the allocation have a financial interest in the resulting awards.").

In this case, Settlement Class Counsel will almost certainly seek a "pure" percentage fee award, without a lodestar cross-check.[4] Additional *Fladell* Counsel agree that fees should be awarded based on the results achieved, not the lodestar it took to achieve them. *See* n.4, *supra*. In such cases, this Court has held that "an allocation of fees should be based on the relative

---

[4] In *Saccoccio v. JP Morgan Chase Bank, N.A.*, S.D. Fla. No. 13-cv-21107-FAM, the first of the five separate cases (*see* Part II-A, *supra*) to reach a settlement, Settlement Class Counsel made it clear they were seeking a "pure" percentage fee award based solely on the results achieved, rejecting even a lodestar "cross-check":

> Objector Pearson also requests that the lodestar crosscheck be used to analyze Class Counsel's fee request. But this Court recently concluded that the suggested approach is inappropriate because it "creates an incentive to keep litigation going in order to maximize the number of hours included in the court's lodestar calculation." *Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1362-63 (citing *Camden I*, 946 F.2d 768, and noting that the Eleventh Circuit "mandate[d] the exclusive use of the percentage approach in common fund cases, reasoning that it more closely aligns the interests of client and attorney, and more faithfully adheres to market practice"). "[A] common fund is itself the measure of success and represents the benchmark on which a reasonable fee will be awarded.... In this context, monetary results achieved predominate over all other criteria." *Id.* (quoting *Camden I*, 946 F.2d at 774). Based on this sound reasoning, this Court should reject Objector Pearson's request to impose the lodestar approach through the back door via a cross-check.

(Plaintiffs' Motion for Final Approval of Class Action Settlement, *Saccoccio* Dkt. No. 108, at 39-40.)

7

contributions that each law firm provided to the Class. . . . during the various phases of the case." *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1227 (S.D. Fla. 2006). Measured *objectively*, Additional *Fladell* Counsel's contributions to the successful outcome of this case equal or exceed the contributions of Settlement Class Counsel.

> **B.     Additional *Fladell* Counsel Contributed Equally to the Success of This Case**

Despite almost two years of litigation, Settlement Class Counsel have not obtained any positive ruling on the merits of any issue in this case. By contrast, after "joining forces" with Settlement Class Counsel, Additional *Fladell* Counsel prevailed on a series of difficult motions to dismiss in *Cannon* – which concerned the same claims asserted in *Fladell* under Florida law – and the claims asserted by the Lanes, who are now parties to the Stipulation and Settlement Agreement.

Additional *Fladell* Counsel also succeeded in *defeating* – on multiple occasions – the same filed-rate doctrine defense that this Court declined to reject in *Fladell* on a motion to dismiss. *See* Omnibus Order, *Fladell* Dkt. No. 43 (directing parties to conduct discovery on the issue).

Most importantly, on January 23-29, 2014, Additional *Fladell* Counsel succeeded in obtaining a ruling upholding RICO claims against both Wells Fargo and ASIC, instantly trebling their exposure in this litigation, and solving one of the problems that has vexed Plaintiffs throughout this round of force-placed insurance litigation: the difficulty of obtaining a national class asserting only claims under state law. *See, e.g., Williams v. Wells Fargo Bank, N.A.*, 280 F.R.D. 665, 669 (S.D. Fla. 2012) ("The Motion for class certification was initially briefed based on the Plaintiffs' proposed nationwide class. After the briefing, but before the hearing, the Plaintiffs revised the proposed class definition, limiting the class to only Florida properties.").

Not only were Additional *Fladell* Counsel the first – indeed, the only – attorneys to survive a motion to dismiss RICO claims against Wells Fargo and ASIC, it is unlikely that such a result could have been obtained in *Fladell* itself, in light of this Court's ruling in *In re Managed*

8

*Care Litig.*, 185 F. Supp. 2d 1310, 1321-22 (S.D. Fla. 2002) that under Florida law, RICO claims are reverse-preempted by the McCarran-Ferguson Act.

With the RICO claims moving forward in *Cannon*, Wells Fargo told the Court "point blank" that there were no settlement discussions in progress, and that mediation should await a ruling on class certification. (Transcript of Proceedings, *Cannon* Dkt. No. 176, at 21:10-16.) Days later, Wells Fargo and ASIC abruptly changed course, and settled the case, using *Fladell* as the vehicle.

The facts speak for themselves. Defendants did not enter into this settlement because of anything that happened in *Fladell*, where motions to dismiss and for class certification remained pending, but because of the devastating order issued in *Cannon*, making it likely Defendants would face a national class and treble damages, transforming the case into one they simply could not afford to lose. Because Additional Class Counsel are at least as responsible for the result as Settlement Class Counsel, they are entitled to equal payment. *Allapattah*, 454 F. Supp. 2d at 1227.

## IV. CONCLUSION

For the foregoing reasons, should Class Counsel and Additional *Fladell* Counsel be unable to agree on the appropriate division of attorneys' fees as between them, the Court should make the allocation, and award them the same amount.

Dated: August 4, 2014

Respectfully submitted,

*/s/ Alexander P. Owings*
Alexander P. Owings
apowings@owingslawfirm.com
Steven A. Owings (*pro hac vice*)
sowings@owingslawfirm.com
OWINGS LAW FIRM
1400 Brookwood Drive
Little Rock, AR 72202
Telephone: (501) 661-9999
Facsimile: (501) 661-8393

9

Brent Walker (*pro hac vice*)
bwalker@carterwalkerlaw.com
WALKER LAW PLLC
502 Dogwood Meadows
Austin, AR 72007
Telephone:  (501) 605-1346
Facsimile:  (501) 605-1348

Jack Wagoner (*pro hac vice*)
E-mail: Jack@wagonerlawfirm.com
WAGONER LAW FIRM, P.A.
1320 Brookwood, Suite E
Little Rock, AR 72202
Telephone: (501) 663-5225
Facsimile: (501) 660-4030

*Attorneys for Plaintiffs Danny Lane and Beverly Lane*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 4, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Alexander P. Owings*
Alexander P. Owings