UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IRA MARC FLADELL, SARAH CROUCH, GREG OLSON, MARGARET ZAWISTOWSKI, TILENA ALI, DANNY LANE and BEVERLY LANE, individually and on behalf of all others similarly situated, | Civil Case No. 0:13-cv-60721 |

Plaintiffs,

v.

WELLS FARGO BANK, N.A.; WELLS
FARGO INSURANCE, INC.; ASSURANT,
INC.; AMERICAN SECURITY INSURANCE
COMPANY; VOYAGER INDEMNITY
INSURANCE COMPANY; STANDARD
GUARANTY INSURANCE COMPANY;
QBE SPECIALTY INSURANCE
COMPANY; QBE INSURANCE
CORPORATION; QBE FIRST INSURANCE
AGENCY, INC.; QBE FINANCIAL
INSTITUTION RISK SERVICES, INC.; and
PRAETORIAN INSURANCE COMPANY,

Defendants.

**OBJECTIONS AND MEMORANDUM IN SUPPORT OF THE OBJECTIONS BY
INDIANA, OHIO, PENNSYLVANIA, AND WASHINGTON PLAINTIFFS
VANSKYOCK, SWAIN, YOHO, AND PEARSON TO THE PROPOSED
SETTLEMENT AND RELATED RELIEF**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................... iii

INFORMATION ABOUT OBJECTORS REQUIRED BY CLASS ACTION NOTICE ........... iv

INTRODUCTION ..........................................................................................................1

THE OBJECTIONS........................................................................................................2

   1.   The Parties Have Failed to Provide Important Information to
      Support the Proposed Settlement and the Settlement Class.................................2

   2.   The "Claims-Made" Nature Of The Settlement Is Unreasonable And
      Inappropriate Given The Information Readily Available To Defendants
      And Will Result In The Vast Majority Of Class Members Receiving
      Nothing In Exchange For The Complete Release of Valid Claims .....................5

   3    The Claim Form Unnecessarily Impedes Recovery,
      Especially Given The Information In Defendants' Possession ...........................8

   4.   The Release Should Only Be Effective Against Class Members
      Whose Claims Are Paid........................................................................................9

   5.   The Settlement Process is Tainted by the Parties' Unexplained
      Post-Settlement Machinations ...........................................................................10

   6.   There Is No Adequate Representative in This Case for the Objector
      Plaintiffs' Classes of Borrowers.......................................................................11

   7.   The Settlement's Proposed Release Of The Assurant, QBE and Voyager
      Defendants Is Unfair, Particularly Because Those Entities Were Not
      Defendants When The Parties Negotiated The Settlement .................................12

   8.   The Injunctive Relief Provisions Purport To Impose Obligations
      And Eliminate Practices Already Addressed Under Regulations
      And Other Agency Settlements..........................................................................13

   9.   The Settlement Is Unfair Because It Seeks Final Approval Even Before
      The Claims Deadline...........................................................................................14

  10.  The Settlement Is Unfair Because The Opt Out And Objection Periods Are
      Too Short And Improperly Restrict Each Class Member's Right To
      Challenge The Settlement And To Pursue Existing Cases .................................15

11.   Although The Notice And The Preliminary Approval Order Define The Class
      To Include All Borrowers Who Have Been Forced Placed, The Claim Form
      Improperly Limits The Class By Excluding Borrowers Who Have Filed A
      Chapter 7 Bankruptcy Petition...............................................................................................15

12.   The Claim Form Is Unfair and Unduly Complex ...............................................................17

13.   The Objecting Plaintiffs Object To The Court Awarding Attorneys'
      Fees And Costs Before The Parties Specify How Much Defendants
      Actually Will Pay Under The Settlement .............................................................................17

CONCLUSION.....................................................................................................................................18

## TABLE OF AUTHORITIES

Cases

*Acosta v. Trans Union, LLC*,
   243 F.R.D. 377 (C.D. Cal. 2007) ............................................................................... 7

*Cassese v. Williams*,
   503 F. App'x 55 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 2023 (2013) ...................... 17

*Creative Montessori Learning Centers v. Ashford Gear LLC*,
   662 F.3d 913 (7th Cir. 2011) .................................................................................... 6

*De Leon v. Bank of Am., N.A. (USA)*,
   No. 09-cv-1251-ORL-28, 2012 WL 2568142 (M.D. Fla. Apr. 20, 2012) .............. 6, 14

*Ellsworth v. U.S. Bank*,
   Case No. C 12-02506, 2014 WL 2734953 (N.D. Calif. June 13, 2014) ..................... 12

*Eubank v. Pella Corp.*,
   Case No. 13-2091, 2014 WL 2444388 (7th Cir. June 2, 2014) .................................. 3

*Ferrington v. McAfee, Inc.*,
   No. l0-cv-01455, 2012 WL 1156399 (N.D. Cal. Apr. 6, 2012) ................................ 14

*Gooden v. SunTrust Mortgage, Inc.*,
   2:11-CV-02595-JAM, 2013 WL 6499250 (E.D. Cal. Dec. 11, 2013) ...................... 12

