# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 13-60721-CIV-MORENO/GARBER

|  |  |
|---|---|
| IRA MARC FLADELL, SARAH CROUCH, GREG OLSON, MARGARET ZAWISTOWSKI, TILENA ALI, DANNY LANE and BEVERLY LANE on behalf of themselves and all others similarly situated, | : : : : : : : |
| Plaintiffs, | : |
|  | : |
| v. | : |
|  | : |
| WELLS FARGO BANK, N.A.; WELLS FARGO INSURANCE, INC.; ASSURANT, INC.; AMERICAN SECURITY INSURANCE COMPANY; VOYAGER INDEMNITY INSURANCE COMPANY, STANDARD GUARANTY INSURANCE CO.; QBE SPECIALTY INSURANCE COMPANY; QBE INSURANCE CORPORATION; QBE FIRST INSURANCE AGENCY, INC.; QBE FINANCIAL INSTITUTION RISK SERVICES, INC.; and PRAETORIAN INSURANCE COMPANY, | : : : : : ; : : : : : |
|  | : |
| Defendants. | : |
|  | : |

## CORRECTED OBJECTION TO FINAL APPROVAL OF CLASS ACTION SETTLEMENT BY MARK BIDDISON, THOMAS BUTLER, KIMBERLY BUTLER, GIOVANNI CANONICO, DENISE LESKA

## I.      INFORMATION REQUIRED BY CLASS ACTION NOTICE

### A.      CASE NAME AND NUMBER:

The name of the lawsuit is in the caption to this document.

### B.      NAME, ADDRESS, AND TELEPHONE NUMBER OF OBJECTORS:

| Name | Address | Telephone Number |
|---|---|---|
| Mark Biddison | 128 Pacific Boulevard, Long Beach, NY 11561 | (516) 298 - [Redacted, to be provided if requested] |
| Thomas Butler | 321 North 8th Street, Herrin, IL  62948 | (618) 889 - [Redacted, to be provided if requested] |
| Kimberly Butler | 321 North 8th Street, Herrin, IL  62948 | (618) 889 - [Redacted, to be provided if requested] |
| Giovanni Canonico | 255 Cavendish Drive, Hemet, CA  92545 | (951) 658 - [Redacted, to be provided if requested] |
| Denise Leska | 12839 283rd Avenue, NW, Zimmerman, MN 55398 | (763) 482 - [Redacted, to be provided if requested] |

### C.      BASIS FOR OBJECTION:

Mark Biddison, Giovanni Canonico, Denise Leska, and Kimberly and Thomas Butler ("Objectors") are putative Class Members whose force-placed hazard and flood insurance claims will be released by this settlement.  Objectors are members of the Settlement Class; they were charged for force-placed hazard or flood insurance on their properties by Wells Fargo[1] during the Class Period[2].  Objectors bring this Objection to the proposed settlement for the reasons set forth in detail below.

### D.      STATE WHETHER OBJECTORS INTEND TO APPEAR AT FINAL APPROVAL:

Objectors intend to appear at the Final Approval Hearing through their Counsel.

---

[1] The term "Wells Fargo" refers to Wells Fargo Bank, N.A. and Wells Fargo Insurance, Inc., the defendant in this action.

[2] Capitalized undefined terms, have the definition set forth in the Settlement Agreement, attached as Exhibit A to Plaintiffs' Motion for Final Approval of Class Action Settlement, Application for Service Awards, Class Counsel's Application for Attorneys' Fees and Expenses and Incorporated Memorandum of Law, ECF No. 182 (the "Final Approval Mem.").

Represented by Counsel:  Yes

Counsel Contact Information:

**ARONOVITZ LAW**
Tod Aronovitz (FBN 186430)
One Biscayne Tower,
Suite 2630
2 South Biscayne Boulevard
Miami, FL  33131
Telephone: (305) 372-2772
Facsimile: (305) 397-1886
Email: ta@aronovitzlaw.com

**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**
Edward W. Ciolko *(Pro Hac Vice)*
Peter A. Muhic *(Pro Hac Vice)*
280 King of Prussia Road
Radnor, PA  19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
Email: eciolko@ktmc.com
Email: pmuhic@ktmc.com

## II.    SUMMARY OF OBJECTIONS

Plaintiffs and Defendants (collectively, "*Fladell* Parties") tout the value of their proposed settlement as "more than $281 million in monetary relief," plus substantial injunctive relief "valued at more than $234 million."  Final Approval Mem. at 1.  However, the settlement does not establish a common fund, and any payments to the Class are strictly on a "claims-made" basis with no guaranteed payout.  Further, the proposed injunctive relief is essentially comprised of terms and conditions that have already been imposed upon Defendants by numerous government and/or regulatory actions.

