# EXHIBIT A

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 0:13-cv-60721- MORENO/ORAZO-REYES

IRA MARC FLADELL, SARAH CROUCH,
GREG OLSON, MARGARET ZAWISTOWSKI,
TILENA ALI, DANNY LANE and BEVERLY
LANE on behalf of themselves and all others
similarly situated,

      Plaintiffs,

v.

WELLS FARGO BANK, N.A.; WELLS FARGO
INSURANCE, INC.; ASSURANT, INC.;
AMERICAN SECURITY INSURANCE
COMPANY; VOYAGER INDEMNITY
INSURANCE COMPANY, STANDARD
GUARANTY INSURANCE CO.; QBE
SPECIALTY INSURANCE COMPANY; QBE
INSURANCE CORPORATION; QBE FIRST
NSURANCE AGENCY, INC.; QBE FINANCIAL
INSTITUTION RISK SERVICES, INC.; and
PRAETORIAN INSURANCE COMPANY,

      Defendants.

---

## OBJECTION OF AMARILI JABRANI AND JANET JABRANI

---

## INTRODUCTION

Settlement fairness does not just require that the size of the settlement be adequate, but also requires that the *allocation* of the settlement between what class counsel receives and what the class *actually* receives be fair. *In re Dry Max Pampers Litigation*, 724 F.3d 713 (6th Cir. 2013) ("*Pampers*"); *Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014). This claims-made settlement fails the latter test, as it will likely pay class counsel more than the class.

Class counsel will protest that the settlement "makes available" $281 million in monetary relief. But the reality is that next to none of this money will actually be distributed. Class counsel's own motion states that it will take "four to five hours" each for highly-trained Wells Fargo employees to determine whether class members are class members. Dkt. 182 at 19-20. How is a lay class member—most of whom have no idea what "force-placed insurance" is— supposed to make a claim? Even if we assume a 7% claims rate—far greater than the sub-1% claims rate that is typical in claims-made settlements where consumers are unsure if they are entitled to make a claim—the attorneys will receive about half of the total settlement benefit; in all likelihood, they will receive the majority. Similarly, the injunctive relief is illusory: it will benefit people who aren't class members, rather than the class members who were supposedly victimized.

Class counsel, by agreeing to a claims-made process that won't pay claims, "has not met its responsibility to seek an award that adequately prioritizes direct benefit to the class." *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 178, 179 (3d Cir. 2013) ("*Baby Products*"). Defendants and class counsel are entitled to agree to a settlement that limits WELLS FARGO's overall liability to a reasonable amount. But Rule 23(e) does not permit them to negotiate a settlement where class counsel gets the overwhelming lion's share of that amount.

**A.      Objectors' standing and procedural requirements.**

Amirali Jabrani and Janet Jabrani ("Objectors" or the "Jabranis") are class members who have standing to object to this proposed settlement.  As shown on their attached claim forms, Amirali Jabrani and Janet Jabrani are members of the proposed settlement class who have timely filed claims.  See Exhibit A, incorporated herein by reference as though set forth in full.[1]  The Jabranis reserve the right to provide more evidence of their class member standing if necessary as providing such evidence is not required by the procedures or requirements to object.  Their current address is 2038 Moondance Court, O'Fallon, Missouri 63368; their telephone number is (636) 379-0087; and their email address is janetandy@charter.net.  Objectors are represented by counsel whose contact information is below.  Objection is made to any requirement or procedure to object that is not contained in the notice and/or that is not satisfied herein.  Objectors do not intend on attending the fairness hearing in person or through counsel and object to the extent that requiring personal attendance at the fairness hearing would violate their due process rights and right to be heard on this objection.  Objectors join the objections and arguments of any other objectors or *amici* to the extent those objections are not inconsistent with this one. Objection is made to any settlement provision that purports to limit the right of class members to object or appeal.

**B.      The court has a fiduciary duty to the absent members of the class.**

"Class-action settlements are different from other settlements. The parties to an ordinary settlement bargain away only their own rights—which is why ordinary settlements do not require court approval. In contrast, class-action settlements affect not only the interests of the parties and counsel who negotiate them, but also the interests of unnamed class members who by definition

---

[1] The Jabranis submitted two sets of claim forms because the original answer to one of the questions was in error.

Case 0:13-cv-60721-FAM   Document 190   Entered on FLSD Docket 08/18/2014   Page 4 of 28

are not present during the negotiations. And thus, there is always the danger that the parties and counsel will bargain away the interests of unnamed class members in order to maximize their own." *Pampers*, 724 F.3d at 715. "Because class actions are rife with potential conflicts of interest between class counsel and class members, district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004); *Baby Prods.*, 708 F.3d 163, 175 (3d Cir. 2013) (same).

In short, "[c]areful scrutiny by the court is 'necessary to guard against settlements that may benefit the class representatives or their attorneys at the expense of the absent class members.'" *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1147 (11th Cir. 1983) (quoting *U.S. v. City of Miami*, 614 F.2d 1322, 1331 (5th Cir. 1980), *modified on other grounds*, 664 F.2d 435 (5th Cir. 1981) (*en banc*)). "[T]he district judge has a heavy duty to ensure that any settlement is 'fair, reasonable, and adequate' and that the fee awarded plaintiffs' counsel is entirely appropriate." *Piambino v. Bailey*, 757 F.2d 1112, 1139 (11th Cir. 1985) ("*Piambino II*"). This duty is "akin to the high duty of care that the law requires of fiduciaries." *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1320 (S.D. Fla. 2007) (quoting *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006))

The Court's oversight role does not end at making sure that the settling parties engaged in properly adversarial arm's length settlement negotiations. "In class-action settlements, the adversarial process—or what the parties here refer to as their 'hard-fought' negotiations—extends only to the amount the defendant will pay, not the manner in which that amount is allocated between the class representatives, class counsel, and unnamed class members. For the

economic reality [is] that a settling defendant is concerned only with its total liability, and thus a settlement's allocation between the class payment and the attorneys' fees is of little or no interest to the defense…. And that means the courts must carefully scrutinize whether [class counsel's and the named representatives'] fiduciary obligations have been met." *Pampers*, 724 F.3d at 717-18 (internal quotations omitted).

