UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IRA MARC FLADELL, SARAH CROUCH, GREG OLSON, MARGARET ZAWISTOWSKI, TILENA ALI, DANNY LANE and BEVERLY LANE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A.; WELLS FARGO INSURANCE, INC.; ASSURANT, INC.; AMERICAN SECURITY INSURANCE COMPANY; VOYAGER INDEMNITY INSURANCE COMPANY; STANDARD GUARANTY INSURANCE COMPANY; QBE SPECIALTY INSURANCE COMPANY; QBE INSURANCE CORPORATION; QBE FIRST INSURANCE AGENCY, INC.; QBE FINANCIAL INSTITUTION RISK SERVICES, INC.; and PRAETORIAN INSURANCE COMPANY,<br><br>Defendants. | Civil Case No. 0:13-cv-60721 |

**OBJECTOR VANSKYOCK, SWAIN, YOHO, AND PEARSON'S RESPONSE TO THE COURT'S NOTICE ON PROPOSED SETTLEMENT**

In response to this Court's concerns regarding the disparity between the expected small sum that Wells Fargo will actually pay out and the enormous attorney's fees that Class Counsel demands, Class Counsel merely claims that it is too late to make a fair settlement on behalf of the Class. *Fladell v. Wells Fargo NA*, No. 13-60721, D.E. #182 at 1. Instead of making *this* settlement fair, they promise that they will try harder with the next set of defendants lined up to relieve themselves of liability at a bargain price. *Id.* at 1-2. But "[t]he reason the court is called on to review a settlement is to protect the rights of the many absent class members who were not

involved in the negotiations leading to settlement." *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 225 (5th Cir. 1981).

The Class should not suffer for an inadequate settlement proposal by Class Counsel and Wells Fargo. For the reasons stated below, this Court should deny final approval of the settlement because it is unfair and because the parties have failed to provide enough information on the amount Defendants will pay to the Class. In the alternative, this Court should exercise its equitable powers to distribute unclaimed funds to claimants until they have been fully compensated, with treble damages, and distribute the remainder *cy pres*. No additional notice is required to the Class.

## I. There Remains Insufficient Information to Determine if this Settlement Is Fair

All of this Court's questions and concerns stem from the failure of Class Counsel and the Parties to agree to a settlement that allows the Court to know how much Wells Fargo will be paying to the Class. Indeed, without any information regarding the amount of money that Wells Fargo will ultimately pay the Class, this Court should not find the settlement to be fair. *See, e.g.*, *In re Baby Products Antitrust Litig.*, 708 F.3d 163, 175 (3d Cir. 2013) ("We vacate the District Court's orders approving the settlement and the fund allocation plan because it did not have the factual basis necessary to determine whether the settlement was fair to the entire class. Most importantly, it did not know the amount of compensation that will be distributed directly to the class.").

In determining the fairness of the Parties' settlement, this Court must look to "the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable[.]" *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1320 (S.D. Fla. 2007) (quoting *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)). The Seventh Circuit

Court of Appeals recently rebuked parties and a district court for approving a settlement without the benefit of claims information before the final approval hearing. *Eubank v. Pella Corp.*, No. 13-2091, 2014 WL 2444388, at *6 (7th Cir. June 2, 2014). As this Court has stated, "[w]here the goals of the underlying statute(s) upon which the class claims are based are strictly compensatory, . . . a class action resulting in substantial unclaimed funds will not further that goal." *Allapattah Servs., Inc. v. Exxon Corp.*, 157 F. Supp. 2d 1291, 1305 (S.D. Fla. 2001). This Court cannot determine the fairness of this settlement or the fairness of the $19 million of attorneys' fees without knowing how much Defendants will actually pay to the Class. For instance, in *Figueroa*, the court held a proposed settlement was unfair where there was a low claims rate and not enough information on how the parties calculated the recovery for each claimant. Here too there is a substantial risk of a low claims rate and not enough information for the Court to approve this settlement.

The Court is rightly concerned that the amount of money the Class *actually* recovers in this settlement may be dwarfed by the attorneys' fees and expenses and that the unclaimed money will merely revert to Defendants. Whether this settlement is fair cannot be determined without knowing the amount the Class will receive.

## II.     Wells Fargo Should Pay the Entire Purported Monetary Value of the Settlement

"When the settlement agreement is silent about the disposition of undistributed class recovery funds, then . . . the court . . . may make an appropriate order for the disposition of such funds." *Newburg on Class Actions*, § 11.20. Class Counsel has asserted that "[t]he monetary award [in this settlement] will provide the settlement class more than $281 million in monetary relief[.]" D.E. #182 at 1. The Settlement Agreement does not directly address the unclaimed

3

funds. One must instead infer that Defendants plan to keep the undistributed funds. *See* D.E. #182-1 at 34, ¶ 7.3.5.

