## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 0:13-cv-60721-MORENO

IRA MARC FLADELL, SARAH CROUCH,
GREG OLSON, MARGARET
ZAWISTOWSKI, TILENA ALI, DANNY
LANE and BEVERLY LANE on behalf of
themselves and all others similarly
situated,

              Plaintiffs,

v.

WELLS FARGO BANK, N.A.; WELLS
FARGO INSURANCE, INC.; ASSURANT, INC.;
AMERICAN SECURITY INSURANCE
COMPANY; VOYAGER INDEMNITY
INSURANCE COMPANY, STANDARD
GUARANTY INSURANCE CO.; QBE SPECIALTY
INSURANCE COMPANY; QBE INSURANCE
CORPORATION; QBE FIRST INSURANCE
AGENCY, INC.; QBE FINANCIAL INSTITUTION
RISK SERVICES, INC.; and
PRAETORIAN INSURANCE  COMPANY

              Defendants.

_____/

## ORDER GRANTING FINAL APPROVAL TO
## CLASS ACTION SETTLEMENT

On March 17, 2014, this Court granted preliminary approval to the proposed class action

settlement set forth in the Stipulation and Settlement Agreement between Plaintiffs Ira Marc

Fladell, Sarah Crouch, Greg Olson, Margaret Zawistowski, Danny Lane, Beverly Lane, and

Tilena Ali, on behalf of themselves and all members of the Settlement Class, and Defendants

Wells Fargo Bank, N.A., Wells Fargo Insurance, Inc., Assurant, Inc., American Security

Insurance Company, Voyager Indemnity Insurance Company, Standard Guaranty Insurance

Company, QBE Specialty Insurance Company, QBE Insurance Corporation, QBE FIRST

Insurance Agency, Inc., QBE Financial Institution Risk Services, Inc., and Praetorian Insurance Company (collectively, "Defendants").  The Court also provisionally certified the Settlement Class for settlement purposes, approved the procedure for giving Class Notice to the members of the Settlement Class, and set a final approval hearing to take place on September 18, 2014.  The Court finds that the Class Notice substantially in the form approved by the Court in its preliminary approval order was given in the manner ordered by the Court, constitutes the best practicable notice, and was fair, reasonable, and adequate.

On September 18, 2014, the Court held a duly noticed final approval hearing to consider: (1) whether the terms and conditions of the Settlement Agreement are fair, reasonable and adequate; (2) whether a judgment should be entered dismissing the Named Plaintiffs' amended complaint on the merits and with prejudice in favor of the Defendants and against all persons or entities who are Settlement Class Members herein who have not requested exclusion from the Settlement Class; and (3) whether and in what amount to award Attorneys' Fees and Expenses to Class Counsel for the  Settlement Class and whether and in what amount to award a Case Contribution Award to the Named Plaintiffs.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.     The Court has personal jurisdiction over the parties and the Settlement Class Members, venue is proper, the Court has subject matter jurisdiction to approve the Settlement Agreement, including all exhibits thereto, and to enter this Final Order.

2.     The Settlement Agreement was negotiated at arm's length by experienced counsel who were fully informed of the facts and circumstances of this litigation, and of the strengths and weaknesses of their respective positions.  The Settlement Agreement was reached after the Parties engaged in extensive litigation, including multiple motions to dismiss, a motion for

judgment on the pleadings, discovery motion practice, and the briefing of class certification. Further, settlement occurred only after the parties mediated over a period of many weeks and after the exchange and production of discovery, including a substantial volume of electronic data. Counsel for the Parties were therefore well positioned to evaluate the benefits of the Settlement Agreement, taking into account the expense, risk, and uncertainty of protracted litigation with respect to numerous difficult questions of fact and law.

3.     The Court finds that the prerequisites for a class action under Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b) have been satisfied for settlement purposes for each Settlement Class Member in that: (a) the number of Settlement Class Members is so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) the claims of the Named Plaintiffs are typical of the claims of the Settlement Class they seek to represent; (d) Named Plaintiffs have and will continue to fairly and adequately represent the interests of the Settlement Class for purposes of entering into the Settlement Agreement; (e) the questions of law and fact common to the Settlement Class Members predominate over any questions affecting any individual Settlement Class Member; (f) the Settlement Class is ascertainable; and (g) a class action is superior to the other available methods for the fair and efficient adjudication of the controversy.