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995) ...................................................................................... 17

*In re Mercury Interactive Corp. Sec. Litig.*,
   618 F.3d 988 (9th Cir. 2010) ................................................................................... 17

*Lane v. Wells Fargo Bank, N.A.*,
   C 12-04026 WHA, 2013 WL 3187410 (N.D. Cal. June 21, 2013) ........................... 12

*Plummer v. Chemical Bank*,
   668 F.2d 654 (2d Cir. 1982) ...................................................................................... 6

*Sylvester v. CIGNA Corp.*,
   369 F. Supp. 2d 34 (D. Me. 2005) ............................................................................. 7

*Williams v. Wells Fargo Bank, N.A.*,
   No. 11-cv-21233 (S.D. Fla.) ...................................................................................... 8

**INFORMATION ABOUT OBJECTORS REQUIRED BY CLASS ACTION NOTICE**

a) The Case Name and Number:

   *Fladell v. Wells Fargo Bank, N.A.*, Case No. 13-cv-60721

b) The basis for the objections:

   Detailed below.

c) The Objector's name, address, telephone number and email address;

   1.  <u>Peggy Pearson</u>

       516 S. Maple Street
       La Conner, Washington 98257
       (360) 391-[redacted and will be provided by counsel below if necessary]
       Email: s********@*****.com [redacted and will be provided by counsel below if necessary]

   2.  <u>Ashley Swain</u>

       212 Dow Street
       Carey, Ohio 43316
       (419) 610-[redacted and will be provided by counsel below if necessary]
       Email: a*************@*****.com [redacted and will be provided by counsel below if necessary]

   3.  <u>Julie Vanskyock</u>

       2801 W. Oliver Drive
       Muncie, Indiana 47302
       (765) 729-[redacted and will be provided by counsel below if necessary]
       Email: v**********@*****.com [redacted and will be provided by counsel below if necessary]

   4.  <u>Melissa Yoho</u>

       821 North Arch Street
       Mechanicsburg, Pennsylvania 17055
       (717) 743- [redacted and will be provided by counsel below if necessary]
       Email: m********@*****.com [redacted and will be provided by counsel below if necessary]

d) A statement of whether you intend to appear at the Final Approval Hearing, either with or without counsel.

Yes (counsel will appear).

## INTRODUCTION

This is the type of claims-made settlement that courts and commentators frequently warn about. It promises large attorneys' fees to class counsel in exchange for a broad release but will provide very little to the Class. Most class members will receive nothing. To accomplish this, the parties have used a claims process that limits the amount Defendants will pay to the Class and eliminates billions of dollars in liability for a small fraction of that amount.

Although Plaintiffs tout the settlement as providing more than $515 million in benefits to the class[1], there is nothing to substantiate that figure and the parties have failed to provide the Court with the details about how much Defendants actually will pay to the Class to settle these claims. They have not provided the Court with the information necessary to determine that the settlement is fair. For example, how much in force placed premiums did Defendants charge Settlement Class members during the Class Period? Of the 1,340,157[2] Settlement Class members, how many have submitted claims for settlement proceeds? What is the actual dollar amount that Defendants will pay to the Settlement Class? Is that amount anywhere close to the $515 million in benefits that the parties suggest this settlement is worth? What percentage of estimated damages is the actual recovery?

Until the parties come forward with proof demonstrating the adequacy and fairness of the settlement and the need for a claims-made process, the Court should deny the motion for final approval as well as the related request for attorneys' fees and costs.

\* \* \*

---

[1] Doc. 182 at 1.
[2] Doc. 182 at 1.

## THE OBJECTIONS

Peggy Pearson, Ashley Swain, Julie Vanskyock, and Melissa Yoho are plaintiffs in similar class actions against Wells Fargo in different states around the country: Washington, Ohio, Indiana, and Pennsylvania ("Objecting Plaintiffs").[3]  The Objecting Plaintiffs object to the proposed settlement and the related relief sought by the parties and urge the Court to reject the settlement.  They also request the Court to require the parties to answer the questions set forth in this Objection because many of those answers will reveal that this settlement is unfair and not approvable in its current form.

1.    **The Parties Have Failed to Provide Important Information to Support the Proposed Settlement and the Settlement Class**

There are so many unanswered questions about this proposed settlement that it would be inappropriate to approve it now, before the parties have provided the details necessary for the Court to properly assess whether the settlement is fair and reasonable under Rule 23.  These fundamental questions go to the heart of the claims and to the fairness (or unfairness) of the proposed settlement.  For example: how much in force placed premiums did Defendants charge Settlement Class members during the Class Period?  Of the 1,340,157[4] Settlement Class members, how many have submitted claims for settlement proceeds? What is the actual dollar amount that Defendants will pay to the Settlement Class?  Is that amount anywhere close to the $515 million in benefits that the parties suggest this settlement is worth? What percentage of estimated damages is the actual recovery? When did Wells Fargo begin receiving kickbacks for force placing insurance on borrowers and when did it end that practice? Was that period the same for all states and for flood, flood gap, hazard, and wind insurance? Why does the claims form prevent recovery by Settlement

[3] *Pearson v. Wells Fargo Bank, N.A., et al.*, Case No. 2:14-cv-00521 (W.D. Wash.); *Swain v. Wells Fargo Bank, N.A.*, Case No. 3:13-cv-01727; *Vanskyock v. Wells Fargo Bank, N.A., et al.*, Case No. 1:13-cv-01176 (S.D. Ind.); *Yoho v. Wells Fargo Bank, N.A.*, Case No. 4:14-cv-00534 (M.D. Pa.).
[4] Doc. 182 at 1.