The mandatory claims-submission in this proposed Settlement is an impediment to recovery and is designed to reduce the actual payout by the Defendants to the Settlement Class. Final approval of a similarly structured claims-paid force-placed insurance settlement against JPMorgan Chase Bank, N.A., is currently on appeal before the Eleventh Circuit for many of the same deficiencies identified in the instant settlement.[3]  Further, the Notice and Claim Forms are

---

[3] *See Saccoccio v. JPMorgan Chase, et al.*, No. 13-cv-21107 (S.D. Fla.); *see also Williams v. Wells Fargo Bank, N.A.*, No. 11-cv-21233 (S.D. Fla.) (involving a "claims-made" settlement for a Florida-only class of Wells Fargo borrowers with force-placed hazard insurance).

materially deficient, as they:  (1) require Class members to know everyone who was listed as an insured or additional insured on the force-placed policies and to have all such persons complete the Claim Form; (2) represent that certain borrowers cannot recover any money although they are members of the Settlement Class and release all of their claims under the Settlement; and (3) require Class members to know information about the timing of their payments and adjustments to escrow accounts that they likely will not know without locating old documents – when it is Defendants who are certainly best situated to know such information.

Objectors respectfully ask the Court to deny final approval of the proposed Settlement. Objectors are willing to engage in mediation along with the parties to attempt to restructure and improve the terms and conditions of settlement to ensure that it is fair, reasonable, and adequate and delivers real benefits to the proposed Settlement Class.[4]  In support of their Objection to the proposed Settlement, Objectors submit the Expert Report of Adam J. Levitin (the "Levitin Report," attached hereto as Exhibit A), as well as a Declaration by Art Olsen (the "Olsen Report", attached hereto as Exhibit B), and a Declaration by Rebecca Walzak (the "Walzak Report", attached hereto as Exhibit C).

## III.    SPECIFIC OBJECTIONS

### A.    The Requirement for all Class Members to Submit Claim Forms is an Unnecessary and Unfair Impediment to Recovery

Class Counsel seeks approval of a purported $281 million settlement.  However, the settlement amount is illusory given the strict "claims-made" structure of the Settlement and the absence of any common fund or guaranteed payment to *any* members of the Settlement Class.

---

[4]  The term "Class Counsel" collectively refers to Adam Moskowitz of Kozyak, Tropin, & Throckmorton; Aaron S. Podhurst, of Podhurst Orseck, P.A.; and Lance A. Harke of Harke Clasby & Bushman LLP.

The requirement for all Class Member to submit claim forms if they want to receive a monetary benefit is an unnecessary and unfair impediment to recovery.

        **1.**      **There is no Justification for the Use of a Claim Form in this Settlement**

There is no need for a claims-made settlement for the Settlement Class, as the monetary payments to the Class are calculated from the amount of force-placed insurance premiums that Defendants ***charged*** to the Settlement Class.  A claims procedure is not necessary when the identity of all Settlement Class members is known, as well as their damages information.  *See* Final Approval Mem. at 9.[5]   Defendants already have all the information that they need to determine the amount charged for force-placed insurance and have made information readily available to Class Counsel in the form of "Net Premiums charged to the Settlement Class," commissions earned in connection with force-placed insurance, and data concerning the size of the class and the amount of policies issued.  *See* Class Counsel Dec. at 20; *see also* Levitin Report at ¶¶ 62.  Despite this, the Settlement mandates that each Class member go through the procedural hurdle of verifying information already known by Defendants and submitting a claim form or else be barred from recovery.

Quite plainly, the information requested in the Claim Form is not necessary to determine either the identities of the members of the Settlement Class, or the amount each Settlement Class member is entitled to under the Settlement.  While the Claim Form requires Class members to indicate whether they "paid" or "did not pay" a portion of their force-placed insurance premium, not only is that information contained in Defendants' records, but the answer to the question does

---

[5] Moreover, Wells Fargo maintains all of the information needed to stay in compliance with the Real Estate Settlement Procedures Act § 3500.17(i), which states a "servicer must submit to the borrower an annual statement for each escrow account item within thirty days of the completion of the computation year" and such annual escrow statement must include "the amount paid from the account for taxes, <u>insurance premiums</u>, and other charges."  *Id.* (emphasis added).

not affect the amount each Settlement Class member is eligible to receive because any payments under the Settlement are calculated based on the amount charged.  In fact, Class Counsel state: "all class members who submit a valid claim form will recover their respective percentage of the net premium charged regardless of whether the class members paid any portion of that premium to Wells Fargo." Final Approval Mem. at 17.  The only difference is that those Settlement Class members who mark the "paid" box will receive their refund in the form of a check, while the Settlement Class members who mark the box "did not pay" will receive their Settlement refund in the form of a check or credit to their escrow account.  *Id.* at 7.  This claims process is merely a mechanism which limits class participation and reduces Defendants' ultimate pay out.