While it is *necessary* that a settlement is at "arm's length" without express collusion between the settling parties, it is not *sufficient*. "While the Rule 23(a) adequacy of representation inquiry is designed to foreclose class certification in the face of 'actual fraud, overreaching or collusion,' the Rule 23(e) reasonableness inquiry is designed precisely to capture instances of unfairness not apparent on the face of the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) ("*Bluetooth*") (internal quotation omitted). Due to the defendants' indifference as to the allocation of funds between the class, the named representatives, and class counsel, it is enough that the settlement evinces "subtle signs that class counsel have allowed pursuit of their own self-interest and that of certain class members to infect the negotiations." *Pampers*, 724 F.3d at 718 (quoting *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012)); *Piambino II*, 757 F.2d at 1143 (noting that defendants are "uninterested in what portion of the total payment will go to the class and what percentage will go to the class attorney.") (quoting *Foster v. Boise-Cascade, Inc.*, 420 F. Supp. 674, 686 (S.D. Tex. 1976), *aff'd* 577 F.2d 335 (5th Cir. 1978)).

"In reviewing a proposed settlement, a court should not apply any presumption that the settlement is fair and reasonable." Am. Law Institute, *Principles of the Law of Aggregate Litig.* § 3.05(c) (2010) ("*ALI Principles*"). "The burden of proving the fairness of the settlement is on the proponents." *Pampers*, 724 F.3d at 718 (compiling cases and authorities); *accord Holmes*,

Case 0:13-cv-60721-FAM   Document 190   Entered on FLSD Docket 08/18/2014   Page 6 of 28

706 F.2d at 1147. An actual showing is required, beyond a court's "complete confidence in the ability and integrity of counsel." *Day v. Persels & Assocs., LLC*, 729 F.3d 1309, 1315 (11th Cir. 2013).

The settling parties focus on the six factors for settlement fairness discussed in *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). But like the multi-factor tests of other circuits[2]—the *Bennett* six-factor test is not exhaustive. *Bennett*'s test simply does not provide an exclusive list of reasons to reject a settlement. *See Leverso v. Southtrust Bank*, 18 F.3d 1527, 1530-31 (11th Cir. 1994) (concluding that the district court abused its discretion despite "thoroughly address[ing]" all six factors and concluding that each weighed in favor of approval). This Circuit[3] has long commanded district courts to also "always consider the possibility that that an agreement reached by the class attorney is not in the best interest of the class," and beware of settlements which enrich class counsel to a greater degree than they do the absent class. *Pettway*, 576 F.2d at 1215-16; *Piambino II*, 757 F.2d at 1140 ("The district court should have rejected the settlement as unfair because it was accomplished at the expense of the minority members of the plaintiff-class, primarily to provide Lead Counsel an attorney's fee.").

Jabrani's objection is that the settlement is unfair because class counsel is appropriating

---

[2] *Pampers*, 724 F.3d at 718 (looking beyond Sixth Circuit's seven-factor test to find settlement unfair when it constitutes "preferential treatment" for class counsel); *Baby Prods.*, 708 F.3d at 174 (adding to Third Circuit's nine-factor fairness test, a new consideration: "the degree of direct benefit provided to the class"); *Bluetooth*, 654 F.3d at 946 (consideration of eight-factor test "alone is not enough to survive appellate review"); *Vassalle v. Midland Funding LLC*, 708 F.3d 746 (6th Cir. 2013) (finding abuse of discretion even though all factors favored final approval); *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 195 (5th Cir. 2010) (*Reed* factors are not the sole reasons a settlement should be rejected as unfair, unreasonable or inadequate under Rule 23(e)).

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

an excessive amount of the settlement value for itself, and the settling parties seek to gain approval of that arrangement without even apprising the Court and class of the final allocation.[4] As such, the inevitable discussion of *Bennett*'s factors should be seen for what it is: a red herring.

### C.      The settlement is unfair: the class is not the foremost beneficiary of the settlement

The three components of the settlement are a "claims-made" settlement that pays each claiming class member a check; "injunctive relief" that changes Wells Fargo's future business practices; and a separate $19 million cash fund for attorneys' fees that reverts to Wells Fargo if this court deems it excessive. The combination is designed to benefit the attorneys, but not the class, at minimum expense to Wells Fargo.

Unlike with an all-inclusive pure common fund, each of the benefits here is formally segregated and compartmentalized. This segregation forms what is known as a "constructive common fund." *See, e.g., Dennis v. Kellogg Co.*, 697 F.3d 858, 862-63 (9th Cir. 2012) (evaluating a similar "constructive common fund" settlement); *In re GMC Pick-Up Trucks Fuel-Tank Prods. Liab. Litig.*, 55 F.3d 768, 820 (3d Cir. 1995) ("*GM Trucks*") (A severable fee structure "is, for practical purposes, a constructive common fund."); *GM Trucks*, 55 F.3d at 821 ("[P]rivate agreements to structure artificially separate fee and settlement arrangements cannot transform what is in economic reality a common fund situation into a statutory fee shifting case."); *Johnson v. Comerica*, 83 F.3d 241 (8th Cir. 1996) ("[I]n essence the entire settlement amount comes from the same source. The award to the class and the agreement on attorney fees

---

[4] The manner in which the parties attempt to hide the ball is by scheduling the claims period well after the fairness hearing. As *Eubank* notes, this is wrong. Jabrani hopes that the Court will not succumb to the reversible error of approving the settlement without a final accounting of how much the class is actually receiving. *See discussion infra* at 10 n.4 and accompanying text (delineating the issue); *see also Baby Prods.*, 708 F.3d 163, 174, 175, 179 (3d Cir. 2013) (reversing for precisely this reason); *cf. also Dennis v. Kellogg Co.*, 697 F.3d 858, 869 (9th Cir. 2012) (rejecting a similar "Just trust us. Uphold the settlement now, and we'll tell you what it is later" argument).

Case 0:13-cv-60721-FAM   Document 190   Entered on FLSD Docket 08/18/2014   Page 8 of 28

represent a package deal.").

A constructive common fund structure is an inferior settlement structure for one principal reason: the segregation of parts means that the Court cannot remedy any allocation issues by reducing fee awards and or named representative payments. *See Bluetooth*, 654 F.3d at 949. Because "the adversarial process" between the settling parties cannot safeguard "the manner in which that [settlement] amount is *allocated* between the class representatives, class counsel, and unnamed class members," it is no surprise that the most common settlement defects are ones of allocation. *Pampers*, 724 F.3d at 717 (emphasis in original); *see also Holmes*, 706 F.2d at 1147 (noting the importance of review of the fairness of allocation and not just the adequacy of settlement sum). Thus, a constructive common fund structure prevents the Court from exercising its discretion, in furtherance of its fiduciary duty, to cure the most endemic settlement ailment.