To allow Defendants to retain unclaimed funds would be contrary to law and policy. For instance, in *In re Motorsports Merch. Antitrust Litig.*, 160 F. Supp. 2d 1392, 1395 (N.D. Ga. 2001), the court held that

> [b]ecause the defendant has already conceded its potential out-of-pocket exposure for the entire potential recovery fund as part of the settlement, the substantive policies underlying the statutes upon which the plaintiffs sued would dictate a preference for an appropriate cy pres distribution rather than a reversion of undistributed funds to the defendant, the alleged wrongdoer, despite any disclaimer of liability in the settlement.

160 F. Supp. 2d at 1395. The Third Circuit Court Appeals has likewise stated that "[r]eversion to the defendant risks undermining the deterrent effect of class actions by rewarding defendants for the failure of class members to collect their share of the settlement." *Baby Prod.*, 708 F.3d at 172. Moreover, the Eleventh Circuit Court of Appeals impliedly used this reasoning to deny a defendant's challenge to attorneys' fees in a settlement with a reversionary common fund because the reduction would primarily benefit the defendant. *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1298 (11th Cir. 1999).

As Wells Fargo has already committed to providing the Class with $281 million of monetary relief, there is no reason for unclaimed funds to remain with Defendants. Permitting Wells Fargo to keep the unclaimed funds, which may be substantial, "would be equivalent to awarding it the benefit of its own wrongdoing, a result which should not be sanctioned." *Friar v. Vanguard Holding Corp.*, 125 A.D.2d 444, 446 (N.Y. App. 2d 1986). Allowing Defendants to keep the majority of the settlement funds falls short of the fairness required to the Class. This Court should follow the sound reasoning of *In re Motorsports* and *Waters* to prohibit the unclaimed funds from remaining in Defendants' hands. It should instead distribute unclaimed

funds to claimants that have not been fully compensated and, only then, make a *cy pres* distribution using the remaining funds.

### III. Distributing Unclaimed Funds to the Class Better Serves the Purposes of the Settlement and Underlying Claims than a *Cy Pres* Distribution

*Cy pres* distributions are appropriate only when distributions to class members are not possible. "[D]irect distributions to the class are preferred over *cy pres* distributions." *Baby Prod.*, 708 F.3d at 173. Until class members have been fully compensated, there is no need for a *cy pres* distribution. *See, e.g.*, *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1355 (S.D. Fla. 2011) (*cy pres* distributions should be made "only when direct distributions to class members are not feasible"). Yet "[f]ederal courts have broad discretionary powers in shaping equitable decrees for distributing unclaimed class action funds." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990) (citing *Van Gemert v. Boeing Co.*, 739 F.2d 730, 737 (2d Cir.1984)). "The district court's choice among distribution options should be guided by the objectives of the underlying statute and the interests of the silent class members." *Id.* A court may decide to distribute the unclaimed funds under the doctrine of *cy pres*, but that doctrine is limited by any equitable interest class members may have in the residue. *In re Wells Fargo Sec. Litig.*, 991 F. Supp. 1193, 1194 (N.D. Cal. 1998).

The underlying claims that serve as the basis of this settlement favor distributing unclaimed funds to the Class. There is no need to resort to the "next best thing" with a *cy pres* distribution. As a settlement of claims that require only compensatory damages is inadequate where there are substantial unclaimed funds, *Allapattah Servs., Inc.*, 157 F. Supp. 2d at 1305, this Court should be particularly wary of settlements for claims with *punitive* damages in which there are substantial unclaimed funds. Here, Class Counsel attempts to settle RICO claims by

permitting Class members to obtain a *portion* of their damages despite the high risk that fewer than 10% of the Class will obtain even that portion.

The Court should thus take into consideration RICO's punitive objective in determining how best to distribute unclaimed funds. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24 (1st Cir. 2009) (approving *cy pres* distribution of unclaimed funds because district court had ensured full *treble* recovery of class members first). Unclaimed money should go to the class for a full refund, instead of the mere 11% of premiums paid the settlement currently offers. With what remains the Court should provide claimants with damages consistent with the treble damages permissible under RICO. *See* 18 U.S.C.A. § 1964(c) ("Any person injured . . . by reason of a violation of section 1962 . . . shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee"). If any funds remain thereafter, a *cy pres* distribution would be appropriate. To order a *cy pres* distribution beforehand would be to ignore that this settlement seeks to extinguish Class members' rights to later bring RICO claims. D.E. #182-1 at ¶ 3.5(g)-(h).