4.     Pursuant to Fed. R. Civ. P. 23, this Court hereby finally certifies the Settlement Class, as identified in the Settlement Agreement, which shall consist of the following:

(a)     All borrowers in the United States who, within the Class Period (as defined in Paragraph 4(b) below), were charged by the Wells Fargo Defendants under a hazard, flood, flood gap or wind-only Lender-Placed Insurance Policy for residential property, and who, within the Class Period, either (i) paid to the Wells Fargo Defendants the Net Premium for that Lender-Placed Insurance Policy or (ii) did not pay to and still owe the Wells Fargo Defendants the Net Premium for that Lender-Placed Insurance Policy.

(b)     The "Class Period" shall commence on the dates indicated below, based on the state in which the property is located, and shall continue through and including the date of the Preliminary Approval Order preliminarily approving the settlement:

1. California:  October 7, 2007.
2. Florida:  September 2, 2006.
3. Illinois:  July 5, 2002.
4. Indiana:  June 15, 2002.
5. Louisiana:  February 19, 2003.
6. New Jersey:  April 2, 2007.
7. New York:  July 5, 2006.
8. Ohio:  August 8, 1998.
9. Pennsylvania:  April 7, 2005.
10. Texas:  October 7, 2007.
11. All other states:  January 1, 2008.

(c)     Excluded from the Class are:  (i) individuals who are or were during the Class Period officers or directors of the Defendants or any of their respective affiliates; (ii) any justice, judge, or magistrate judge of the United States or any State, their spouses, and persons within the third degree of relationship to either of them, or the spouses of such persons; (iii) borrowers whose Lender-Placed Insurance Policy was cancelled in its entirety such that any premiums charged and/or collected were fully refunded to the borrower's escrow account; (iv) borrowers who are members of the settlement classes in *Williams v. Wells Fargo Bank* (S.D. Fla. Case No. 1:11-CV-21233-RNS) and *Guerrero v. Wells Fargo Bank* (N.D. Cal. Case No. 12-cv-4026 WHA); and, (v) all borrowers who file a timely and proper request to be excluded from the Class.

5.     The Court finally appoints the law firms of Kozyak, Tropin, & Throckmorton, P.A., Podhurst Orseck, P.A., and Harke Clasby & Bushman LLP as Class Counsel for the Settlement Class.

6.     The Court finally designates Named Plaintiffs Ira Marc Fladell, Sarah Crouch, Greg Olson, Margaret Zawistowski, Danny Lane, Beverly Lane, and Tilena Ali as the Class Representatives.

7.     The Court makes the following findings on notice to the Settlement Class:

(a)     The Court finds that the distribution of the Mail Notice, the creation of the IVR toll-free telephone number system, and creation of the Internet site, all as provided for in the

4

Settlement Agreement and Preliminary Approval Order, (i) constituted the best practicable notice under the circumstances to Class Members, (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action, their right to object or to exclude themselves from the proposed Settlement, and their right to appear at the Final Approval Hearing, (iii) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to be provided with notice, and (iv) complied fully with the requirements of Fed. R. Civ. P. 23, the United States Constitution, the Rules of this Court, and any other applicable law. The Parties have complied with their notice obligations under the Class Action Fairness Act, 28 U.S.C. § 1715, in connection with the proposed settlement.

(b)    The Court finds that the Class Notice and methodology set forth in the Settlement Agreement, the Preliminary Approval Order, and this Final Order (i) constitute the most effective and practicable notice of the Final Order, the relief available to Settlement Class Members pursuant to the Final Order, and applicable time periods; (ii) constitute due, adequate, and sufficient notice for all other purposes to all Settlement Class Members; and (iii) comply fully with the requirements of Fed. R. Civ. P. 23, the United States Constitution, the Rules of this Court, and any other applicable laws.