Class Members who have filed for bankruptcy protection when the Settlement Agreement and the Court's Preliminary Approval Order include them within the Settlement Class?

In this action Plaintiffs alleged that during the Class Period, Wells Fargo charged borrowers hundreds of millions of dollars annually in force placed insurance premiums[5]. That staggering amount -- which likely exceeds $1,000,000,000.00 during the Class Period -- is a measuring stick against which the settlement should be judged. Plaintiffs boast a settlement of $515 million. But how much will Settlement Class Members actually recover under this proposed settlement? The parties have not provided that important information to the Court. Nor will the Court have that crucial information by the time of the Final Approval Hearing because the parties have intentionally designed the Settlement in a way that extends the claims period beyond the date for the Final Approval hearing, a method that has been criticized by other courts because it deprives the district court of meaningful information at the final approval stage. *Eubank v. Pella Corp.*, Case No. 13-2091, 2014 WL 2444388 at *6 (7th Cir. June 2, 2014) (criticizing a settlement and reversing the final approval where the district court did not have the benefit of the claims information before the final approval hearing) ("Not only did the settlement agreement not quantify the benefits to the class members, but the judge approved it before the deadline for filing claims."). The Court should deny final approval until the parties provide the missing information, which instead of establishing the fairness of the settlement will demonstrate that it is unfair and will result in most Class members getting nothing.

As an example, the Pennsylvania Objector (Ms. Yoho) obtained data from Wells Fargo in *Yoho v. Wells Fargo*[6] indicating that between 2005 and 2014 Wells Fargo force-placed 70,820 hazard insurance policies in Pennsylvania and charged a whopping $66,688,412 in premiums for

---

[5] Doc. 147-1 at ¶ 1.
[6] *Yoho v. Wells Fargo Bank, N.A.*, Case No. 4:14-cv-00534 (M.D. Pa)(Mariani, J.).

those policies during that time. Objectors' Ex. A. The parties here, however, submit nothing

explaining how many claims have been submitted for those 70,820 policies or how much

Defendants will actually pay on the $66 million in hazard premiums. Nor do they submit anything

about the amount of the premiums for the other types of insurance covered by the settlement and the

amount that Defendants will actually pay on those policies as a result of the settlement.

There is no reason the parties should withhold that information from the Court or withhold

from the Court the answers to the following additional questions:

1. When did Defendants begin their force placed practices for the types of insurance that are at issue in this case? (The parties should provide this information by state and by year and should distinguish between flood, hazard, windstorm and fire insurance.)
2. Did Wells Fargo at some point stop the force placed practices that are the subject of this action (particularly the kickback and commission practices)? If so, when did Wells Fargo stop those practices for flood, flood gap, hazard, and wind insurance?
3. Were there any gaps in the data that prevented the parties from identifying Settlement Class Members for any portion of the Settlement Class Period or any state?
4. What is the breakdown of the number of Class Members by type of insurance, by year, and by state?
5. What is the "net written premium" for each year of the Class Period broken down by number of policies, type of policy and by state?
6. How many settlement claim forms have Class Members submitted, itemized by type of insurance and by state?
7. How much will Defendants pay under this settlement to Class members in each state?
8. How many claims (by state and by type of policy) will Defendants pay as a result of this proposed Settlement?
9. Which Plaintiff had the following force placed insurance: flood, flood gap, hazard, and wind insurance?
10. Which portions of the Injunctive Relief (Settlement Agreement ¶¶ 4.2-4.4) did Defendants agree to solely as a result of this proposed settlement?
11. What is the percentage of Settlement Class Members whose loans have been paid in full?
12. What is the percentage of Settlement Class Members whose accounts are active and non-delinquent?
13. What is the expected claims rate for the Settlement?
14. What is the agreement, if any, between Defendants for how they will pay the settlement proceeds and any attorneys' fees awarded by the Court?

The parties should provide this information before the Final Approval hearing because

without it the Court will not be able to determine whether the Settlement is fair or whether the

request for fees and expenses is reasonable.

2.    **The "Claims-Made" Nature Of The Settlement Is Unreasonable And Inappropriate Given The Information Readily Available To Defendants And Will Result In The Vast Majority Of Class Members Receiving <u>Nothing In Exchange For The Complete Release of Valid Claims</u>**

The $515 million settlement amount is wholly illusory given the strict "claims-made" settlement structure and the absence of any common fund under the settlement. Claims-made settlements like this have come under significant fire lately because they often return little to class members who must submit a claim form to seek benefits. Here, the proposed class notice and claims procedure is so biased in favor of Defendants that the only guarantee with this settlement is that Wells Fargo will erase enormous liability to the Settlement Class in exchange for agreeing to pay $19 million in fees and costs to Plaintiffs' attorneys and some undetermined, but small amount to the Class. The ultimate payout to the Class will be far less than $515 million and will be a fraction of the improper premiums Defendants charged Class members for force-placed insurance.