2. **The Parties Have All the Information They Need to Structure a Claims-Paid Settlement**

The Parties' submissions confirm that the information to be obtained from the Claim Form is unnecessary to refund amounts charged for force-placed insurance to the Settlement Classes.  Indeed, Defendants know the amount charged to class members for force-placed insurance during the Class Period and can readily calculate the 11% or 7% that is to be paid to each class member irrespective of whether the class member returns a claim form.  As further confirmed by Objectors' experts, the Defendants also maintain all the data required to determine the force-placed insurance charges/payments of individual force-placed borrowers because Wells Fargo must maintain this information to comply with the Real Estate Settlement Procedures Act ("RESPA"), 12. U.S.C. § 2609(c)(2)(A) and Regulation X thereunder, 12 C.F.R. § 1024.17(i).  *See* Levitin Report at ¶¶ 86-106; Walzak Report at ¶¶ 5-9.

The Parties assert that "any manual review of 1,340,157 Wells Fargo borrower files (accounting for over 2.5 million insurance policies) would take a significant amount of time and manpower."  *See* Final Approval Mem. at 19.  In support of this position, Class Counsel cites to

Wells Fargo's Rule 30(b)(6) representative testimony in an entirely separate action, *Williams v. Wells Fargo, N.A.*, No. 11-cv-21233 (S.D. Fla.), attesting that the review could range from "maybe a few hours" to "four to five hours" per loan. *Id. See also Williams*, ECF No. 307 at Ex. B. This is rebutted by Objectors' experts. *See* Levitin Report at ¶¶ 64-68, 100-106; Walzak Report at ¶¶ 19-23; Olsen Report at ¶¶ 10-11.

Further, there has been no indication that any confirmatory discovery has been conducted since the discovery obtained in *Williams* – which notably did not include Assurant as a party to that action – and Class Counsel failed to explain exactly how they "confirmed the system limitation above applied to the class at issue in this litigation as well." *See* Class Counsel Dec., at ¶ 36. The assertion that the Parties are unable to figure out which class members *paid or owed* for force-placed insurance is a red-herring because the monetary relief in the present settlement is based on the "the allegedly inflated portion of the force-placed premiums that they either paid or were charged." *Id.* at ¶ 23. No calculation of payments made by Class Members is even necessary.

Further, Wells Fargo can readily determine whether borrowers paid all or a portion of the force-placed hazard insurance. Indeed, as noted above, RESPA requires servicers to keep such records and provide this information to borrowers in their annual escrow statements. Levitin Report at ¶¶ 100; Walzak Report at ¶¶ 5-9. Further, Wells Fargo is able to access this information through an automated process. Levitin Report at ¶ 101-106; Walzak Report at ¶ 20; Olsen Report at ¶ 11.

Moreover, Wells Fargo reserves the "right to audit" each claim form to determine if the information provided is accurate confirming that the information resides in their records. *See*

Settlement Agreement at ¶ 7.3.1.  Thus, Defendants' have access to the requisite information to assess the information on Settlement Class members' claims forms.

**B.      Claims-Made Settlements are Disfavored by Courts Because They Provide a Windfall to Defendants at the Expense of the Settlement Class**

The Parties assert that the "claims-made" structure of the settlement "does not render its terms unreasonable," and they point to the recent *Saccoccio* final approval order in support of their contention.  *See* Final Approval Mem. at 18.  However, despite the result of *Saccoccio* – which is currently on appeal before the Eleventh Circuit – claims-made settlements are generally disfavored by courts due to the low return of claims rates.  As the court in *In re TJX* noted in connection with the proposed claims-made settlement in that action:

> In any given case, class member nonparticipation may be attributed to a variety of factors: an ineffective notice program that fails to make class members aware of their rights, unappealing benefits that do not provide sufficient incentive for class members to invest the effort to submit a claim, or a claims process that is confusing, time-consuming, or requires class members to submit documentation or information they are unlikely to have in order to obtain relief.[6]  The fact remains, however, that in a reversionary common fund or a claims-made settlement, the defendant is likely to bear ***only a fraction*** of the liability to which it agrees.