It is commonplace for objectors to complain that a settlement is insufficiently large in the aggregate. But the focus of Jabranis' objection is quite different. His concern is that the settling parties have designed the five-part settlement described above to benefit class counsel, the named representative, future customers of Wells Fargo, and the defendants, all at the expense of benefitting the class. It is this very concern that animated the Third Circuit to vacate the settlement in *Baby Products*, the Sixth Circuit to vacate the settlement in *Pampers*, the Seventh Circuit to vacate the settlement in *Eubank*, and the Ninth Circuit to vacate the settlement in *Bluetooth*. In any class action settlement, it's a foundational principle that class members should be "the foremost beneficiaries" of the accord. *Baby Prods.*, 708 F.3d at 179. The parties ask the Court to invert this bedrock axiom, and approve a settlement that consigns absent class members to an afterthought.

Last year, the Sixth Circuit explained that one focus of the Fed. R. Civ. P. 23(e)(2)

Case 0:13-cv-60721-FAM Document 190 Entered on FLSD Docket 08/18/2014 Page 9 of 28

fairness inquiry is whether the settlement gives "preferential treatment" to class counsel or the named representatives. *Pampers*, 724 F.3d at 718 (quoting *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 755 (6th Cir. 2013)). "Such inequities in treatment make a settlement unfair" for neither class counsel nor the named representatives are entitled to disregard their "fiduciary responsibilities" and enrich themselves while leaving the class behind. *Id.*

One might reasonably ask how to give determinative content to an abstract concept of "preferential treatment." And at least a partial answer has been outlined by the Ninth Circuit in *Bluetooth*. There, the court identified three warning signs of a class action settlement that is inequitable between class counsel and the class. *Bluetooth*, 654 F.3d at 947 (listing the indications of **(1)** A disproportionate distribution of fees to counsel; **(2)** A clear sailing agreement; and **(3)** A "kicker" (*i.e.* a reversion of excess fees to the defendant).

**A recipe for disproportionate fees**

The first signal is "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded." *Id.*; *see also* American Law Institute, *Principles of the Law of Aggregate Litigation* § 3.05, *comment b* at 208 (2010) ("*ALI Principles*") ("a proposed settlement in which the class receives an insubstantial payment while the fees requested by counsel are substantial could raise fairness concerns"). Here, the class will only recover a minimal amount from the enfeebled claims process, while the settlement permits class counsel to seek, unopposed, an award of fees and costs of $19 million.

Case 0:13-cv-60721-FAM Document 190 Entered on FLSD Docket 08/18/2014 Page 10 of 28

The amount the class actually receives under the settlement is the critical baseline in performing the *Bluetooth* disproportionality analysis.[5] For example, in *Eubank*, 753 F.3d 718, the

---

[5] Again, *see supra* at 7 n.3, evaluative difficulties are exacerbated by an administrative schedule designed to insulate the fee request from a comparison with the actual amounts claimed by class members. If, for some reason, the Court does not reject the settlement out of hand for its shortcomings, Jabrani formally requests that the Court abstain from ruling on fees or settlement approval until it can make findings on how much the class has actually received. Approval on the current record would constitute reversible error. *Baby Prods.*, 708 F.3d at 174, 175, 179; *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006) (reversing approval where "the court did not attempt to quantify the value of plaintiffs' case or even the overall value of the settlement offer to class members"). *Cf. also Dennis*, 697 F.3d at 868 (instructing that settlement valuation "must be examined with great care to eliminate the possibility that it serves only the 'self interests' of the attorneys and the parties, and not the class, by assigning a dollar number to the fund that is fictitious"); *Pampers*, 724 F.3d at 721 ("Cases are better decided on reality than on fiction.") (internal quotation omitted).

To approve the settlement and fee award before that data came in would improperly shift the burden of proof from proponents of the settlement to opponents. *See Holmes*, 706 F.2d at 1147. Instead, the necessary practice is for the Court to defer judgment until payouts to class members are known.

This goes for judgment on fees. *See, e.g.,* Notes of Advisory Committee on 2003 Amendments to Rule 23(h) ("[I]t may be appropriate to defer some portion of the fee award until actual payouts to class members are known."); *id.* ("One fundamental focus is the result actually achieved for class members."); *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1187 n.19 (9th Cir. 2013) ("[A] fees award can be bifurcated or staggered to take into account the speculative nature of at least a portion of a class recovery.") (citing cases).

It also goes for judgment on settlement fairness. *Galloway v. Kan. City Landsmen*, No. 4:11-1020-CV-W-DGK, 2013 U.S. Dist. LEXIS 92650, at *18-*20 (W.D. Mo. Jul. 2, 2013) (finding the record devoid of accounting of class benefit and thus refusing to ratify settlement); *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, 2011 U.S. Dist. LEXIS 48878, at *48 (N.D. Cal. Apr. 29, 2011) (a court "cannot judge the settlement value until claims are filed"); *In re LivingSocial Mktg. & Sales Practice Litig.*, MDL 2254, 2013 WL 1181489, 2013 U.S. Dist. LEXIS 40059, at *33 (D.D.C. Mar. 22, 2013) (implying that the claims period should close before final approval is given). This allows the court to conduct the necessary disproportionality analysis vis-à-vis the actual amounts claimed rather than often overinflated estimates of the settling parties. *See Baby Prods.*, 708 F.3d at 171 (district court estimated aggregate claims of more than $8 million when the process ultimately resulted in only $3 million worth of claims).

Case 0:13-cv-60721-FAM   Document 190   Entered on FLSD Docket 08/18/2014   Page 11 of 28

parties argued—and presented expert evidence—that it would be possible for class members to make $90 million in claims. The district court approved the settlement without looking at the number of claims granted. On appeal, the Seventh Circuit reversed on "multiple grounds." One was that the *Eubank* attorneys would receive $11 million, but the claims process was so convoluted that the class would receive at most $8.5 million. Similarly, in *Pampers*, class counsel argued that the settlement permitted every class member to ask for a refund—but because the refund process required parents to retain years-old diaper boxes' UPC codes and receipts, the Sixth Circuit recognized that the settlement did not provide any actual recovery to the class, while paying the attorneys millions. *See also Bluetooth*, 654 F.3d at 943 (reversing and remanding after district court failed to make comparison between attorney award and value of settlement benefit to class); *Baby Prods.*, 708 F.3d at 174 (reversing where district court failed to "withhold final approval until the actual distribution of funds [could] be estimated with reasonable accuracy"); *GM Trucks*, 55 F.3d at 822 ("At the very least, the district court on remand needs to make some reasonable assessment of the settlement's value and determine the precise percentage represented by the attorneys' fees."). Class counsel's defense of their claims-made procedure neglects *all* of this recent appellate precedent and relies on district-court cases that also fail to acknowledge what appeals courts actually do when faced with settlements like this.