## IV.   Equity Requires that Uncashed or Returned Checks Be Redistributed to the Class

The equitable limitation on *cy pres* distributions, discussed above, applies with particular force to the yet unknown portion of the unclaimed funds attributable to uncashed or returned checks. For instance, in *In re Wells Fargo Securities Litigation*, the court held that "Class members were the equitable owners of [settlement] funds from the moment the court-approved distributions were made, not merely from the moment the checks were cashed. They are thus entitled to the time value of this money from the point of distribution forward[.]" 991 F. Supp. at 1195. While there is no provision in the proposed Settlement Agreement regarding uncashed or returned checks, those dispositions should be distributed to the Class pro rata until each claimant

6

Class member receives full compensation consistent with the treble damages they could have received under RICO.

V. **No Additional Notice Is Required to the Class for Additional Disbursements or *Cy Pres* Distributions from Unclaimed Funds**

Defendants and Class Counsel assert that a re-notice would be necessary if they were to amend the Settlement Agreement to include a *cy pres* provision. D.E. #251 and #248. They are incorrect. Defendants explain that any material revisions to the Settlement Agreement would require re-notice to the Class. D.E. #251 at 3. First, distributions of *unclaimed funds* are not material because a distribution of money no one has made a claim to cannot adversely affect claiming Class members' rights. *See Baby Prod.*, 708 F.3d at 180 ("Generally speaking, the notice should contain sufficient information to enable class members to make informed decisions on whether they should take steps to protect *their rights*")(emphasis added). Second, as Objectors here propose, the Court should use its *equitable powers* to make additional distributions. This would not require a change of the settlement agreement and would not require re-notice to the Class. The Court can hear objections at the appropriate time regarding the recipients of its *cy pres* distributions. That time is not now.

Defendants cite *In re Baby Products Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013). This case holds that "failure to identify the *cy pres* recipients is not a due process violation. Class members know there is a possibility of a *cy pres* award and that the Court will select among recipients proposed by the parties at a later date." 708 F.3d at 180. This contradicts Defendants' argument.

VI. **Attorneys' Fees Should Be Reduced Because There Is No Common Fund**

Attorneys' fees should be reduced to correspond to Wells Fargo's actual payout because the rule for common funds does not apply. Class Counsel relies on the rule that "attorneys' fees

awarded from a *common fund* shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) (emphasis added). Under the proposed Settlement Agreement, Wells Fargo is "funding the amounts required by the Settlement Administrator for distribution . . . to Claimants." D.E. #182-1 at 34, ¶ 7.3.5. There is no common fund. The only thing approaching a "fund" created for the Class is the amount Defendants relinquish to the Settlement Administrator representing only claims made by Class Members. The Court should reduce attorneys' fees accordingly.

Class Counsel incorrectly asserts that it is entitled to a percentage of the total amount that the Class *could potentially* receive. But that is not the law. Class Counsel cite a number of cases within the Eleventh Circuit where courts used a percentage of a common fund to calculate attorneys' fees. In nearly every one of those cases, however, defendants created an actual settlement fund for the class.[1] One case Class Counsel cites, *Waters v. International Metals Corporation*, 190 F.3d 1291 (11th Cir. 1999), discusses the possibility of applying the rule that attorneys' fees should be a percentage from the *actual payout* from the settlement, which is condoned in *Strong v. BellSouth Telecommunications, Inc.*, 137 F.3d 844 (5th Cir. 1998). The court distinguished *Strong*, finding that *Strong* did not apply because there was not an actual settlement fund in that case, while the *Waters* settlement did utilize a settlement fund. *Waters*, 190 F.3d at 1296 (citing *Strong*, 137 F.3d at 852). Whether a fund exists is therefore of fundamental importance to whether attorneys' fees are paid out of the purported value or the actual value of the settlement. Indeed, the court in *Strong* refused to apply *Boeing Co. v. Van*

---

[1] *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999); *Camden I Condo. Aa'n v. Dunkle*, 946 F.2d 768 (11th Cir. 1991); *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334 (S.D. Fla. 2007); *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185 (S.D. Fla. 2006); *In re Managed Care Litig. v. Aetna Inc.*, MDL No. 1334, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003); *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323 (S.D. 2001).

8

*Gemert*, 444 U.S. 472 (1980) (allowing attorneys' fees to calculated based on the total amount of the common fund) because it was "distinguishable on a [] significant ground: unlike *Boeing*, this case does not involve a traditional common fund." *Strong*, 137 F.2d at 852. Here, as in *Strong*, there is no settlement fund and here, as in *Strong*, the Court should "consider the actual award paid out to the class in determining whether a fee application was reasonable." *Waters*, 190 F.3d at 1296.