8.    The Settlement Class consists of approximately 1.3 million Wells Fargo mortgagors. Only twelve objections have been submitted by a total of twenty-one objectors. However, the Court received the request to withdraw the objections filed by Kessler Topaz Meltzer & Check, LLP on behalf of Tamara L. Cochran-May (D.E. 240) and Kimberly Butler, Giovanni Canonico, Denise Leska, Mark Biddison, and Thomas Butler (D.E. 241). The request to withdraw these objections is granted. Such objections "are surrendered on terms that do not affect the class settlement." *See* Fed. R. Civ. P. 23(e), 2003 advisory comm. notes. Based upon

an agreement of the parties, the Court also permits the late opt-out of the following Class Members:  Kimberly and Thomas Butler, Giovanni Canonico, Bert Kuehner, Denise Leska, Patrick Ursomano, Mark Biddison, Tamara Cochran-May, Debra Simpkins and James Cockes.

9.   The Court has carefully considered the arguments raised by all of the remaining objections, including regarding the claims-made structure of the settlement, the notice plan, the proposed fee award, and the settlement's release, and they are hereby overruled.  "'There is nothing inherently suspect about requiring class members to submit claim forms in order to receive payment.'" *Saccoccio v. JPMorgan Chase Bank, N.A.*, 297 F.R.D. 683, 696 (S.D. Fla. 2014) (quoting *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 593 (N.D. Ill. 2011)). Moreover, the objectors' criticism of the claims-made structure "does not impact the fairness, reasonableness, or adequacy of the proposed settlement," *Casey v. Citibank, N.A.*, 2014 WL 4120599, at *2 (N.D.N.Y. Aug. 21, 2014).  This Settlement is fair, reasonable, and adequate independent of the number of claims filed. *See Saccoccio v. JPMorgan Chase Bank, N.A.*, 2014 WL 3738013 (S.D. Fla. July 28, 2014).  "While a direct payment structure would obviously result in more, and possibly all, class members receiving a share of the [monetary relief in the] settlement, there is no reason to believe the defendants would agree to such terms," *Casey*, 2014 WL 4120599, at *2, and, in any event, the Court "does not have the authority to impose a preferred payment structure upon the settling parties." *Id.* at *3.  And the Settlement's claims process is needed for other reasons, including to ensure that only aggrieved individuals receive monetary relief and to reduce the risk of fraud, waste, and abuse that might arise from sending unsolicited checks to unverified addresses and recipients.  The Court further finds that Notice and Claim Forms are not deficient. *See Saccoccio*, 297 F.R.D. at 697-98.  The items some objectors describe as missing from the Notice (*e.g.*, "aggregate estimated damages suffered by

the class") are not required by due process or the notice requirements set out in Fed. R. Civ. P.

23. *See Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011).

      10.    Other objections raised are meritless and therefore overruled.  Several objectors argue that the time period for opting out or objecting was too short.  This objection is overruled. *See Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 429-30 (5th Cir. 1977) (rejecting as "without merit" objection "that the notices did not give sufficient time for class members to respond to the settlement agreement if they wished to object" since a period of "almost four weeks between the mailing of the notices and the settlement hearing" was adequate).  The same objectors also argue that the pleadings were improperly amended to add several claims, Named Plaintiffs, and Defendants.  The amendments, however, simply: (i) consolidated claims and Named Plaintiffs from other Lender-Placed Insurance lawsuits that had been actively litigated since 2012; and (ii) added several of the original Defendants' corporate affiliates to ensure the Settlement's finality.  And these objectors argue that no Plaintiff could adequately represent Settlement Class Members under the laws of all the Settlement Class Members' respective states.  This objection, too, lacks merit and is therefore overruled. *See In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 348-49 (3d Cir. 2010) (finding "no merit" in objectors' argument "that state law differences created conflicts among class members that defeat adequacy of representation").  Furthermore, although the Settlement Agreement includes a "clear-sailing" provision, that is immaterial.  There was no collusion in the settlement negotiations and the Parties began negotiations regarding attorneys' fees only after finishing negotiating the Settlement itself. *See Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1293 n.4 (11th Cir. 1999).

11.    In light of the risks involved in this type of litigation, and specifically with lender-placed insurance cases, the Court finds that the Settlement is clearly fair, reasonable and adequate pursuant to Fed. R. Civ. P. 23(e).   The terms and provisions of the Settlement Agreement, including all exhibits thereto, have been entered into in good faith and are hereby fully and finally approved as fair, reasonable, and adequate as to, and in the best interests of, each of the Parties and the Settlement Class Members.