This is exactly the type of troublesome claims-made settlement that courts have so often cautioned against because of its very real potential for abuse. As Judge Posner recently wrote for the Court of Appeals for the Seventh Circuit, "we and other courts have often remarked the incentive of class counsel, in complicity with the defendant's counsel, to sell out the class by agreeing with the defendant to recommend that the judge approve a settlement involving a meager recovery for the class but generous compensation for the lawyers -- the deal that promotes the self-interest of both class counsel and the defendant and is therefore optimal from the standpoint of their private interests." *Pella*, 2014 WL 2444388 at *2 (citing *Creative Montessori Learning Centers v. Ashford Gear LLC*, 662 F.3d 913, 918 (7th Cir. 2011) and *Plummer v. Chemical Bank,* 668 F.2d 654, 658 (2d Cir 1982)).

Courts reject proposed settlements where "[t]he settlement amount considered in the light of the Settlement Agreement as a whole raises the possibility that there was some collusion." *Pella*, 2014 WL 2444388 at *10 (reversing the final approval of a claims-made settlement where "class counsel sold out the class"); *De Leon v. Bank of Am., N.A. (USA)*, No. 09-cv-1251-ORL-28, 2012 WL 2568142 (M.D. Fla. Apr. 20, 2012) *report and recommendation adopted*, 2012 WL 2543586 (M.D. Fla. July 2, 2012).[7]

Although the Objecting Plaintiffs understand that this Court has previously approved claims-made settlements in other force placed insurance cases, the Objecting Plaintiffs respectfully urge this Court to critically examine this one in order to protect the Class. When asked to evaluate proposed settlements that include many of the same features as the proposed settlement here, other district courts have declined to approve them. For instance, in *De Leon* the court reasoned that one factor that militated against granting preliminary approval was that while the proposed settlement was for an amount "up to $10,000,000," the total payment to all proposed class members could be a fraction of that and was unlikely to exceed $2,800,000. *Id*. The court was troubled by the relatively small amount of the actual payment compared with the broad release and the relatively large attorneys' fee. *Id*. at *15 ("Defendant also had an incentive to work with Plaintiffs' counsel to maximize their possible fee award because the Settlement Agreement will extinguish a vast array of claims that might have been brought against Defendant by class members who fail to opt-out of the class."). Those same concerns

---

[7] The "Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide" produced by the Federal Judicial Center found online at www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf/$file/NotCheck.pdf (last visited September 25, 2013) (The "FJC Guide") lists factors that a court should consider when deciding whether or not a proposed notice and claims process is adequate. The FJC specifically counsels district court judges to consider, *inter alia*: whether there is "unbiased evidence supporting the notice plan is adequate;" "is a claims process necessary?;" or will it serve as a "choke" on the total amount paid to class members; and "Does the claims process avoid steps that deliberately filter valid claims." FJC Guide at 6. When viewed through this spectrum, the *Fladell* Plaintiffs' notice and claims process is unreasonable and unfair.

apply here.

In a case where the borrowers are precisely known, requiring class members to submit a claim form is an unreasonable and inappropriate obstacle to recovery that will most assuredly lead to the great majority of class members not receiving any monetary relief. *See Managing Class Action Litig.: A Pocket Guide for Judges,* Fed. Judicial Ctr. (3d. ed. 2010), p. 30 ("If the claims process deters class members from filing claims, the settlement may have less value to the class than the parties assert... Avoid imposing unnecessary hurdles on potential claimants. First, consider whether a claims process is necessary at all. The defendant may already have the data it needs to automatically pay the claims of at least a portion of class members who do not opt out."). The parties have submitted no proof here that they lack the data necessary to automatically process the claims for the class and they have failed to demonstrate that a "claims-made" settlement is necessary or fair for the entire class.[8]

Defendants are no doubt aware of the historically low claims rate in "claims-made" settlements and can be certain that their ultimate pay-out if this settlement is approved will be just a fraction of the publicized settlement value of approximately $515 million. *See Sylvester v. CIGNA Corp.*, 369 F. Supp. 2d 34, 53 (D. Me. 2005) ("'Claims made' settlements regularly yield response rates of 10 percent or less"); *see also Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 390-92. (C.D. Cal. 2007) (denying preliminary approval and finding that "much of what was attainable will go unpaid as a result of the claims-made process).