*In re TJX Cos. Retail Sec. Breach Litig.*, 584 F. Supp. 2d 395, 404-405 (D. Mass. 2008) (emphasis added);  *See also Sylvester v. CIGNA Corp.*, 369 F. Supp. 2d 34, 53 (D. Me. 2008) (finding features such as "claims made settlements, payout caps based on 100 percent response rates, reverter clauses or clear sailing provisions… can work in concert to produce a settlement

---

[6] *See also* Max Helveston, *Promoting Justice Through Public Interest Advocacy in Class Actions*, 60 Buff. L.Rev. 749, 782–83 (2012) (noting that there are "a variety of different explanations" for low claims rates including "the difficulty of notifying class members, the overly complex and technical notifications that class members receive, the effort required to pursue a claim, the lack of interest of class members in the types of relief available, and the failure of fund designers to design claim procedures in ways that take into account cognitive biases").  The material deficiencies of the class notice, claims form, and other materials in this action are addressed herein.

that is unfair, inadequate and unreasonable and that in practice yields comparably little value for the Class"); *Ferrington v. McAfee, Inc.*, No. 10-cv-1455, 2012 WL 1156399, at *12-13 (N.D. Cal. Apr. 6, 2012) (denying final approval of claims-made settlement involving "a low rate of claims participation, a small claims pay out, a disproportionately large attorneys' fee award, and a reversion clause"); *De Leon v. Bank of Am., N.A.*, No. 09-cv-1251, 2012 WL 2568142, at *15 (M.D. Fla. Apr. 20, 2012) and 2012 WL 2543586 (July 2, 2012) (*adopting Mag. J. Rec. & Op.*) (denying approval of claims-made settlement with, among other things, a predictably low rate of claims-made).[7]

The Seventh Circuit's recent decision in *Eubank v. Pella Corp.*, 753 F.3d 718, 720 (7th Cir. 2014) ("*Pella*"), is instructive.  As the Seventh Circuit concluded in *Pella*, the district court erred when it did not consider the impediments presented by the claims-made process and how that reduced the real value of the settlement.  *Id.* ("From the selfish standpoint of class counsel and the defendant, therefore, the optimal settlement is one modest in overall amount but heavily tilted toward attorneys' fees").  The Seventh Circuit stated quite plainly, where class counsel bargained for a guaranteed fee for themselves but a claims-made process for the class with a reversion of funds to the defendant, "Class counsel sold out the class."  *Id*. at 726 (emphasis added).

In contrast, in another action, one of Class Counsel here supplied the declaration of legal expert Professor Samuel Issacharoff who opined that, in contrast to inferior claims-made settlements, that claims-paid "settlement [was] designed to compensate the class."  *In re Checking Account Overdraft Litigation*, No. 09-md-02036 (S.D. Fla.), ECF. No. 1885-7 at p.5

---

[7] *C.f. In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1351 (S.D. Fla. 2011) (holding "the absence of a claims-made process…supports the conclusion that the Settlement is reasonable.")

(attached hereto as Ex. D).  The same attorney also formally objected to a competing claims-made settlement of similar claims in another district court – characterizing the need to submit a claim form as "unnecessary, and unduly burdensome to class members."  *See* Ex. D at p. 11.  To assist the court in evaluating the fairness of that settlement, Professor Issacharoff opined:  "In the consumer context, any claims-made process is almost certain to result in many claims not being filed, sometimes to an extent that frustrates the compensatory aims of a class settlement."  *See* Ex. D at pp. 13-14.  Lastly, in contrast to a claims-made settlement requiring submission of a claim form to get relief, Professor Issacharoff opined that "a system that uses the same administrative mechanism to deliver relief as was used to exact charges from these customers in the first instance is one that is designed to optimize the class recovery."  *Id.* at p. 14.  In the present matter, that equates to Defendants using credits to escrow accounts to automatically credit borrowers who were charged and are still being serviced by Wells Fargo.  Such relief would "optimize the class recovery" and, as discussed herein, is well within Defendants' ability to timely execute.  It is very telling that Class Counsel do not submit a declaration from Professor Issacharoff in this case to try to support their settlement.