With increasing frequency, especially after *Bluetooth*, courts around the country now make the proper comparison. *E.g., Vought v. Bank of Am.*, N.A., 901 F. Supp. 2d 1071, 1092 (C.D. Ill. 2012) (emphasizing the "scant" 4.5% claims rate and result that $38,000 of $500,000 available would be paid out, ultimately denying approval of settlement); *Kaufman v. Am. Express Travel Related Servs.*, 283 F.R.D. 404, 407 (N.D. Ill. 2012) (finding a vast disparity between

Case 0:13-cv-60721-FAM   Document 190   Entered on FLSD Docket 08/18/2014   Page 12 of 28

attorneys' fees and class claims' values to be "troubling and ultimately unacceptable."); *Trombley v. Bank of Am. Corp.*, No. 08-cv-456-JD, 2012 U.S. Dist. LEXIS 63072, at *8 (D. R.I. May 3, 2012) (finding an attorney award that consumed 66% of the settlement to be "excessive" and grounds for denying final approval); *Ferrington v. McAfee, Inc.*, No. 10-cv-1455-LHK, 2012 U.S. Dist. LEXIS 49160, at *36-37 (N.D. Cal. Apr. 6, 2012) (finding an attorney award that constituted 83% of the settlement amount was disproportionate and grounds for denying final approval); *Strong v. BellSouth Telcoms., Inc.*, 173 F.R.D. 167, 172 (W.D. La. 1997), *aff'd* 137 F.3d 844 (5th Cir. 1998) ("A request for $6 million in attorneys' fees where counsel has provided no more than $2 million in benefits to the class is astonishing. It is a sad day when lawyers transmogrify from counselors into grifters.")

An exemplar decision from this Circuit is Magistrate Judge Spaulding's opinion in *DeLeon v. Bank of Am.*, No. 6:09-cv-1251, 2012 WL 2568142, 2012 U.S. Dist. LEXIS 91124 (M.D. Fla. Apr. 20, 2012) (finding that a low-value claims-made settlement would "surely result in a low claims rate" and recommending that the settlement be rejected for failing the fairness inquiry). *DeLeon* involved a claims made settlement structure that purported to be worth $10 million, but would likely revert more than half of that fund to the defendant. Judge Spaulding found that given potential claim rates, class counsel's fee allotment of $2.5 million would be excessive, and concluded that the settlement was unfairly fee-driven. 2012 U.S. Dist. LEXIS 91124, at *46 ("negotiated to maximize the amount of fees that could be awarded"). Even though class members there were eligible to claim $28 the Court found that the settlement would "likely attract few takers" and was not fair, reasonable and adequate. *Id.* at *60. The report and recommendation was adopted in full by Judge Antoon. *De Leon v. Bank of Am., N.A.*, 2012 U.S. Dist. LEXIS 91126 (M.D. Fla. July 2, 2012).

To the extent that the Court wants to predict what the actual recovery will be, even under extremely generous suppositions, that benefit will not exceed even $15 million. Jabrani confidently asserts this because empirical data is clear—even in consumer settlements with the most efficacious claims mechanisms, claims rates are extremely low. *E.g.*, *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329 n.60 (3d Cir. 2011) (*en banc*) (noting evidence that "consumer claim filing rates rarely exceed seven percent, even with the most extensive notice campaigns."); Daniel Fisher, *Odds Of A Payoff In Consumer Class Action? Less Than A Straight Flush*, Forbes.com (May 8, 2014).

In this case, where it would take "four to five hours" for a highly-trained and experienced Wells Fargo employee to review mortgage records to determine whether a class member was able to make a claim, lay class members who have no experience, as in *Eubank*, will be unlikely to navigate the intimidating claims process, which requires intellectual sophistication, and either notarization, witness identification, or photographic id. Wells Fargo was able to take advantage of unsophisticated class members in their original force-placing of insurance; Wells Fargo is counting on the same consumers to be unsophisticated and for the vast majority of them to fail to fill out a claim form.

If we assume the outside maximum of a 7% claims rate, there will be under $20 million of claims, and class counsel will receive 49% of the benefit. Anything less than that—and there will assuredly be less than that—and class counsel gets the majority. *Cf. Spillman v. RPM Pizza, LLC*, No. 10-349-BAJ-SCR, 2013 U.S. Dist. LEXIS 72947, at *8 (M.D. La. May 23, 2013) (0.27% claims rate); *Lagarde v. Support.com, Inc.*, No. 12-0609 JSC, 2013 U.S. Dist. LEXIS 67875, at *7 (N.D. Cal. May 13, 2013) ("[A] mere 1,259 timely claims were submitted for the $10 refund, which represents 0.17% of the total number of class members and 0.18% of the total

Case 0:13-cv-60721-FAM   Document 190   Entered on FLSD Docket 08/18/2014   Page 14 of 28

number of class members who received notice."); *In re Livingsocial Mktg. and Sales Practices Litig.*, MDL No. 2254, 2013 WL 1181489, 2013 U.S. Dist. LEXIS 40059, at *52 (0.25% claims rate); *Pearson v. Nbty, Inc.*, No. 11-cv-7972, 2014 U.S. Dist. LEXIS 357, at *22 (N.D. Ill. Jan. 3, 2014) (0.25% claims rate overall where maximum claim was $12 without proof of purchase and $50 with proof of purchase).

A proportionate "commensurate"[6] attorney award adheres to the Eleventh Circuit's 25% of the fund benchmark.[7] Less than two years ago, the Ninth Circuit determined that an attorney award of 38.9% would be "clearly excessive." *Dennis*, 697 F.3d at 868. A potential award here of more than double 38.9%, is truly beyond the pale and would reify the lamentable proverb that "[a] lawsuit is a fruit tree planted in a lawyer's garden." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 469 (2d Cir. 1974) (quotation omitted).[8]

The parties may rejoin by pointing to their supposed valuation of the injunction. The reason why the prospective injunctive relief should not enter the calculus is because "[t]he fairness of the settlement must be evaluated primarily on how it *compensates class members—* not on whether it provides relief to other people, much less on whether interferes with defendant's marketing plans." *Pampers*, 724 F.3d at 720 (quoting *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006) and adding emphasis). Even where "the

---

[6] *Pampers*, 724 F.3d at 720.