Class Counsel wrongly relies on a footnote in an unpublished decision, *David v. Am. Suzuki Motor Corp.*, No. 08-cv-22278, 2010 WL 1628362 (S.D. Fla. Apr. 15, 2010). The court there creates a rule that a settlement may be treated as a common fund settlement "even where the counsel fees are not taken from a common fund but are instead paid separately by a class-action defendant[.]" *David v. Am. Suzuki Motor Corp.*, No. 08-CV-22278, 2010 WL 1628362 (S.D. Fla. Apr. 15, 2010). The court in *David*, however, comes to this conclusion by stating that it was "unlike other cases where the common fund approach has been rejected because the non-monetary settlement's value was inflated, difficult to calculate, or illusory because of the nature of the benefits, ***see e.g., Strong v. BellSouth Telecommunications, Inc., 137 F.3d 844, 853 (5th Cir.1998)***))." *David*, 2010 WL 1628362, at *8, n.14 (emphasis added). Indeed, in *Strong*, the district court denied the requested attorneys' fees because the purported $64 million settlement was an inflated figure; the settlement ultimately only paid out $1.7 million. *Strong v. BellSouth Telecommunications, Inc.*, 173 F.R.D. 167, 172 (W.D. La. 1997) *aff'd*, 137 F.3d 844 (5th Cir. 1998) ("A request for $6 million in attorneys' fees where counsel has provided no more than $2 million in benefits to the class is astonishing. It is a sad day when lawyers transmogrify from counselors into grifters. Suffice it to say that we find the request unreasonable."). While the amount Defendants will ultimately pay to the Class here is unknown, it is foreseeable that there

9

will be a similar incongruity. Thus, this Court should not treat this settlement as if there were a common fund because the purported monetary value of the settlement is inflated and the actual payout is beyond difficult to calculate—it is unknowable.

The distinction between this settlement and settlements in which defendants create a common fund is significant. In true common fund settlements, the Class benefits from the Court's equitable power to redistribute unclaimed funds or distribute funds *cy pres*. Class counsel is typically permitted to take a percentage of a common fund without regard to actual payout because the class is benefited by the entire fund—even where the claims rate is low—through these equitable powers. Here, however, Defendants never relinquish possession of the entirety of the settlement funds. The Court may find this prevents the Class from gaining an equitable interest in the funds and thus prevents the Court from exercising equitable power over the funds. If the Court applies reasoning, this Court must reduce attorneys' fees to a reasonable percentage of the amount Defendants *actually* funded. To hold otherwise would reward Class Counsel for obtaining, in essence, the bad result discussed in *In re Motorsports Merch. Antitrust Litig.*, 160 F. Supp. 2d 1392, 1395 (N.D. Ga. 2001)— "a reversion of undistributed funds to the defendant" in contravention of the policies underlying the statutes and common law claims this settlement extinguishes.

The Court should also reduce attorneys' fees because Class Counsel improperly includes the specious monetary value of injunctive relief. The value of the Settlement Agreement's injunctive relief is, at best, speculative. More likely, it is nil. Defendants stopped the challenged practices because of recently enacted regulations, not because of this settlement.

The Court should redistribute to the Class any reduction in attorneys' fees it deems necessary[2] until the claimants have been fully compensated. Under the Settlement Agreement, Defendants will deposit $19 million into an interest bearing account where it will sit until ten business days after the Final Settlement Date. D.E. #182-1 at 46, ¶ 15.3. As Defendants have already deposited the funds, the Court may, and should, exercise its discretion to better compensate the Class so that Class members are fully reimbursed with the treble damages permitted under RICO. The Court should make a *cy pres* distribution of the remainder, if any.

## VII. Conclusion

The Objecting Plaintiffs Vanskyock, Swain, Yoho, and Pearson ask that the Court distribute unclaimed funds to the Class before any *cy pres* distribution and that the Court reduce attorneys' fees corresponding to the actual payout of the settlement.

Dated: October 23, 2014

Respectfully submitted,

By: /s/ Stephen J. Fearon, Jr.
     Stephen J. Fearon, Jr.
SQUITIERI & FEARON, LLP
32 East 57th Street, 12th Floor
New York, New York 10022
Tel: (212) 421-6492
Fax: (212) 421-6553
stephen@sfclasslaw.com

**ATTORNEY FOR OBJECTOR PLAINTIFFS**

---

[2] Although it is currently unknown how high attorneys' fees will be in comparison to the amount Wells Fargo pays the Class, the Court should consider that "a large disparity between the attorneys' fee award and the individual class member's portion of the settlement could signal an abuse of the class action process[.]" *Clement v. Am. Honda Fin. Corp.*, 176 F.R.D. 15, 31 (D. Conn. 1997).