12.    Pursuant to Fed. R. Civ. P. 23(h), the Court hereby awards Class Counsel for the Settlement Class Attorneys' Fees and Expenses in the amount of $19,000,000 payable pursuant to the terms of the Settlement Agreement.  The Court also awards class incentive contribution awards in the amount of $5,000 each to Ira Marc Fladell, Sarah Crouch, Greg Olson, Margaret Zawistowski, Danny Lane, Beverly Lane, and Tilena Ali, payable pursuant to the terms of the Settlement Agreement.

13.    The terms of the Settlement Agreement and of this Final Order, including all exhibits thereto, shall be forever binding on, and shall have *res judicata* and preclusive effect in, all pending and future lawsuits maintained by the Plaintiffs and all other Settlement Class Members, as well as their family members, heirs, guardians, executors, administrators, predecessors, successors, and assigns.

14.    The Releases, which are set forth in Section 10 of the Settlement Agreement and which are also set forth below, are expressly incorporated herein in all respects and are effective as of the date of this Final Order; and the Released Persons (as that term is defined below and in the Settlement Agreement) are forever released, relinquished, and discharged by the Releasing Persons (as that term is defined below and in the Settlement Agreement) from all Released Claims (as that term is defined below and in the Settlement Agreement).

(a)    Release and Waiver Definitions

i.    "The Wells Fargo Defendants" means Wells Fargo Bank, N.A, its predecessors and successors, and all of their affiliates, including Wells Fargo Insurance, Inc., Wells Fargo Home Mortgage, which was formerly an affiliate and is now a division of Wells Fargo Bank, Wachovia Bank, N.A., Wachovia Mortgage and Wachovia Insurance Services, Inc.

ii.    "Assurant Defendants" means Assurant, Inc., American Security Insurance Company, Voyager Indemnity Insurance Company, and Standard Guaranty Insurance Company.

iii.    "QBE Defendants" means QBE Specialty Insurance Company, QBE Insurance Corporation, QBE FIRST Insurance Agency, Inc., QBE Financial Institution Risk Services, Inc., and Praetorian Insurance Company.

iv.    "Defendants" mean all named defendants in the Fladell Litigation, including the Wells Fargo Defendants, the Assurant Defendants, and the QBE Defendants;

v.    "Lender-Placed" means the placement of hazard, flood, flood gap, and/or wind insurance pursuant to a mortgage loan agreement, home equity loan agreement, or home equity line of credit serviced by the Wells Fargo Defendants to cover a borrower's failure to maintain the required insurance coverage on the residential property securing the loan;

vi.    "Lender-Placed Insurance Policy" means a lender-placed residential hazard, flood, flood gap, and/or wind insurance policy;

vii.    "Release" or "Releases" means the releases of all Released Claims by the Releasing Persons against the Released Persons;

viii.    "Released Claims" means all claims, actions, causes of action, suit, debts, sums of money, payments, obligations, reckonings, promises, damages, penalties,

attorney's fees and costs, liens, judgments, demands, and any other forms of liability released pursuant to this Final Order and Section 10 of the Settlement Agreement;

        ix.    "Released Persons" means:  (a) Defendants and each of their respective past or present divisions, parents, subsidiaries, predecessors, investors, parent companies, acquired companies, and affiliated companies (which shall include any person or entity which controls, is controlled by, or is under common control with any such party), including, but not limited to, the Wells Fargo Defendants, the Assurant Defendants, and the QBE Defendants and any direct or indirect subsidiary of any of Defendants and each of their respective past or present divisions, parents, subsidiaries, investors, parent companies, and affiliated companies, and all of the officers, directors, employees, agents, brokers, distributors, representatives, and attorneys of all such entities; and (b) any other insurance carriers that issued or may have issued hazard, flood, flood gap, and/or wind Lender-Placed Insurance to any Settlement Class Member for the Wells Fargo Defendants and/or for any of the Wells Fargo Defendants' past or present divisions, parents, subsidiaries, predecessors, investors, parent companies, acquired companies, and affiliated companies (which shall include any person or entity which controls, is controlled by, or is under common control with any such party), including but not limited to any direct or indirect subsidiary of any of them, and all of the officers, directors, employees, agents, brokers, distributors, representatives, and attorneys of all such entities.

        x.    "Releasing Persons" means Named Plaintiffs, all Settlement Class Members who do not properly and timely opt out of the Settlement, and their respective family members, heirs, administrators, successors, and assigns.

xi.     "Settling Parties" means, collectively, Defendants, Named Plaintiffs, all Settlement Class Members, and all Releasing Persons.