Recent empirical evidence bears this out. For example, Plaintiff's Counsel proudly points to *Williams v. Wells Fargo Bank, N.A.*, No. 11-cv-21233 (S.D. Fla.) as an achievement, but it was anything but. *Williams* involved a "claims-made" settlement for a Florida class of Wells Fargo

---

[8] The Objectors request discovery from the parties sufficient to answer the questions posed above by Objectors and to examine the fairness of using a claims-made process for the entire class.

borrowers with force-placed hazard insurance.  The publicized settlement value was approximately $19.25 million with class members entitled to a return of 25% of their force-placed premiums – more than double the relief provided here.  In *Williams*, the parties mailed Notice of the settlement to 36,464 Florida class members[9] but only 3,498 of them (9.59% of the class) submitted claim forms.[10]  In light of the claims rate, the *Williams* defendants will pay out less than $2 million in claims.[11]  In comparison, class counsel in *Williams*—the same attorneys proposing the settlement here—received $5,480,000 in fees and costs, almost three times the amount that the defendants paid to the settlement class.  *See Williams*, ECF No. 356. This Court should prevent something similar from happening here on a nation-wide basis.  If the Court requires the parties to answer the questions that the Objectors set forth above, the Court will quickly see that this settlement is unfair.

3.   **The Claim Form Unnecessarily Impedes Recovery,**
      **Especially Given The Information In Defendants' Possession**

The claims-made process is particularly inappropriate in this case because Defendants have the information available to them to automatically process the claims of the Settlement Class members.  In fact, in connection with the notice that the parties disseminated, the parties have already identified each borrower in the class.  *See* Doc. 182-1 (Settlement Agreement) ¶ 6; Doc. 182 (Plaintiff's Br.) at 9, 18 - 19.  This is especially true because this case is brought against lenders and servicers who are required by law to maintain the data.  *See* Real Estate Settlement Procedures Act, 12 U.S.C. §3500.17(i). ("[S]ervicer must submit to the borrower an annual statement for each escrow account item within thirty days of the completion of the

---

[9] *Williams*, ECF No. 354-2, Ex. B ¶ 6.
[10] There were also 120 late claim forms received.  *Id.* ¶ 15.  The net result is that over 30,000 Florida residents had their claims extinguished and received nothing in return.
[11] This assumes claims of roughly equal size, calculated as 9.59% of $19.25 million, which equals $1,846,075. Notably, the claims rate was less than 10%.  (*Williams*, ECF No. 354-2, Ex.B ¶ 10.)

computation year" including "the amount paid from the account for taxes, *insurance premiums, and other charges*.") (emphasis added).

Plaintiffs suggest that the claims procedure is necessary because it would be too difficult to determine the amount owed to each class member. Doc. 182 (Plaintiff's Br.) at 18-20. But reviewing the claim form exposes the flaw in this suggestion because the claim form does not even ask for the amount of premiums that the Class member paid. Doc. 182-1 (Settlement Agreement) at ¶ 6.4; Doc. 182-2 (Claim Form). It instead asks only for contact information (which Defendants already have) and whether the Class member paid for or owes money for force-placed insurance. Therefore, the claims administrator will *still* have to determine how much the Class member should receive. The true reason for the claim form is to create a claims submissions process so that there are fewer claims to process and pay. Whittling down the number of claimants is not, however, a valid reason to institute a burdensome claims process, particularly where it leads to the unfair result of an incredibly broad release and most Class members receiving no payment under the settlement.

As a result, the claims-made nature of the settlement for all class members is unreasonable, unnecessary and unjustified and is intended only to shield Defendants from making substantial payments to the Settlement Class.

4.    **The Release Should Only Be Effective Against Class Members Whose Claims Are Paid**

In class actions, very few potential class members will opt-out. As Judge Posner in *Pella* recently explained, "Opting out of a class action is very rare. Virtually no one who receives notice that he is a member of a class in a class action suit opts out. He doesn't know what he could do as an opt-out. He's unlikely to hire a lawyer to litigate over a window [the case involved defective windows]." *Pella*, 2014 WL 2444388 at *12. Defendants therefore have an incentive to push through a claims-made settlement that will result in a small number of claims,

very few opt-outs and a broad release.  In *Pella*, the appellate court rejected that approach and reversed the district court's order approving the settlement.

This Court should reject this settlement for similar reasons.  Alternatively, if the Court approves the settlement it should enter the release only against Class members who have been paid the settlement proceeds.  That is, if Defendants pay a class member settlement proceeds, that class member's claims are released, but if Defendants do not pay the Settlement proceeds to a class member, that person is not subject to the release.  Approving the release only against class members who have been paid levels the playing field and protects the class from overreaching by the parties.  It also accounts for the fact that very few class members would take the steps necessary to exclude themselves from the settlement, especially where the opt-out period is so short.

**5.    The Settlement Process is Tainted by the Parties' Unexplained Post-Settlement Machinations**

The settlement is unfair because of the unusual process that the parties used to reach the settlement.

The parties should explain why a nationwide class is appropriate when throughout this litigation and in other cases Defendants have consistently argued that nationwide classes are inappropriate in these types of force placed insurance cases—especially as Plaintiffs did not originally move to certify a nationwide class for any of their state-law claims.  As discussed above, courts have denied nationwide class certification, especially where, as here, the governing loan documents have a choice of law provision requiring courts to apply the borrower's state law to common law claims like those here.