The cases cited by Class Counsel, Final Approval Mem. at 18-19, to support their contention that a claims-made process is appropriate here do not provide support for such a process in this instance nor do they legitimize the reverse auction that led to this Settlement.  The court in *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 590 (N.D. Ill. 2011), expressed concern about the claims process in the settlement before it, finding the proposed methods for submitting claims "indeed concerning."  However, the *Schulte* Court concluded that the settlement could be approved nonetheless because, *inter alia*, the record presented evidence of an "excellent response" rate (over 100,000 claims had already been filed at the time of final

approval[8]) indicating that the negotiated-for claim form and process was not burdensome and confusing to class members. Just as significantly, the court noted that the settlement created a monetary fund to be paid out in full without reversion. *Id.* at 591. In contrast, the Settlement presented here does not establish a certain fund that will be paid out to claiming class members regardless of the claim rate.[9]

Moreover, the record here contains absolutely no evidence that would enable the Court to determine how the claims and claims process is actually functioning. As such, and in contrast to both *Schulte* and *Lemus*, where the record included evidence of class member participation rates, there is no basis for this Court to conclude that the claims process is not confusing and burdensome and no way for this Court to determine what the value of the Settlement presented will actually be. Accordingly, there is no basis for concluding that this claims-made Settlement is fair or reasonable or that Plaintiffs have satisfied Rule 23's requirements.[10]

---

[8] The court concluded that the strong early response reflected on the record allowed it to rule on final approval without waiting until completion of the claims process. *Id.* at n.22. As noted above, no similar evidence is presented to the Court here.

[9] The claims made settlement approved in *Lemus v. H&R Block Enters., LLC*, No. 09-cv-3179, 2012 WL 3638550 (N.D. Cal. Aug. 22, 2012) also cited by Class Counsel likewise established a minimum guaranteed payout to the class. As such, it too is clearly distinguishable from the claims-made Settlement presented here. Moreover, the court in *Lemus* expressly noted that "in general, claims-made settlements with reversions to the defendants are disfavored…." *Id.* at *5.

[10] The other cases cited by Class Counsel to support the propriety of claims-made settlements, *Shames v. Hertz Corp.*, No. 07-cv-2174, 2012 WL 5392159 (S.D. Cal. Nov. 5, 2012); *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026 (9th Cir. 1997) and *Atkinson v. Walmart Stores, Inc.*, No. 08-cv-691, 2011 WL 6846747 (Dec. 29, 2011 M.D. Fla. 2011), are also unavailing. *Williams* addressed only whether awarding a specified amount of fees in a case with an indefinite payout to the class would equate to impermissible fee shifting, holding it would not. *Atkinson* concerned unique claims of estates of deceased persons under corporate owned life insurance policies making a claims process reasonable. And in *Shames*, the claims process gave class members the ability to choose between different recovery options and so was found to maximize the value of the settlement to the class. *See* 2012 WL 5392159, at *12.

C.     **The Settlement Favors Class Counsel and Defendants at the Expense of the Settlement Class**

Settlements that favor the attorneys that negotiated them require harsher scrutiny by courts.  Two recent Ninth Circuit cases are instructive.  In *In re Magsafe Apple Power Adapter Litig.*, No. 12-cv-15757, 2014 WL 1624493 (9th Cir. Apr. 24, 2014), the Ninth Circuit analyzed an objector's appeal of the order approving the class action settlement agreement and attorneys' fee award.  Reversing the district court's judgment and vacating the settlement fee award, the Ninth Circuit criticized the district court for "not cross-check[ing] the attorneys' fee award against the percentage-of-the-recovery method," finding that the lack of mention of the value of the settlement, "let alone the percentage-of-the-recovery method, contributes to our determination that we lack a sufficient basis for determining the reasonableness of the award." *Id.* at *3 (internal quotation and citation omitted).  Additionally, the Ninth Circuit found that having "conducted the fairness hearing before the claims-submission period closed" provided "no reliable way of estimating how many valid claims were submitted or the total amount that [defendant] intends to pay claimants…." *Id.*  Further, the Ninth Circuit found that "the district court erred by not addressing the indicia of self-dealing or implicit collusion" between the settling parties because the court "did not assess with specificity whether class counsel received a disproportionate share of the settlement, nor did it mention the clear-sailing provision or the implied reversion clause." *Id.*

The Ninth Circuit also recently warned that a district court must consider the possibility of collusion in settlements under the following circumstances:

> (1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded; (2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds…; and (3)

when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*Laguna v. Coverall N. Am., Inc.*, 753 F.3d 918, 924-25 (9th Cir. 2014) (citation omitted).[11]  The proposed Settlement here includes each of the three features the Ninth Circuit cautioned against in *Laguna*:  (1) Class Counsel will receive a disproportionate fee award when compared to the actual, anticipated claims rate; (2) the parties negotiated a clear sailing provision and provide a separate provision for attorneys' fees and costs (*see* Settlement Agreement at § 15.2); and (3) the Settlement Class will receive far less than the amount of the funds to which they might be entitled, leaving those funds in Defendants' hands.