[7] This circuit established the "20 to 30% range" "benchmark" approach in *Camden I Condominium Ass'n v. Dunkle,* 946 F.2d 768, 774-75 (11th Cir. 1991) (holding that it was an abuse of discretion to use lodestar rather than percentage-of-recovery method of awarding fees, but that lodestar is still permissible in fee-shifting statute cases).

[8] Class counsel's assertion that the fee request only amounts to 11% of the monetary benefit is premised on an delusive 100% claims rate. *Dennis*, 697 F.3d at 868 (eschewing "fictitious" valuations); *Baby Prods.*, 708 F.3d at 174 (instructing that "inquiry needs to be, as much as possible, practical and not abstract.")

Case 0:13-cv-60721-FAM   Document 190   Entered on FLSD Docket 08/18/2014   Page 15 of 28

*cy pres* fund and injunctive relief are substantial benefits secured under the settlement agreement, they benefit the public and future consumers of [the defendants' product]—not Class members for past injuries—and cannot be a key consideration in determining the fairness of the settlement." *Pearson v. Nbty, Inc.*, No. 11-cv-7972, 2014 U.S. Dist. LEXIS 357, at *15 (N.D. Ill. Jan. 3, 2014). Simply, "No changes to future [business practices] by [defendants] will benefit those who already were misled." *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1077 (C.D. Cal. 2010) (advertising); *see also Crawford v. Equifax Payment Servs.*, 201 F.3d 877, 880 (7th Cir. 2000) (injunctive agreement not to use the abusive debt collection letter that was at issue in the case was a "gain" of "nothing" for class members).

These cases are all proper recognitions that a class composed of people who have done discrete business with defendants *in the past* is not served by prospective injunctive relief that can only benefit those who do business with defendants *in the future. See also Felix v. Northstar Location Servs.*, 290 F.R.D. 397, 408 (W.D.N.Y. 2013) (prospective injunctive relief promise of no value to class members who only dealt with defendant in past transaction). Although this settlement may well impose significant costs on Wells Fargo, that is not the measure of compensable value. *Bluetooth*, 654 F.3d at 944 ("[T]he standard [under Rule 23(e)] is not how much money a company spends on purported benefits, but the value of those benefits to the class.") (quoting *TD Ameritrade Accountholder Litig.*, 266 F.R.D. 418, 423 (N.D. Cal. 2009)). It may be true that "every square centimeter" of a package of batteries is "extremely valuable" to the defendants, but it is "egocentrism" to presume that that the same space is equally valuable to class members. *Pampers*, 724 F.3d at 720.

To anticipate another likely counter-argument of the plaintiffs, allocational issues between the class and class counsel cannot be waived away by structuring the settlement as a

Case 0:13-cv-60721-FAM   Document 190   Entered on FLSD Docket 08/18/2014   Page 16 of 28

constructive common fund rather than as a traditional common fund. *See Pampers*, 724 F.3d at 717; *Bluetooth*, 654 F.3d at 943; *Piambino II*, 757 F.2d at 1122. "That the defendant in form agrees to pay the fees independently of any monetary award or injunctive relief does not detract from the need carefully to scrutinize the fee award." *Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003). For either way, "the economic reality is that a settling defendant is concerned only with its total liability." *Pampers*, 724 F.3d at 717 (quoting *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 849 (5th Cir.1998)); *Piambino II*, 757 F.2d at 1143.

Nor are issues of apportionment resolved by delaying agreement on fees until after the terms of the settlement were negotiated. *Richardson v. L'Oreal USA, Inc.*, ___F. Supp. 2d___, 2013 WL 5941486, at *13 (D.D.C. Nov. 6, 2013). The only apparent way to actually divorce class relief from fees is to reach an accord on class relief while simultaneously agreeing to litigate the issue of fees. *See In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Litig.*, 418 F.3d 277, 308 (3d Cir. 2005). In other words, as long as the defendant willingly foots both bills, there is no way to avoid the "truism that there is no such thing as a free lunch." *Staton*, 327 F.3d at 964.

Naturally low claims rates are "[t]he reality" here, and mean that "this settlement benefits class counsel vastly more than it does the consumers who comprise the class." *Pampers*, 724 F.3d at 721. This Court should deny final approval until the settlement is restructured so that class counsel are no longer "the foremost beneficiaries of the settlement." *Baby Prods.*, 708 F.3d at 179. As discussed in III.A.3 below, the way to do that is to require reductions in attorneys' fees to revert to the class, rather than to the defendant, and require the parties to "delete" that "questionable provision." *Eubank*, 753 F.3d at 723.

Case 0:13-cv-60721-FAM   Document 190   Entered on FLSD Docket 08/18/2014   Page 17 of 28

**The clear-sailing agreement**

In addition to a discrepancy between fees and class benefit, the settlement contains *Bluetooth's* second warning sign of an unfair deal: a "clear sailing" agreement. 654 F.3d at 947. A clear sailing clause stipulates that attorney awards will not be contested by the defendant. "Such a clause by its very nature deprives the court of the advantages of the adversary process." *Weinberger v. Great Northern Nekoosa Corp.,* 925 F.2d 518, 525 (1st Cir. 1991). The clause "suggests, strongly," that its associated fee request should go "under the microscope of judicial scrutiny." *Id.* at 518, 525; *Childs v. United Life Ins. Co.,* No. 10-CV-23-PJC, 2012 U.S. Dist. LEXIS 70113, at *13-*14 & n.6 (N.D. Okla. May 21, 2012). The clear sailing clause lays the groundwork for lawyers to "urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees." *Weinberger,* 925 F.2d at 524; *accord Bluetooth,* 654 F.3d at 948; *see also Waters v. Int'l Precious Metals Corp.,* 190 F.3d 1291, 1293 n.4 (11th Cir. 1999) (taking note of the controversy but refusing to opine on the propriety of clear-sailing agreements where settlement approval itself was not challenged on appeal).