(b)     Released Claims of Settlement Class.  Each member of the Settlement Class, and their family members, heirs, guardians, assigns, executors, administrators, predecessors, and successors, other than the Named Plaintiffs, shall, by operation of the Final Order, be deemed to have fully, conclusively, irrevocably, forever, and finally released, relinquished, and discharged the Released Persons from any and all claims, actions, causes of action, suits, debts, sums of money, payments, obligations, reckonings, promises, damages, penalties, attorney's fees and costs, liens, judgments, and demands of any kind whatsoever that each member of the Settlement Class may have or may have had in the past, whether in arbitration, administrative, or judicial proceedings, whether as individual claims or as claims asserted on a class basis, whether past or present, mature or not yet mature, known or unknown, suspected or unsuspected, whether based on federal, state, or local law, statute, ordinance, regulations, contract, common law, or any other source, that were or could have been sought or alleged in the Litigation or that relate, concern, arise from, or pertain in any way to the Released Persons' conduct, policies, or practices concerning Lender-Placed Insurance Policies placed or charged by the Wells Fargo Defendants during the Class Period.

i.     The Release stated in Paragraph 14(b) above shall include, but not be limited to, all claims related to charges for the Wells Fargo Defendants' placement of Lender-Placed Insurance Policies during the Class Period; Wells Fargo's insurance requirements; any reinsurance agreements involving the Wells Fargo Defendants concerning Lender-Placed Insurance Policies; the relationship, whether contractual or otherwise, between the Wells Fargo Defendants and the Assurant Defendants, as well as the Wells Fargo

Defendants and the QBE Defendants regarding Lender-Placed Insurance, including, but not limited to, the procuring, underwriting, placement, tracking, or costs of Lender-Placed Insurance Policies; the coverage amount, duration, issue date, alleged "backdating," or alleged excessiveness of any Lender-Placed Insurance Policies placed or charged by the Wells Fargo Defendants; the payment or receipt of commissions, expense reimbursements, alleged "kickbacks," or any other compensation under any Lender-Placed Insurance Policies placed or charged by the Wells Fargo Defendants; any alleged "tying" arrangement involving the Wells Fargo Defendants and Lender-Placed Insurance; any alleged breach of fiduciary duty by the Wells Fargo Defendants concerning Lender-Placed Insurance Policies; any alleged tortious interference by the Assurant Defendants or QBE Defendants with mortgage contracts serviced by the Wells Fargo Defendants; the disclosure or non-disclosure of any payment, expenses, fees, charges, or feature pertaining to or under any Lender-Placed Insurance Policies placed or charged by the Wells Fargo Defendants; the receipt or non-disclosure of any benefit under any Lender-Placed Insurance Policies placed or charged by the Wells Fargo Defendants; the content, manner, or accuracy of any communications regarding the placement of any insurance policy by the Wells Fargo Defendants; and to the regulatory approval or non-approval of any insurance policy, or the premium thereon, placed or charged by the Wells Fargo Defendants.

> ii.    The Release in Paragraph 14(b) above shall not cover claims arising after the Final Settlement Date, or claims for benefits made under any Lender-Placed Insurance Policy placed or charged by the Wells Fargo Defendants.  Nothing in Paragraph 14(b) shall be deemed a release of any Settlement Class Member's respective rights and obligations under the Agreement.

iii.     Except to the extent that any such obligation is being released pursuant to Paragraph 14(b) above, this Final Order shall not be deemed a release of Defendants from any existing obligation to any Settlement Class Member, other than Named Plaintiffs, under any loan, note, mortgage, or deed of trust.  This provision is not meant to and does not limit the Releases in this Final Order or in the Settlement Agreement.