The Court also should require a detailed explanation as to why Plaintiffs amended their claims here after agreeing to the proposed settlement.  With a proposed nationwide settlement

10

already in hand, Plaintiffs filed an amended complaint to expand the reach of the settlement by
adding defendants and by adding plaintiffs from Oklahoma and Arkansas. *See* Doc. No. 155-1
(Second Amended Class Action Complaint) at ¶¶ 13-19.[12]  Plaintiffs added defendants who were
never named before but will be released if the Court approves the settlement. *Id.* at ¶¶ 20-30.
These post-settlement amendments raise questions about the fairness of the process used to reach
the settlement.

6.      **There Is No Adequate Representative in This Case for the Objector
        Plaintiffs' Classes of Borrowers**

        The Objector Plaintiffs object to the Settlement and certification of the Settlement Class
because there was no Plaintiff who could adequately represent the Objectors and the proposed
class of borrowers in their respective states.  The *Fladell* Plaintiffs' conduct before the settlement
supports this.  Plaintiffs filed for a motion to certify a national class only on their *federal* claims[13]
and sought certification on a Florida state-law only class because Plaintiffs knew that courts are
unlikely to certify a national class on state laws claims that vary and even clash.  That did not
stop Plaintiffs' counsel, however, from negotiating away the entire nation's claims in exchange
for a massive attorneys fees payout of $19 million.  The fate of the claims by the Objecting
Plaintiffs and the other borrowers in their states should not depend upon borrowers from Florida,
Oklahoma, and Arkansas whose claims have no connection with Objecting Plaintiffs' states.[14]
Courts have recently refused to certify similar nationwide classes in force placed insurance cases.
*See, e.g.*, *Lane v. Wells Fargo Bank, N.A.*, C 12-04026 WHA, 2013 WL 3187410, at **3-4 (N.D.
Cal. June 21, 2013) (denying certification of a nationwide class represented by plaintiffs Beverly

---

[12] The Second Amended Class Action Complaint was filed twenty-eight days after the parties advised this Court that
they had agreed to a nationwide settlement.
[13] Plaintiffs' motion for class certification, Doc. 97, is currently under seal. However, Wells Fargo's opposition to
Plaintiffs' motion for class certification indicates that "Plaintiffs seek national certification only on federal-law
claims . . ." Doc. 108, at 2.
[14] Plaintiffs added Oklahoma and Arkansas Plaintiffs only after briefing for their motion for class certification was
complete, and after the parties had reached a settlement.

and Danny Lane, who later join this action as plaintiffs, because "variations in state law preclude[d] certification of a nationwide class"); *Ellsworth v. U.S. Bank*, Case No. C 12-02506, 2014 WL 2734953 (N.D. Cal. June 13, 2014) (force placed insurance case in which the district court certified a class but excluded from class certification borrowers from Ohio, where Objector Swain lives); *Gooden v. SunTrust Mortgage, Inc.*, No. 2:11-CV-02595-JAM, 2013 WL 6499250, at *8 (E.D. Cal. Dec. 11, 2013) ("Because it is unclear how the variations in state law would be dealt with, the Court finds that Plaintiffs have not met their burden to establish the commonality and predominance requirements of Rule 23(a)(1) and (b)(3) for the Nationwide Classes for Flood and Hazard Insurance."); *Gustafson*, 294 F.R.D. at 541-50 (denying certification of a nationwide class in the force placed context where common law claims required applying different state laws).

**7.    The Settlement's Proposed Release Of The Assurant, QBE and Voyager Defendants Is Unfair, Particularly Because Those Entities Were Not Defendants When The Parties Negotiated The Settlement**

The proposed release in the settlement is inappropriately overbroad, especially because it would release Assurant, QBE, Voyager and Praetorian entities that were not even defendants before the parties mediated the case in November 2013 and finalized the settlement in January 2014. Of particular concern is that it was only after the plaintiffs negotiated a nationwide deal and moved to stay the case on February 3, 2014, that Plaintiffs, with Defendants' consent (and perhaps at their urging), filed an Amended Complaint on February 6, 2014 (Doc. 147) and a last-minute Second Amended Complaint on March 3, 2014 (Doc. 155-1) adding new claims, new plaintiffs, and adding some of the force placed insurance carriers as defendants as a way to try to justify a provision in the Settlement Agreement that will release those entities who were never named before in these actions. *See*, Doc. 155-1 (Second Amended Class Action Complaint).

The suspicious timing and self-serving purpose of the amendments highlights the unfair process that was used to craft the settlement.