### D.  The Settlement Does Not Take Into Consideration All of the Ways in which Defendants Generated Illicit Profits

Class Counsel has negotiated the proposed settlement based on the amount of unfair commissions generated by Defendants during the Class Period.  However, profits generated from commissions are only *one* of the ways in which Defendants profited through the force-placed insurance program.  The settlement does not account for other means by which improper charges were passed on to the Settlement Class Members, such as below cost services and duplicative and unnecessary insurance.   These improper charges resulted in inflated charges to the Settlement Classes.  Indeed, in *Simpkins v. Wells Fargo Bank, N.A.*, No. 12-cv-00768 (S.D. Ill.), plaintiffs' counsel moved to compel production of documents concerning Assurant's internal calculations of outsourcing and tracking costs, which factor into the overall profits generated through Wells Fargo and Assurant's force-placed insurance business.  *Simpkins*, ECF No. 226. In rejecting defendants' assertions of privilege, the court found that the documents at issue

---

[11] *See also In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013) (reversing approval of class action settlement as illusory because settlement gave preferential treatment to class counsel while only perfunctory relief to class members who received no true value from relief).

involved an analysis of outsourced activities (tracking or monitoring) that were created "because of a tangential corporate management interest in knowing the risks and benefits of options that might lower a commission or *shift business expenses to a different source*."  ECF No. 260 (emphasis added).  There is no indication that these "outsourced activities" were factored into the instant settlement, nor has there been any representation that these alternative profit-making avenues were analyzed in negotiating the settlement amount.

Because the proposed Settlement does not account for all of the ways in which Defendants generated illicit profits through their force-placed insurance business, the Settlement comes at the expense of Settlement Class members who, by the terms of the agreed-upon release, will forever and finally be precluded from pursuing relief for these practices, as discussed below.

### E.  Class Counsel Fail to Provide This Court with Sufficient Information to Properly Evaluate Their Attorneys' Fee Request

In justification for the proposed Settlement, Class Counsel note that as of the date of their filing, "of the 1,340,157 class members, only one has objected (.000075% of the class) and 76 have validly opted out (.0056%)," concluding this "overwhelming class support for the settlement is evidence of its fairness."  Final Approval Mem. at 21.  However, Class Counsel fail to provide any data regarding the return rate of Settlement Class members' claim forms.  As the *Sylvester* court aptly noted, this claims information is an important consideration:

> However, in considering the "reaction of the class," the Court also considers the relatively small percentage of class members (19.7 percent) who have expressed implicit support for the proposed settlement by returning claim forms as well as the vast majority that have remained silent and essentially expressed a reaction of utter indifference to the settlement.  Given that the large majority of Class Members fall into this latter category, the Court finds the reaction of the Class is a factor that weighs neither in favor of approving or rejecting the proposed settlement.

13

*Sylvester*, 369 F. Supp. 2d at 49.  As such, Class Counsel's failure to provide any information regarding the claims rate by Settlement Class members in this action necessarily prevents this Court from undertaking an analysis like that done by the *Sylvester* Court.

    **F.    The Injunctive Relief Provisions of the Settlement Add *De Minimis* Value to the Settlement and Do Not Justify the Requested Fees**

The Settlement purports to deliver additional benefits to the Class through several injunctive relief provisions that enjoin and/or mandate specified practices that were at issue in the litigation.  However, as Professor Levitin opines in his report, several of the injunctive relief terms in the proposed Settlement "have no value to the Class because they merely recreate pre-existing legal duties and functional market requirements."  Levitin Report at ¶ 24.[12]  As such, these provisions add nothing to the fairness of the Settlement.  *See, e.g.*, *Pella*, 753 F.3d at 725 (finding provisions agreed to prior to the settlement "were not part of the value created by the settlement, although the settlement" prohibited defendant from revoking the provisions).