"Provisions for clear sailing clauses 'decouple class counsel's financial incentives from those of the class, increasing the risk that the actual distribution will be misallocated between attorney's fees and the plaintiffs' recovery. They potentially undermine the underlying purposes of class actions by providing defendants with a powerful means to enticing class counsel to settle lawsuits in a manner detrimental to the class." *Vought,* 901 F. Supp. 2d at 1100 (quoting *Int'l Precious Metals Corp. v. Waters,* 530 U.S. 1223, 1224 (2000) (O'Connor, J., respecting the denial of the petition for a writ of certiorari)); *accord* William D. Henderson, *Clear Sailing Agreements: A Special Form of Collusion in Class Action Settlements,* 77 TUL. L. REV. 813, 816 (2003) (urging courts to "adopt a per se rule that rejects all settlements that include clear sailing

Case 0:13-cv-60721-FAM   Document 190   Entered on FLSD Docket 08/18/2014   Page 18 of 28

provisions."). "[W]hile the present case does not utilize a classic reversionary fund in which attorneys' fees are paid from a common pool that directly reduces the class's recovery, it undoubtedly did not escape either party's attention that every dollar not claimed from the fund was one dollar that [defendant] could use to pay class counsel's fees." *Vought*, 901 F. Supp. 2d at 1101. Clear sailing also undermines any conceivable benefit of separate negotiation of fees and terms. *Sobel v. Hertz Corp.*, No. 3:06-cv-00545-LRH-RAM, 2011 WL 2559565, 2011 U.S. Dist. LEXIS 68984, at *45 (D. Nev. Jun. 27, 2011).

*Bluetooth*'s second indication of an unfair fee-driven settlement is present.

**The "kicker" / segregated fee fund**

Not only does the settlement contain a "clear sailing" provision forbidding defendant from challenging the fee amount, but there is a "kicker" providing that any reduction in the fee award reverts to the defendant, rather than the class. The settlement agreement effectuates this by stipulating that fees will be considered separate and apart from class relief.[9] This is the third red

---

[9] This is no cherry on top of the class's sundae. Despite purportedly not "reducing the level of recovery for Class Members" (*See* Lowe. Decl. ¶14), in "economic reality" the defendant will cut every check and is concerned only with its total liability. *Pampers*, 724 F.3d at 717; *GM Trucks*, 55 F.3d at 820; *Strong*, 137 F.3d at 849, *Piambino II*, 757 F.2d at 1143. The interrelation between fees and class relief cannot be undone with the fiat of a single sentence.

Nor can it be undone by following the recommendation of a professional mediator. *See Pampers*, No. 10-cv-301 (S.D. Ohio.), Dkt. 10-1, ¶¶17-19 (not only were fee negotiations separate, the mediator proposed the fee arrangement on a take it or leave it basis); *Bluetooth*, 654 F.3d at 948-49 (neither presence of neutral mediator nor separation of fee negotiations from other settlement negotiations demonstrates that a settlement is fair). "There is no substitute for the requirement of district courts vetting the proposed settlement under Rule 23(e). It is also no answer to say that a private mediator helped frame the proposal. Such a mediator is paid to help the immediate parties reach a deal. Mediators do not adjudicate the merits. They are masters in the art of what is negotiable. It matters little to the mediator whether a deal is collusive as long as a deal is reached. Such a mediator has no fiduciary duty to anyone, much less those not at the table. Plaintiffs' counsel has the fiduciary duty. It cannot be delegated to a private mediator." *Kakani v. Oracle Corp.*, No. C 06-06493 WHA, 2007 WL 179377, 2007 U.S. Dist. LEXIS 47515, at *31 (N.D. Cal. Jun. 19, 2007); *see*

flag pinpointed by *Bluetooth*: when the "parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Bluetooth*, 654 F.3d at 947. This "kicker arrangement reverting unpaid attorneys' fees to the defendant rather than to the class amplifies the danger" that is "already suggested by a clear sailing provision." *Id.* at 949. "The clear sailing provision reveals the defendant's willingness to pay, but the kicker deprives the class of that full potential benefit if class counsel negotiates too much for its fees." *Id.* In a typical common fund settlement, the district court may, at its discretion, reduce the fees requested by plaintiffs' counsel—and when it does so, the class will benefit from the surplus. *E.g.*, *Michel v. Wm Healthcare Solutions*, No. 1:10-cv-638, 2014 U.S. Dist. LEXIS 15606, at *52 (S.D. Ohio Feb. 7, 2014) (lowering the fee to 15% "will accomplish…important goals.…[B]y reducing the amount of the fund paid to Class Counsel, the Court augments the benefit to each Class Member.").

Under the proposed settlement, however, if the Court awards less than the $19 million fee that defendant has already agreed to pay to class counsel, the defendant will be the only beneficiary. Because of the "economic reality that a settling defendant is concerned only with its total liability," this settlement is therefore worse for the class than a traditional common fund. *Pampers*, 724 F.3d at 717 (internal quotation omitted). In effect, the parties have prevented the Court from returning the fees and class relief to natural equilibrium.

A "kicker" has the additional self-serving effect of protecting class counsel by deterring scrutiny of the fee award. A court has less incentive to scrutinize a fee award because the kicker combined with the clear sailing agreement means that any reversion benefits only the defendant that had already agreed to pay that initial amount. Charles Silver, *Due Process and the Lodestar*

---

*also* James Richard Coben, *Creating a 21st Century Oligarchy: Judicial Abdication to Class Action Mediators*, 5 PENN ST. Y.B. ARB. & MEDIATION 162, 163 (2013) (deference to mediators "is an abdication of judicial fiduciary duty to ensure that proposed class action settlements are fair to absent class members").

Case 0:13-cv-60721-FAM   Document 190   Entered on FLSD Docket 08/18/2014   Page 20 of 28

*Method: You Can't Get There From Here*, 74 TUL. L. REV. 1809, 1839 (2000) (such a fee arrangement is "a strategic effort to insulate a fee award from attack"); Lester Brickman, LAWYER BARONS 522-25 (2011) (same; further arguing that reversionary kicker should be considered *per se* unethical). At a minimum, clear-sailing in conjunction with fee segregation is a red flag of a self-serving settlement that merits justification: why was this negotiated in such a manner as to make the class worse off? *Bluetooth*, *supra*.

The $19 million attorney allowance is a "concrete and indisputable" part of the settlement, and the fact that it is shielded from the class is inherently unfair. *Pampers,* 724 F.3d at 721. No settlement should be approved until the parties agree to modify the settlement so that any reduction in the proposed fee award reverts to the class. Eight years ago, in a case in federal court in the District of Maine, Chief Judge Singal hit the nail on the head in a way that is directly applicable here: "Stripped to its essence, the Court believes that three factors combined to create this untenable distribution scenario: (1) a claims made settlement premised on a 100 percent response rate, (2) a reverter clause, and (3) a clear sailing provision." *Sylvester v. Cigna Corp.*, 369 F. Supp. 2d 34, 52 (D. Me. 2005).