(c)     <u>Released Claims of Named Plaintiffs</u>.  The Named Plaintiffs, on behalf of themselves, their family members, heirs, guardians, assigns, executors, administrators, predecessors, and successors, hereby release and discharge the Released Persons from any and all claims, actions, causes of action, suits, debts, sums of money, payments, obligations, reckonings, promises, damages, penalties, attorney's fees and costs, liens, judgments, and demands of any kind whatsoever that the Named Plaintiffs may have on or before the Final Settlement Date or may have had in the past, whether in arbitration, administrative, or judicial proceedings, whether as individual claims or as claims asserted on a class basis, whether past or present, mature or not yet mature, known or unknown, suspected or unsuspected, whether based on federal, state, or local law, statute, ordinance, regulations, contract, common law, or any other source.  In agreeing to this Release, Named Plaintiffs explicitly acknowledge that unknown losses or claims could possibly exist and that any present losses may have been underestimated in amount or severity.

i.     The Release in Paragraph 14(c) above shall include, but not be limited to, all claims related to charges for the Wells Fargo Defendants' placement of Lender-Placed Insurance Policies; Wells Fargo's insurance requirements; the relationship, whether contractual or otherwise, between the Wells Fargo Defendants and the Assurant Defendants, as well as the Wells Fargo Defendants and the QBE Defendants, regarding Lender-Placed

Insurance, including, but not limited to, the procuring, underwriting, placement, tracking, or costs of Lender-Placed Insurance Policies; any reinsurance agreements involving the Wells Fargo Defendants related to Lender-Placed Insurance Policies; the coverage amount, duration, issue date, alleged "backdating," or alleged excessiveness of any Lender-Placed Insurance Policies placed or charged by the Wells Fargo Defendants; payment or receipt of commissions, expense reimbursements, alleged "kickbacks," or any other compensation under any Lender-Placed Insurance Policies placed or charged by the Wells Fargo Defendants; any alleged "tying" arrangement involving the Wells Fargo Defendants and Lender-Placed Insurance; any alleged breach of fiduciary duty by the Wells Fargo Defendants concerning Lender-Placed Insurance Policies; any alleged tortious interference by the Assurant Defendants or QBE Defendants with mortgage contracts serviced by the Wells Fargo Defendants, to the extent related to Lender-Placed Insurance; the disclosure or non-disclosure of any payment, expenses, fees, charges, or feature pertaining to or under any Lender-Placed Insurance Policies placed or charged by the Wells Fargo Defendants; the receipt or non-disclosure of any benefit under any Lender-Placed Insurance Policy placed or charged by the Wells Fargo Defendants; the content, manner, or accuracy of any communications regarding the placement of any Lender-Placed Insurance Policy by the Wells Fargo Defendants; and the regulatory approval or non-approval of any Lender-Placed Insurance insurance policy, or the premium thereon, placed or charged by the Wells Fargo Defendants during the Class Period.

ii.     The Release in Paragraph 14(c) above shall not cover claims arising after the Final Settlement Date or claims made under any Lender-Placed Insurance Policy placed or charged by the Wells Fargo Defendants. Nothing in Paragraph 14(c) shall be deemed a

release of Named Plaintiffs' respective rights and obligations under the Final Order and the Settlement Agreement.

(d)     Without in any way limiting their scope, the Releases cover by example and without limitation, any and all claims for attorneys' fees, costs, expert fees, or consultant fees, interest, or litigation fees, or any other fees, costs, and/or disbursements incurred by Class Counsel, the Named Plaintiffs, or any Settlement Class Members in connection with or related in any manner to this Action, the settlement of this Action, the administration of such Settlement, and/or the Released Claims, except to the extent otherwise specified in the Final Order and the Settlement Agreement.

(e)     In connection with the foregoing Releases, the Named Plaintiffs and each Settlement Class Member expressly waive, and shall be deemed to have waived to the fullest extent permitted by law, any and all provisions, rights, benefits conferred by Section 1542 of the California Civil Code, and any statute, rule and legal doctrine similar, comparable, or equivalent to California Civil Code Section 1542, which provides that:

**A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

The Named Plaintiffs and each Settlement Class Member agree that the provisions of all such principles of law or similar federal or state laws, rights, rules, or legal principles, to the extent they are found to be applicable herein, are hereby knowingly and voluntarily waived, relinquished, and released.  The Named Plaintiffs recognize, and each Settlement Class Member will be deemed to recognize, that, even if they may later discover facts in addition to or different from those which they now know or believe to be true, they nevertheless agree that, upon entry

of the Final Order, they fully, finally, and forever settle and release any and all claims covered by the Releases.