8.    **The Injunctive Relief Provisions Purport To Impose Obligations And Eliminate Practices Already Addressed Under Regulations And Other Agency Settlements**

The Settlement purports to deliver $234 million worth of additional benefits through injunctive relief provisions in paragraphs 4.2 through 4.4 that enjoin or mandate specified practices that were at issue in the litigation. (Doc. 182-1, ¶¶ 4.2 - 4.4) However, this relief is not a product of this settlement. Instead, Wells Fargo and Assurant and QBE are already obligated by the terms of settlements they have previously entered with state attorneys general and insurance departments, new federal regulations and proposed regulations to refrain from the practices purportedly prohibited by this settlement and to comply with the guidelines that this settlement purports to establish. *See, e.g.*, National Mortgage Settlement, ("NMS")[15]; NYDFS Proposed, 11 NYCRR 227 (Insurance Regulation 202), Regulation of Force-Placed Insurance; *see also* 12 C.F.R. § 1024.37(g)(effective date January 10, 2014). *See also* Federal Housing Finance Agency, No. 2013-05 Lender Placed Insurance, Terms and Conditions.

Assurant's and QBE's Consent Orders also prohibit reinsurance arrangements like those that they had with Wells Fargo, as well as payments to servicers for administrative services and provision of below-cost or free tracking services to servicers. It seems then that prior agreements, and not the settlement, were the impetus for these changes that were already being implemented when the parties agreed to this settlement. In sum, the value of the injunctive relief provided under the settlement is severely, if not entirely, diminished by the

---

[15] ECF No. 14, Ex. A at A-37-40, in Docket No. 1:12-cv-00361-RMC (D.D.C). This agreement is also available at www.nationalmortgagesettlement.com

reality that virtually all of the changes identified in the settlement as additional consideration were already set in motion or required pursuant to prior agreements and government regulations and guidelines.  Thus, Plaintiffs misrepresent the true value of the injunctive relief.

**9.      The Settlement Is Unfair Because It Seeks Final Approval Even Before The Claims Deadline**

The Settlement is unfair because the deadline to submit claims will not run until 60 days after the Settlement has been finally approved and any appeal period has expired. Doc. 182-1 (Settlement Agreement) ¶ 2.4 (defining the "Claim Period"). In other words, before the Final Approval Hearing the Court will not and cannot know the number of claims that will be paid. *Pella*, 2014 WL 2444388 at *6 (reversing the final approval where the district court did not have the benefit of the claims information before the final approval hearing) ("Not only did the settlement agreement not quantify the benefits to the class members, but the judge approved it before the deadline for filing claims."). Nor can Class Member know exactly when the deadlines for submitting claims expires; they are left to guess when the claims deadline will expire, creating uncertainty that surely will lead to fewer claims.

The Settlement should set a date-certain for submitting all claims and that date should be before any Final Approval hearing so that the Court can know the claims that will be paid before it determines whether to approve the Settlement and before it awards any fees and expenses. Without such critical information, the Court should deny final approval.[16]

---

[16] *See De Leon v. Bank of Am.*, No. 09-cv-1251, 2012 WL 2568142, at * 15 (M.D. Fla. Apr. 20, 2012) and 2012 WL 2543586 (July 2, 2012) (adopting Mag. J Rec. & Op.) (denying approval of claims- made settlement with, among other things, a predictably low rate of claims); *Ferrington v. McAfee, Inc.*, No. 10-cv-01455, 2012 WL 1156399, at * 13 (N.D. Cal. Apr. 6, 2012) (denying final approval of claims-made settlement involving "a low rate of claims participation, a small claims pay out, [and] a disproportionately large attorneys' fee award . . . .").

10.    **The Settlement is Unfair Because The Opt Out And Objection Periods Are Too Short And Improperly Restrict Each Class Member's Right <u>To Challenge The Settlement And To Pursue Existing Cases</u>**

The Settlement provides more than one million class members with only two months from the mailing of the Notice to opt out or object,[17] a period that is far too short given the important rights that would be released by this settlement and the Settlement Agreement's own recognition that some class members may not receive the notice. *See* Doc. 182-1 (Settlement Agreement) at page 27, ¶ 6.1 (recognizing that some notices will be undeliverable and will need to be re-mailed).

Furthermore, Class Members should have a reasonable amount of time to object to the settlement or opt-out after the parties reveal how much Defendants actually will pay to the Class. It is premature to ask Class Members to opt-out or object to the Settlement before the parties have provided the truth about the actual settlement amount. Any reasonable person reviewing the filings in this case would conclude that the settlement provides "$515 million in benefits" as Plaintiffs represent in their papers seeking final approval. Doc.182 at 2 of 30. But that wildly inflated figure is far, far from the truth in this case.

11.    **Although The Notice And The Preliminary Approval Order Define The Class To Include All Borrowers Who Have Been Force Placed, The Claim Form Improperly Limits The Class By Excluding Borrowers Who Have Filed A <u>Chapter 7 Bankruptcy Petition</u>**

In the Preliminary Approval Order, this Court tentatively approved the Settlement Class and specifically defined the Class. Doc. No. 168, ¶ 4. The Court's Order never excluded borrowers who had filed for bankruptcy. Nor did the Settlement Agreement. *See* Doc. 182-1(Settlement Agreement) at ¶ 3.1 (defining who is in the class and who is not). Similarly, the Notice never limited the class to exclude borrowers who filed for bankruptcy. Doc. 182-2

---

[17] Doc. 182-2 ( Decl. of Jennifer M. Keough),  ¶ 8 ("1,340,157 Class Members were mailed a notice Packet on June 19, 2014.").