    **1.    The Injunctive Relief Adds No Value to the Settlement**

Professor Levitin's conclusion that the majority of the injunctive relief terms add no value to the Class is based upon his examination of each of the multiple injunctive provisions included in the Settlement and the fact that Wells Fargo and Assurant are already obligated by the terms of settlements they have previously entered with state attorneys general and insurance departments, new federal regulations and Fannie Mae Servicing Guides to refrain from the practices purportedly prohibited by this Settlement.  *See* Levitin Report at ¶¶ 21-59.[13]  As such,

---

[12] Professor Levitin's statement specifically excludes the "Dual Interest Provision" and the "Prompt Recredit Provision" from this conclusion.  *Id.*

[13] The five specific injunctive terms considered by Professor Levitin with respect to Wells Fargo are:  (1) *The* "*Wells Fargo No- Kickback Provision*;" (2) *The* "*Dual Interest Provision*;" (3) *The*

the injunctive relief provisions lauded in the approval papers are **not** a product of **this** Settlement and cannot qualify as consideration for the agreement or value supporting Class Counsel's fee request.  *See Klee, et al. v. Nissan N. Am., Inc.*, No. 12-cv-08238 (C.D. Cal.), Dkt. No. 50 at 7.[14] Additionally, Professor Levitin notes that while the QBE Defendants are under similar consent order obligations as the Assurant Defendants,[15] there are no injunctive relief provisions relating to the QBE Defendants in this Settlement.  *See id.* at ¶ 26.

With regard to each of these terms, Professor Levitin demonstrates that the majority of injunctive relief terms merely duplicate existing legal duties and obligations.  *Id.* at ¶¶ 27-53. Because the injunctive terms provide no new constraints or obligations on the Defendants, Professor Levitin concludes that these provisions add "no value to the Class."  *Id.* at ¶¶ 24, 37, 45, 49, 52, 53, 59.  Moreover, he concludes that while the Dual Interest and Prompt Recredit Provisions do not, strictly speaking, recreate pre-existing legal or marketplace requirements, they "provide only de minimis value or even negative value for Class members and are not the core of the Proposed Settlement's injunctive relief provisions."  *Id.* at ¶ 54.[16]

---

"*Coverage Limitation Provision*;" (4) *The* "*Assumption of Existing Coverage Provision*;" and (5) *The* "*Prompt Recredit Provision*."  *See id.* at ¶¶ 22(a)-(e).

[14] The objection – a personal objection by Chief Judge of the Ninth Circuit Court of Appeals – concerns relief that had already "been fully implemented" outside of the settlement and therefore could not be consideration for the settlement.  The *Klee* Court has not yet ruled on this objection, as the case is stayed for mediation between the parties and the objectors.

[15] American Security Insurance Company, Standard Guaranty Insurance Company, and Voyager Indemnity Insurance Company.

[16] *See also id.* at ¶¶ 55-59 (explaining *de minimis* value of these provisions).

### 2. Injunctive Relief Provisions Merely Duplicate Specific Pre-Existing Requirements

As explained by Professor Levitin, several of the injunctive provisions considered covers ground already subject to preexisting requirements, obligations, or regulations.  The WF No-Kickback Provision replicated requirements imposed by Regulation X (*see* Levitin Report at ¶¶ 27-28), and also replicate Fannie Mae and Freddie Mac's implementation of the FHFA forced-placed insurance policies and directives.  *Id.* at ¶¶ 30-36.  Accordingly, Professor Levitin concludes that the "WF No-Kickback Provisions has no value to the Class."  *Id.* at ¶ 37.

Similarly, the *Assurant No-Kickback Provision* "replicates what is already legally required of defendant Assurant and American Security Insurance Companies' Consent Orders with the New York State Department of Financial Services and the Florida Office of Insurance Regulation,"  (*see* Levitin Report at ¶ 38,), leading to the conclusion that "the Assurant No-Kickbacks Provisions have no value to the Class." *Id.* at ¶¶ 39-40, 42, 44.  Moreover, Professor Levitin also explains that the *Coverage Limitation Provision* and the *Assumption of Existing Coverage Provision* "both replicate what is already legally required by Regulation X under [RESPA] and WF's Consent Judgment in the National Mortgage Servicing Settlement," (*see id.* at ¶ 46), leading Professor Levitin to conclude that both the *Coverage Limitation Provision* and *Assumption of Existing Coverage Provision* provide "no value to the Class."  *Id.* at ¶¶ 49, 52.

In sum, as Professor Levitin concludes:  "it is my opinion that the Wells Fargo No-Kickbacks Provisions, the Coverage Limitation Provision, the Assumption of Existing Coverage Provision, and the Assurant No-Kickback Provisions have no value to the Class."  *Id.* at ¶ 53.