This settlement must be rejected as unduly preferencing class counsel over class members.

**D.     The settlement is an unfair reverse auction.**

As the Cochran-May objections show (Dkt. 160), Wells Fargo was faced with multiple class actions, and apparently chose to settle with the most malleable class counsel. This is *per se* unacceptable. *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277 (7th Cir. 2002). The Court should use the auction mechanism to benefit, rather than prejudice the class, and require the competing class counsel to submit bids for how much they believe the case is worth, and at what fee they

are willing to litigate that amount. The ultimate result will be a settlement that will pay the class much more than $20 million, and the attorneys much less than $19 million—which is clearly a windfall that is such an excessive multiplier of lodestar that the attorneys do not even ask for a lodestar crosscheck.

**E.      In the alternative to denying settlement approval, the Court should limit counsel's fees to a reasonable percentage of the amounts actually claimed and avoid windfalls in great excess of lodestar.**

In the event that the Court overrules Jabrani's fairness objections, and reaches the question of what counsel award is reasonable under Rule 23(h), Jabrani asks the Court to substantially reduce the award from that which is sought. It should bear in mind the background principle that "[w]hen the class attorneys succeed in reaping a golden harvest of fees in a case involving a relatively small recovery, the judicial system and the legal profession are disparaged." *Piambino II*, 757 F.2d at 1144 (internal quotation omitted). "[T]he practice of awarding attorneys' fees is one that has been delicate, embarrassing and disturbing for the courts. This embarrassment is rooted in the fact that the bitterest complaints about the legal profession from laymen are directed at the windfall fees and featherbedding that lawyers have managed to perpetuate through their influence with the judiciary." *Id.* (internal quotations, brackets and ellipses omitted). So, "[f]or the sake of their own integrity, the integrity of the legal profession, and the integrity of Rule 23, it is important that the courts should avoid awarding 'windfall fees' and that they should likewise avoid every appearance of having done so. *Id.* (internal quotation omitted). As applied to this case, and some class action practices today, this admonition is prescient.

To minimize the likelihood of unreasonable fee awards, the law of this Circuit requires

the use of the percentage-of-recovery method in common fund cases. *See, e.g., Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir. 1991) (abuse of discretion to use lodestar rather than percentage-of-recovery method of awarding fees, but lodestar is still permissible in fee-shifting statute cases). This Circuit has adopted the 25% benchmark prevalent in much of the nation: "district courts are beginning to view the median of this 20% to 30% range, i.e., 25%, as a 'bench mark' percentage fee award which may be adjusted in accordance with the individual circumstances of each case, as opposed to the lodestar hourly fee used in statutory fee awards." *Id.* at 775. The court may adjust the benchmark upward or downward,[10] but it "should articulate specific reasons for selecting the percentage upon which the attorneys' fee award is based." 946 F.2d at 775.

As an "interest-alignment device," a contingency approach like the percentage-of-recovery method "is not perfect.... But [an] imperfect alignment of interests is better than a conflict of interests, which hourly fees may create." *Kirchoff v. Flynn*, 786 F.2d 320, 325 (7th Cir. 1986). *See generally* Charles Silver, *Due Process And The Lodestar Method: You Can't Get There From Here*, 74 TUL. L. REV. 1809 (2000) (citing authorities that show a "broad consensus that percentage-based formulas harmonize the interests of agents and principals better than time-based formulas like the lodestar approach."). The percentage method "directly aligns the

---

[10] The 12 factors from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) are "(1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; and (12) awards in similar cases." But no matter how much play these factors are given, the rule is that 85%-98% of the cash recovery or nearly 50% of the entire settlement value is far above the permitted "upper limit." *Camden I Condominium Ass'n*, 946 F.2d at 774-75.

interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005). In contrast, judicial reliance on the lodestar will "create an unanticipated disincentive to early settlements, tempt lawyers to run up their hours, and compel district courts to engage in a gimlet-eyed review of line-item fee audits." *Id.*

"Active judicial involvement in measuring fee awards is singularly important to the proper operation of the class action process." Advisory Committee Notes on 2003 Amendments to Rule 23. As a fiduciary for the class, the Court maintains a duty of keen oversight of all settlement proceedings. *See supra* §II. Regardless of whether the settlement is structured as a pure common fund, "review of the attorneys' fees component of a settlement agreement is . . . an essential part of its role as guardian of the interests of class members. To properly fulfill its Rule 23(e)[11] duty, the district court must not cursorily approve the attorney's fees provision of a class settlement or delegate that duty to the parties." *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 850 (5th Cir. 1998) (constructive common fund); *GM Trucks*, 55 F.3d 768, 819-20 (requiring "a thorough judicial review of fee applications ... in all class action settlements" because "'a defendant is interested only in disposing of the total claim asserted against it'" and "'the allocation between the class payment and the attorneys' fees is of little or no interest to the defense'") (constructive common fund). Federal case law, in *Strong, GM Trucks,* and subsequent decisions,[12] has eschewed the unduly formalistic approach that the plaintiffs advance here.

Percentage of recovery is still preferable to lodestar even though this settlement is structured as a constructive common fund, rather than a pure common fund. *GM Trucks*, 55 F.3d

---

[11] Rigorous oversight of fee awards is now also required by Rule 23(h).

[12] *E.g., Pampers*, 724 F.3d 713; *Bluetooth*, 654 F.3d 935.

Case 0:13-cv-60721-FAM   Document 190   Entered on FLSD Docket 08/18/2014   Page 24 of 28

at 821 ("[T]he court should probably use the percentage of recovery rather than the lodestar method as the primary determinant…. [P]rivate agreements to structure artificially separate fee and settlement arrangements cannot transform what is in economic reality a common fund situation into a statutory fee shifting case."). "If an agreement is reached on the amount of a settlement fund and a separate amount for attorney fees" then "the sum of the two amounts ordinarily should be treated as a settlement fund for the benefit of the class, with the agreed-on fee amount constituting the upper limit on the fees that can be awarded to counsel." Federal Judicial Center, *Manual for Complex Litigation* § 21.7 (4th ed. 2004).

A fee award needs to be attuned to the result actually achieved for the class, to the money the settlement actually puts in class members' hands. *See, e.g., Baby Prods.*, 708 F.3d at 179; *cf.* 28 U.S.C. §1712(a). If this Court endorses a rule that class counsel should be indifferent between a settlement that awards cash directly to class members and a settlement with a restrictive claims process where less than 2% of the class will find it worthwhile to make claims, the parties will always agree to the more burdensome claims process that ensures class counsel extracts the maximum amount of fees and defendants pay the minimum amount of money to settle the case, and the unnamed class members will be left in the cold.