(f)     The Releases were bargained for and are a material element of the Settlement Agreement.

(g)     The Releases do not affect the rights of Settlement Class Members who timely and properly submitted a Request for Exclusion from the Settlement in accordance with the requirements of the Preliminary Approval Order and in Section 11 of the Settlement Agreement.

(h)     The administration and consummation of the Settlement as embodied in the Settlement Agreement shall be under the authority of the Court.   The Court shall retain jurisdiction to protect, preserve, and implement the Settlement Agreement, including, but not limited to, enforcement of the Releases.   The Court expressly retains jurisdiction in order to enter such further orders as may be necessary or appropriate in administering and implementing the terms and provisions of the Settlement Agreement.

(i)     The Settlement Agreement shall be the exclusive remedy for any and all Settlement Class Members, except those who have properly requested exclusion (opted out), and the Released Persons shall not be subject to liability or expense for any of the Released Claims to any Settlement Class Member(s).

(j)     The Releases shall not preclude any action to enforce the terms of the Settlement Agreement, including participation in any of the processes detailed therein.   The Releases set forth herein and in the Settlement Agreement are not intended to include the release of any rights or duties of the Settling Parties arising out of the Settlement Agreement, including the express warranties and covenants contained herein.

15.    Neither the Settlement Agreement, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any of the documents or statements referred to therein, nor this Final Order, nor any of its terms and provisions, nor the final judgment to be entered pursuant to this Final Order, nor any of its terms and provisions, shall be:

(a)    offered by any person or received against the Defendants as evidence or construed as or deemed to be evidence of any presumption, concession, or admission by the Defendants of the truth of the facts alleged by any person or the validity of any claim that has been or could have been asserted in the Fladell Litigation or in any litigation, or other judicial or administrative proceeding, or the deficiency of any defense that has been or could have been asserted in the Litigation or in any litigation, or of any liability, negligence, fault or wrongdoing of the Defendants;

(b)    offered by any person or received against the Defendants as evidence of a presumption, concession, or admission of any fault, misrepresentation, or omission with respect to any statement or written document approved or made by the Defendants or any other wrongdoing by the Defendants;

(c)    offered by any person or received against the Defendants as evidence of a presumption, concession, or admission with respect to any liability, negligence, fault, or wrongdoing in any civil, criminal, or administrative action or proceeding;

(d)    offered or received in evidence in any action or proceeding against any Party hereto in any court, administrative agency, or other tribunal for any purpose whatsoever, other than to enforce or otherwise effectuate the Settlement Agreement (or any agreement or order relating thereto), including the Releases, the Final Order, or the final judgment to be entered pursuant to this Final Order.

16.     This Final Order, the final judgment to be entered pursuant to this Final Order, and the Settlement Agreement (including the exhibits thereto) may be filed in any action against or by any Released Person (as that term is defined herein and the Settlement Agreement) to support a defense of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

17.     Without further order of the Court, the Settling Parties may agree to reasonably necessary extensions of time to carry out any of the provisions of the Settlement Agreement.

18.     In the event that the Final Order and the final judgment to be entered pursuant to this Final Order are reversed or vacated pursuant to a direct appeal in this Action or the Settlement Agreement is terminated pursuant to its terms, all orders entered and releases delivered in connection herewith shall be null and void.

19.     This Final Order and the final judgment to be entered pursuant to this Final Order shall be effective upon entry.  The Parties are hereby directed to implement and consummate the Settlement Agreement according to its terms and provisions.  This Action, including all individual claims and class claims presented herein, is hereby dismissed on the merits and with prejudice against the Named Plaintiffs and all other Settlement Class Members, without fees (including attorneys' fees) or costs to any party except as otherwise provided herein.

20.     A final judgment consistent with this Order will be entered forthwith.


DONE and ORDERED in Chambers in Miami, Florida, this _____ day of October, 2014.


_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE


18