(Notice) at 4 (providing same definition as to who is in the class and who is not).

Yet in the Claim form, the parties have taken it upon themselves to pare down the Class for whom this Court preliminarily approved a settlement. The parties have excluded from recovery borrowers who have filed a Chapter 7 petition, without any authority or explanation. *See*, Doc. 182-2 (page 23 of 52) (Claim form at 3) (in which the parties require the Class member to declare "under penalty of perjury" that "[s]ince the issuance of the LPI Policy, I have not filed a Petition under Chapter 7 of the United States Bankruptcy Code, and my indebtedness on my residence secured by my Deed of Trust or Mortgage has not been compromised or discharged in bankruptcy.").

It is unfair for the parties to define the class differently in the claim form than in the Settlement Agreement and the Preliminary Approval Order. The parties' use of language in the claim form preventing those borrowers from recovering is especially troubling because Defendants' force placed insurance practices often caused borrowers to experience significant financial difficulties, including the need to file for bankruptcy protection. The parties' limiting language in the claim form also raises a host of questions that create doubt about the effect of the settlement, such as:

is a borrower who filed for bankruptcy even part of the class?

if a borrower is not eligible for a recovery because he filed for bankruptcy, why should his claims be released?; and

if a borrower has filed a bankruptcy petition but has not yet emerged from bankruptcy, is that person excluded from recovering under the language that the parties' added to the claim forms?

The Court should reject the nonconforming and misleading claim form.

## 12.    The Claim Form Is Unfair and Unduly Complex

The claim form is unduly complex and redundant. Although Defendants already have the

data that they seek from the claimant (such as the claimant's contact information), the claim form

requires claimants to repeat it. It also requires the claimant to provide a copy of a Photo ID with a

signature on it, an account statement, or to provide a witness verification in order to receive a

settlement check, which erects a further inappropriate hurdle for claimants.  Doc. 182-2 (page 22

of 52) (Claim form at 2).

13.     **The Objecting Plaintiffs Object To The Court Awarding Attorneys' Fees And Costs Before The Parties Specify How Much Defendants Actually Will Pay Under The Settlement**

The settlement provides for attorneys' fees and expenses of up to $19,000,000.[18]  The

Court should not award attorneys' fees or expenses until the parties provide details about how

much Defendants actually will pay to the settlement class and until the parties provide the other

information that the Objecting Plaintiffs have sought.[19]  Without knowing the actual dollar

amount that the settlement will provide to class members, or the actual claims rate, the Court

cannot possibly assess the reasonableness of the fee and expense request.  As a result, the

Objecting Plaintiffs request that the Court deny the request for fees and expenses.

---

[18] 182-2 (Settlement Agreement) at 47, ¶15.

[19] *See Cassese v. Williams*, 503 F. App'x 55, 57 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 2023 (2013) (in which class counsel divulged additional information regarding their billing rates, hours worked, and tasks performed and objectors then had two weeks to crystallize their objections and request further information before attending the fairness hearing).  *See also In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993-994 (9th Cir. 2010) (explaining the requirement for district courts to set deadlines for objections to counsel's fee request on a date after the fee motion and supporting documents have been filed); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 803 (3d Cir. 1995) (in which the Third Circuit discussed the importance of informing the class: "by endorsing a practice where the class is, for practical purposes, deprived of information concerning the fees, courts foster a situation where there will be fewer objectors."); *id.* at 821, n. 23 ("The information on fee agreements may prompt potential objectors to oppose not only the awards but, also, to the extent they conclude that arm's length negotiations were compromised, the adequacy of the settlement and the propriety of the class.").

## CONCLUSION

The Objecting Plaintiffs ask that the Court deny final approval of the Settlement and deny

the fee and expense request.

Dated: August 19, 2014                                    Respectfully submitted,

                                                          By: /s/ Stephen J. Fearon, Jr.
                                                              Stephen J. Fearon, Jr.
                                                          SQUITIERI & FEARON, LLP
                                                          32 East 57th Street, 12th Floor
                                                          New York, New York 10022
                                                          Tel: (212) 421-6492
                                                          Fax: (212) 421-6553
                                                          stephen@sfclasslaw.com

                                                          **ATTORNEY FOR OBJECTOR**
                                                          **PLAINTIFFS**

                                                          ZOLL, KRANZ & BORGESS, LLC
                                                          David W. Zoll (0008548)
                                                          Pamela A. Borgess (0072789)
                                                          6620 W. Central Avenue
                                                          Toledo, OH 43617
                                                          Tel: (419) 841-9623
                                                          Fax: (419) 841-9719
                                                          david@toledolaw.com
                                                          pamela@toledolaw.com

                                                          **ATTORNEYS FOR THE OHIO**
                                                          **AND WASHINGTON OBJECTOR**
                                                          **PLAINTIFFS**

18

Dated: 8/19, 2014

Ashley Swain

19

Dated: August 19 , 2014

Julie Vanskyock

Dated: _8 | 9_ , 2014

Melissa Yoho

19

Dated: _S-19_____ , 2014

Peggy Pearson

19