### 3.    There are no Injunctive Relief Provisions Relating to QBE Defendants

While Objectors question the value of the injunctive relief as a whole, it is curious that the Proposed Settlement fails to provide any injunctive relief provisions relating to the QBE Defendants. As observed by Professor Levitin:

> Notably, the Proposed Settlement lacks *any* injunctive relief provisions relating to [the QBE Defendants]. To the extent that the Plaintiffs contend that the Proposed Settlement's injunctive relief provisions relating to the Assurant Defendants are valuable, it is puzzling why parallel injunctive relief terms do not also exist for the QBE Defendants….

Levitin Report at ¶ 26 (emphasis in original). *See also id.* at ¶¶ 41, 43. The lack of an injunctive relief provision regarding the QBE Defendants underscores the hollow relief of the Settlement.

### G.    The Proposed Settlement is Not Fair Because the Notices of Class Action Settlement, Class Action Claim Forms and Instructions are Materially Deficient

The Notices are materially deficient and misleading. As discussed above, the Notice represents a Settlement value to the class that is many times more valuable than the anticipated payout by Defendants. The Claim Forms are also confusing and intimidating. Members of the Settlement Classes who elect to make a claim are instructed, under penalty of perjury, to verify specific information about their force-placed insurance policies, such as whether they are listed as an "additional named insured" or an "insured" on a lender-placed insurance policy and "was charged an LPI Policy premium by Wells Fargo." *See* Claim Form, ECF No. 182-2. However, because borrowers do not choose their force-placed insurance providers, and the class period dates back several years, a significant number of potential claimants certainly will not have copies of their policies available to verify such information and will not risk penalties of perjury to submit a claim when they are unsure of what is being asked. This feature of the proposed settlement will bring down the claims rate – to the benefit of Defendants. Moreover, although the Settlement Class includes borrowers who have filed for bankruptcy or whose properties have

been foreclosed upon, it appears that a certain number of these borrowers are not eligible to recover under the claims process.  These Class Members will have their claims released but they are not entitled to any compensation.

## IV.   CONCLUSION

As Judge Posner stated in *Pella*, this "case underscores the importance both of objectors (for they are the appellants in this case—without them there would have been no appellate challenge to the settlement) and of intense judicial scrutiny of proposed class action settlements." *Pella*, 753 F.3d at 721. Objectors request that this Court apply the same "intense judicial scrutiny" to the proposed settlement and deny final approval. In conjunction with their objections enumerated above, Objectors seek leave from the Court to serve a limited set of discovery requests, attached hereto as Exhibits E-H, to assist in determining whether this settlement is fair, reasonable and appropriate, the result of informed discussions, and non-collusive.

DATED:  August 19, 2014
  (corrected Aug. 27, 2014)

Respectfully submitted,

**ARONOVITZ LAW**

*/s/ Tod Aronovitz*
Tod Aronovitz (FBN 186430)
One Biscayne Tower, Suite 2630
2 South Biscayne Boulevard
Miami, FL  33131
Telephone: (305) 372-2772
Facsimile: (305) 397-1886
Email: ta@aronovitzlaw.com

**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**
Edward W. Ciolko (*Pro Hac Vice*)
Peter A. Muhic (*Pro Hac Vice*)
280 King of Prussia Road
Radnor, PA  19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
Email: eciolko@ktmc.com
Email: pmuhic@ktmc.com

**GOLDMAN SCALATO KARON &
PENNY, PC**
Brian D. Penny
101 E. Lancaster Ave, Suite 204
Wayne, PA 19087
Telephone: (484) 342-0700
Facsimile: (484) 580-8747
Email: penny@gskplaw.com
**ZAREMBA BROWNELL & BROWN,
PLLC**
John D. Zaremba
The Trump Building
40 Wall Street - 27th Floor
New York, New York 10005
Telephone: (212) 380-6700
Email: jzaremba@zbblaw.com

*Counsel for Plaintiff Objectors,
Mark Biddison, Thomas Butler, Kimberly
Butler, Giovanni Canonico, Denise Leska*

<u>**CERTIFICATE OF SERVICE**</u>

*I HEREBY CERTIFY* that on August 27, 2014, I electronically filed the foregoing

CORRECTED document with the Clerk of the Court using CM/ECF.  I also certify that the

foregoing document is being served this day, via transmission of Notices of Electronic Filing

generated by CM/ECF or via other transmission, on all counsel of record.

By:  /s/ Tod Aronovitz

Dated:  August 19, 2014

_____
Mark Biddison

Dated:  August 19, 2014

_____
Thomas Butler

Dated:  August 19, 2014

_____
Kimberly Butler

Dated:  August 19, 2014

_____
Giovanni Canonico

Dated: August 19, 2014

Denise Leska