And for this reason the Advisory Committee Notes counsel that the "fundamental focus is the result actually achieved for class members" and advise "defer[ring] some portion of the fee award until actual payouts to the class are known." Notes of Advisory Committee on 2003 Amendments to Rule 23(h); *accord Baby Prods.*, 708 F.3d at 179. Even before Rule 23(h), courts deferred or staggered fees just so, to account for success or failure of the claims process. *E.g., Duhaime v. John Hancock Mut. Life Ins. Co.*, 989 F. Supp. 375, 380 (D. Mass. 1997); *Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1283-84 (S.D. Ohio 1996), *aff'd Bowling v. Pfizer,*

Case 0:13-cv-60721-FAM Document 190 Entered on FLSD Docket 08/18/2014 Page 25 of 28

*Inc.*, 102 F.3d 777 (6th Cir. 1996).

Admittedly, some courts that have awarded fees on a percentage-of-recovery basis have made this calculation on the basis of the entire fund, not just the amount of the fund that is claimed by the class. *E.g., Boeing v. Van Gemert*, 444 U.S. 572 (1980); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295-96 (11th Cir. 1999), *cert. denied* 530 U.S. 1223 (2000).

Nonetheless, this Court should find *Boeing* and *Waters* inapplicable for at least two reasons. **First,** they were superseded by the 2003 amendments to Federal Rule of Civil Procedure 23, which created Rule 23(h), and the passage of the Class Action Fairness Act in 2005 (28 U.S.C. §1711 *et seq.*). *See* Samuel Isaacharoff, *The Governance Problem in Aggregate Litigation*, 81 FORDHAM L. REV. 3165, 3171-72 (2013) (describing *Boeing* as marking an "older line of cases" that eventually "prompted legislative rejection of compensating lawyers on the face value of the settlement, regardless of the take-up rate of the benefits by class members"). The new rules reflect common-sense intuitions: attorneys' fees should be tied directly to what clients receive, and permitting a class member to fill out a claim form in order to receive a check simply is not equivalent to getting money to that class member directly.

Speculative, maximized estimates are not the appropriate measure of benefit. *Baby Prods.*, 708 F.3d at 179 n.13 ("[T]he actual benefit provided to the class is an important consideration when determining attorneys' fees."); Federal Judicial Center, *Manual for Complex Litigation* § 21.71 (4th ed. 2004) ("In cases involving a claims procedure…, the court should not base the attorney fee award on the amount of money set aside to satisfy potential claims. Rather the fee should be based only on the benefits actually delivered."); *see also Pampers*, 724 F.3d at 721 (rejecting settlement-value "assumptions…premised upon a fictive world").

A class member is not indifferent between a $292 million common fund that pays $281

Case 0:13-cv-60721-FAM   Document 190   Entered on FLSD Docket 08/18/2014   Page 26 of 28

million to the class and what we have here: a supposed overall monetary value of $500 million that will eventually yield less than $20 million (and likely less than half of that) than to the class. *See Int'l Precious Metals Corp. v. Waters*, 530 U.S. 1223 (2000) (O'Connor, J) (respecting denial of certiorari but noting that fund settlements that allow attorney fees to be based upon the total fund may "potentially undermine the underlying purposes of class actions by providing defendants with a powerful means to enticing class counsel to settle lawsuits in a manner detrimental to the class" and, in turn, "could encourage the filing of needless lawsuits").

**Second**, even before Rule 23(h), *Boeing* and *Waters* never had application where "no money was paid into escrow or any other account" and each member of the class has no claim to a set piece of the "lump-sum judgment." *Strong v. BellSouth Telcoms*., 137 F.3d 844, 852 (5th Cir. 1998); *Waters*, 190 F.3d at 1296 ("[U]nlike the case at bar, *Strong* never established a "common fund" from which money would be drawn. In contrast, the parties here established that $ 40 million was the fund upon which the amount of the individual claimants' awards would be based.") (internal citation to *Strong* omitted). Given that there is no litigated judgment here, no pure common fund, and no "mathematically ascertainable" maximum payout, even before Rule 23(h) and the Class Action Fairness Act, *Boeing* and *Waters* would have had no application here.[13]

Make no mistake though, a mere reduction of fees is a distant second-best solution to rejecting the settlement entirely, because it allows for the reversion of monies that the defendant was willing to cede. As *Bluetooth* said, there is "no apparent reason" for that. 654 F.3d at 949.

---

[13] If this Court determines that *Boeing* is still good law and is applicable here, Jabrani wishes to preserve that issue for appeal: he believes that it has been legislatively superseded and that it should, ideally, be judicially reversed.

Case 0:13-cv-60721-FAM   Document 190   Entered on FLSD Docket 08/18/2014   Page 27 of 28

## CONCLUSION

The settlement must be rejected; any attorney-fee award must be based on the actual recovery of the class.

DATED:  August 18, 2014

Respectfully submitted,

/s/Santiago A. Cueto
Santiago A. Cueto
Cueto Law Group
4000 Ponce de Leon Blvd., Suite 470
Coral Gables, Florida  33146
Telephone:      (305) 777-0377
Facsimile:       (305) 777-0449
Email:  Sc@cuetolawgroup.com


Attorneys for Objectors/Class Members

Case 0:13-cv-60721-FAM   Document 190   Entered on FLSD Docket 08/18/2014   Page 28 of 28

**Certificate of Service**

The undersigned certifies that today he filed the foregoing objection and associated declarations on ECF which will send electronic notification to all attorneys registered for ECF-filing. The undersigned further certifies he caused to be served via USPS First Class Mail, postage prepaid, a copy of this Objection and associated exhibits upon the following.

Adam M. Moskowitz
Kozyak, Tropin, & Throckmorton, P.A.
2525 Ponce de Leon Blvd.,
9th Floor
Coral Gables, FL 33134

Frank G. Burt
Farrokh Jhabvala
Carlton Fields Jorden Burt, P.A.
1025 Thomas Jefferson St., NW
Suite 400 East
Washington DC, 20007-5208

Michael J. Steiner
Severson & Werson,
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, CA 94111

Robyn C. Quattrone
BuckleySandler LLP
1250 24th Street, NW
Suite 700
Washington, DC 20037

/s/Santiago A. Cueto
Santiago A. Cueto